# CASE NO. 23-50746
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

Gary Perez; Matilde Torres,

        Plaintiffs – Appellants

v.

City of San Antonio,

        Defendant – Appellee

---

## SUPPLEMENT TO DKT NO. 48: "APPELLEE CITY OF SAN ANTONIO'S RESPONSE IN OPPOSITION TO APPELLANTS' EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL"

---

FRED R. JONES
fjones@langleybanack.com
State Bar No. 10886700
SARA MURRAY
smurray@langleybanack.com
State Bar No. 14729400
NATALIE F. WILSON
nwilson@langleybanack.com
State Bar No. 24076779
IAN M. MCLIN
imclin@langleybanack.com
State Bar No. 24005071
LEE WARREN
lwarren@langleybanack.com
State Bar No. 24099453
LANGLEY & BANACK, INC.
745 East Mulberry, Suite 700
San Antonio, TX 78212-3166

Telephone: (210) 736-6600
Facsimile: (210) 735-6889

CITY OF SAN ANTONIO
DEBORAH KLEIN
Deputy City Attorney
State Bar No. 11556750
Deborah.Klein@sanantonio.gov
International Center
203 South St. Mary's Street,
Second Floor
San Antonio, TX 78205
Telephone: (210) 207-8949
Facsimile: (210) 207-4004

**COUNSEL FOR APPELLEE CITY OF SAN ANTONIO**

CERTIFICATE OF INTERESTED PERSONS

*Perez, et al. v. City of San Antonio*, No. 23-50746

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Plaintiffs — Appellants Gary Perez ("Perez") and Matilde Torres ("Torres")(collectively, "Appellants")

    Trial and Appellate Counsel for Plaintiffs — Appellants:

    Mark W. Rasmussen
    mrasmussen@jonesday.com
    Margaret I. Lyle
    milyle@jonesday.com
    Jonathan D. Guynn
    jguynn@jonesday.com
    J. Benjamin Aguiñaga
    jbaguinaga@jonesday.com
    Chance McCraw
    cmccraw@jonesday.com
    Timothy M. Villari
    tvillari@jonesday.com
    JONES DAY
    2727 N. Harwood Street
    Dallas, TX  75201.1515
    Telephone:  (214) 220-3939

    John Greil
    john.greil@law.utexas.edu
    Steven T. Collis
    steve.collis@law.utexas.edu
    LAW AND RELIGION CLINIC
    UNIVERSITY OF TEXAS SCHOOL OF LAW
    727 East Dean Keaton Street

    Austin, TX  78705
    Telephone:  (512) 471-5151

2.    Defendant — Appellee City of San Antonio ("City" or "San Antonio" or "Appellee")

    Fred R. Jones
    fjones@langleybanack.com
    Ian McLin
    imclin@langleybanack.com
    Lee Brinson Warren
    lwarren@langleybanack.com
    Natalie Friend Wilson
    nwilson@langleybanack.com
    Sara Murray
    smurray@langleybanack.com
    LANGLEY & BANACK, INC.
    745 East Mulberry, Suite 700
    San Antonio, TX  78212
    Telephone:  (210) 736-6600
    Facsimile:   (210) 735-6889

    City of San Antonio
    Deborah Klein
    Deputy City Attorney
    Deborah.Klein@sanantonio.gov
    International Center
    203 South St. Mary's Street,
    Second Floor
    San Antonio, TX 78205
    Telephone: (210) 207-8949
    Facsimile:  (210) 207-4004

                                    *Fred R. Jones*
                                  FRED. R. JONES
                               Attorney of Record
                                  for Appellee

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

SUPPLEMENT TO APPELLEES' RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL . . . . . . . . . . . .5

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

!

TO THE HONORABLE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT:

Pursuant to FED. R. APP. P. 8, Appellee, the City of San Antonio ("City" or "Appellee"), files this Supplement to its October 25, 2023, "Response in Opposition to the 'Emergency Motion of Appellants Gary Perez and Matilde Torres for an Injunction Pending Appeal and to Expedite Appeal'" ["Response," **COA Dkt. 48 & Dkts. 60-66**], respectfully showing:

1. On October 16, 2023, Appellants/Plaintiffs filed an Emergency Motion for Injunction Pending Appeal in the United States District Court for the Western District of Texas [**DC Dkt. 54**], but on that same day they perfected the present appeal. [**COA Dkt. 1**].

2. On October 23, 2023, Appellants/Plaintiffs filed their "Emergency Motion of Appellants Gary Perez and Matilde Torres for an Injunction Pending Appeal and to Expedite Appeal" in this Court ["Motion," **COA Dkt. 6**].

3. On October 25, 2023, Appellee/Defendant City of San Antonio filed its Response [**COA Dkt. 48**] with Exhibits [**COA Dkts. 60-66**].

4. Thereafter, the undersigned attorneys of record for the City received the District Court's October 25, 2023, Order on Plaintiffs'

5

Emergency Motion for Injunction Pending Appeal ["October 25th Order"], denying the "Plaintiffs' Emergency Motion for Injunction Pending Appeal [**DC Dkt. 59**]."

5.     The October 25th Order is highly relevant to the issues raised by the Motion [**COA Dkt. 6**], and the City hereby supplements its Response and Exhibits: **(a)** to bring the October 25th Order to the Court's attention; and **(a)** to add the attached true and correct copy of the October 25th Order as **Ex. 5** to the Response.

6.     Although the October 25th Order was signed *after* Appellants perfected their appeal and filed their Motion in this Court [**COA Dkts. 1, 6**], the District Court retained limited jurisdiction to enter such an order *denying* the relief sought by Plaintiffs/Appellants, pursuant to FED. R. CIV. P. 62.1(a)(2).

7.     The District Court's reasoning for denying Plaintiffs'/Appellants' requested injunction pending appeal applies with equal force to, and further supports the Court's denial of, the Motion pending in this Court [**COA Dkt. 6**].

8.     For these reasons, and for the additional reasons previously set out in the Response [**COA Dkt. 48 & COA Dkts. 60-66**], the City

asks the Court to deny Appellants' Motion [**COA Dkt. 6**] and to grant the City all other legal and equitable relief to which it may be justly entitled.

    Respectfully submitted,

    LANGLEY & BANACK, INC.

    BY: *Fred R. Jones*
    FRED R. JONES
    State Bar No. 10886700
    fjones@langleybanack.com
    NATALIE F. WILSON
    State Bar No. 24076779
    nwilson@langleybanack.com
    SARA MURRAY
    State Bar No. 14729400
    smurray@langleybanack.com
    745 East Mulberry, Suite 700
    San Antonio, TX 78212-3166
    Telephone: (210) 736-6600
    Facsimile: (210) 736-6889

    -and -

    CITY OF SAN ANTONIO
    DEBORAH KLEIN
    Deputy City Attorney
    State Bar No. 11556750
    Deborah.Klein@sanantonio.gov
    International Center
    203 S. St. Mary's Street,
    2nd Floor
    San Antonio, TX 78205
    Telephone: (210) 207-8949
    Facsimile: (210) 207-4004

    **ATTORNEYS FOR APPELLEE**
    **CITY OF SAN ANTONIO**

## CERTIFICATE OF SERVICE

The undersigned counsel of record hereby certifies that on October 26, 2023, true and correct copies of this "Supplement to **Dkt No. 48**: 'Appellee City of San Antonio's Response in Opposition to Appellants' Emergency Motion for Injunction Pending Appeal'" were served via the Court's electronic facilities to the following persons:

Mark W. Rasmussen
mrasmussen@jonesday.com
Margaret I. Lyle
milyle@jonesday.com
Jonathan D. Guynn
jguynn@jonesday.com
J. Benjamin Aguiñaga
jbaguinaga@jonesday.com
Chance McCraw
cmccraw@jonesday.com
Timothy M. Villari
tvillari@jonesday.com
JONES DAY
2727 N. Harwood Street
Dallas, TX 75201.1515
Telephone: (214) 220-3939

John Greil
john.greil@law.utexas.edu
Steven T. Collis
steve.collis@law.utexas.edu
LAW AND RELIGION CLINIC
UNIVERSITY OF TEXAS SCHOOL OF LAW
727 East Dean Keaton Street
Austin, TX 78705
Telephone: (512) 471-5151

**ATTORNEYS FOR APPELLANTS**

                                            _/s/ Fred R. Jones_
                                               FRED R. JONES

# Ex. 5

4885-3641-6139, v. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| GARY PEREZ and MATILDE TORRES, § | |
| § | |
| Plaintiffs, § | |
| § | |
| VS. § | CIVIL ACTION NO. SA-23-CV-977-FB |
| § | |
| CITY OF SAN ANTONIO, § | |
| § | |
| Defendant. § | |

## ORDER ON PLAINTIFFS' EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

Before the Court are Plaintiffs' Emergency Motion for Injunction Pending Appeal filed October 16, 2023 (docket entry 54); Defendant City of San Antonio's Response in Opposition to Plaintiffs' Emergency Motion for Injunction Pending Appeal filed October 19, 2023 (docket entry 56); the Court's Opinion and Order Granting in Part and Denying in Part Plaintiffs' Request for Preliminary Injunction filed October 11, 2023 (docket entry 52); and the entire testimonial record[1] and exhibits heretofore considered.

The genesis of this religious free exercise case was the electoral passage by the citizens of San Antonio seven years ago of a bond package which included reformation and resurrection of a now dilapidatedly dangerous two-acre portion of Brackenridge Park, owned by the Defendant City which is responsible to the public for its upkeep, safety and public health. But of course the historical genesis was the forced exodus of indigenous people from their homelands.[2] The Court

---

[1] Given the intersection of nature and religion in this case, the Court finds it interestingly ironic that the two expert arborists who testified bear the names of Old Testament prophets: Micah and Hosea.

[2] *See* Ken Burns, *The American Buffalo: Blood Memory & Into the Storm* (PBS television broadcast Oct. 16, 2023), https://www.pbs.org/kenburns/the-american-buffalo (last visited Oct. 23, 2023); *see also* David Martin Davies, *The Source: Could San Antonio and Austin become a "combo loco" metro?* (TPR podcast published Oct. 18, 2023, 4:13 p.m.), https://www.tpr.org/podcast/the-source/2023-10-18/could-san-antonio-and-austin-become-a-combo-loco-metro which discusses among other subjects the Blue Hole and the route of Plaintiffs' peyote pilgrimages (last visited Oct. 23, 2023).

shares Plaintiffs' lamentation of how so-called "progress" has meant the developed ruination of Texas. *Aquifer Guardians in Urban Areas v. Federal Highway Admin.*, 779 F. Supp. 2d 542, 548 (W.D. Tex. 2011).

While Plaintiffs approve of the injunctive relief granted them concerning access to the Sacred Area, they have filed a notice of appeal regarding the "spiritual ecology" denial of relief wherein the Court declined to tell the property owner City how to engineer the project. Because of different migratory bird patterns and the Migratory Bird Treaty Act, the Court also denied Plaintiffs' desire to have the birds continue to nest in the sacred two acres. The Court allowed the City to resume bird deterrent operations in those two acres, leaving 340 other acres of Brackenridge Park for bird nesting. Not to allow bird deterrence would effectively and permanently scuttle the project because of those differing migratory patterns which would preclude there ever being an eight-month construction period.

While the City has said it would not appeal the Court's ruling allowing Plaintiffs' access to the Sacred Area, further review of additional authorities cited in Defendant's Response strongly support an argument in favor of denying access or of an appeal by the City. This Court, however, will leave in place the access injunctive relief granted to Plaintiffs.

Plaintiffs assert matters of first impression, leaving open the possibility of Supreme Court review following a decision by the Fifth Circuit Court of Appeals, all of which would take years instead of completing the project in eight months and sooner returning the two acres for unfettered access for the Plaintiffs and the general public. Such delays would likely increase the costs to the City of interest on the bond, court costs and attorneys' fees and probable construction costs inflation,

all of which would require Plaintiffs to post a bond to protect the City should it ultimately prevail.[3] The word "compromise" has been used from time to time in the parties' pleadings and emails. For the foregoing reasons, the parties may wish to explore those possibilities further. "The better part of valor is discretion." WILLIAM SHAKESPEARE, PART ONE OF HENRY THE FOURTH act 5, sc. 4. The Court suggests "wisdom" may be added to "discretion."

If the parties cannot come to a reasonable agreement, the Court will make its rulings as necessary based on the record and the law.

Concerning the immediate issue before the Court, the Court agrees with the City's recitation of evidence supporting the Court's ruling. Equally important, the Court finds the legal authorities relied upon by the City as owner of the property, responsible for public health and safety, strongly supports the denial of other injunctive relief sought by Plaintiffs pursuant to Federal Rule of Civil Procedure 62(d).

In adopting the City's Proposed Findings of Fact and Conclusions of Law and the legal authorities cited therein with respect to Plaintiffs' requested relief in Items 2 and 3, the Court agreed with the City that its conduct does not violate the First Amendment Free Exercise Clause or the co-extensive provision of the Texas Constitution and for purposes of this motion, the Court has not been persuaded to the contrary. Moreover, as the City points out in its Response, the "Free Exercise Clause of the First Amendment . . . is written in terms of what the government cannot do to the individual, *not* in terms of what the individual can exact from the governments." Docket entry #56, at page 10 (emphasis in original) (citing *Satanic Temple v. City of Belle Plaine*, 2021 WL 4199369,

---

[3] The Court also observes that such a lengthy process would give the law students who observed the preliminary injunction hearing time to graduate, pass the Bar, practice law and establish families between the *alpha* and *omega* of this case.

at *13 (D. Minn. Sept. 15, 2021)). Nor, as stated by the court in *Satanic Temple,* does "the First Amendment . . . include a constitutional right to use public property as a place of worship or to erect a private structure." *Satanic Temple v. City of Belle Plaine*, 2021 WL 4199369, at *13 (D. Minn. Sept. 15, 2021) (citing *Taylor v. City of Gary*, 233 F. App'x 561, 562 (7th Cir. 2007) (observing that "the Free Exercise Clause does not give [plaintiff] the right to demand that the City provide him with municipally-owned property as a place of worship" (citing *Prater v. City of Burnside*, 289 F.2d 417, 427–28 (6th Cir. 2002))), *aff'd sub nom. Satanic Temple v. City of Belle Plaine, Minnesota*, 80 F.4th 864 (8th Cir. 2023).

Based on several authorities provided by the City in its Response, is it also clear that First Amendment law provides the government with the right to limit conduct on its own property, even if such limitation may impose limits on the exercise of religion. *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 447-49 (1988) (rejecting Indian tribes' Free Exercise challenge to the United States Forest Service's approval of plans to construct a logging road in the Chimney Rock area of the Six Rivers National Forest and finding that such conduct did not impose a burden "heavy enough" to violate the Free Exercise Clause); *Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1063 (9th Cir. 2008) (rejecting the claim of multiple Indian-tribe plaintiffs that use of artificial snow made from reclaimed water in a government-owned park on what the Navajo Nation considered a sacred mountain desecrates the entire mountain, deprecates their religious ceremonies, and injures their religious sensibilities, in violation of several federal statutes); *United States v. Means*, 858 F.2d 404 (8th Cir. 1988) (rejecting, on the basis of government's ownership, the Lakotas' claim that the United States Forest Service's denial of a permit for the use of an area in the Black Hills National Forest (federal property), as a religious, cultural, and educational

-4-

community violated their free exercise rights); *Wilson v. Block*, 708 F.2d 735, 739-40 (D.C. Cir. 1983) (finding no impermissible burden on religious rights despite Navajo and Hopi plaintiffs' contentions that development of the Snow Bowl on the San Francisco Peaks (federal land) would be inconsistent with their First Amendment right to freely hold and practice their religious beliefs on the Peaks, which they believe to be sacred); *Havasupai Tribe v. United States*, 752 F. Supp. 1471, 1484-85 (D. Ariz. 1990) (rejecting, on the basis of government's ownership, a Havasupai free exercise violation claim involving the Forest Service's plan for a uranium mine in an Arizona national forest (federal property)), *aff'd sub nom*. *Havasupai Tribe v. Robertson*, 943 F.2d 32 (9th Cir. 1991); *Manybeads v. United States*, 730 F. Supp. 1515, 1517-18 (D. Ariz. 1989) (rejecting, on the basis of the government's ownership, a Navajo claim that relocation from the Hopi Reservation under the provisions of the Navajo-Hopi Land Settlement Act violated their free exercise rights). This same analysis also has been applied to state-owned park land. *See Crow v. Gullet*, 541 F. Supp. 785, 794 (D. S.D. 1982) (plaintiffs did not show that defendants' development, construction, and regulatory actions burdened plaintiffs' religious exercises in the Bear Butte area, and plaintiffs "failed to establish any infringement of a constitutionally cognizable first amendment right." To the extent their right of access was temporarily restricted at the ceremonial grounds, plaintiffs' interests were "outweighed by compelling state interests in preserving the environment and the resource from further decay and erosion, in protecting the health, safety, and welfare of park visitors, and in improving public access to this unique geological and historical landmark"), *aff'd, Crow v. Gullet*, 706 F.2d 856, 858-59 (8th Cir. 1983) (per curiam). The City contends and the Court agrees that there appears to be no reason that this same analysis also should be applicable to land owned by, and under the management of, a home rule municipality such as the City.

Interestingly, the Court staff found a case with similar issues involving access to government-owned Alamo grounds for religious purposes. *Tap Pilam Coahuiltecan Nation v. Alamo Trust, Inc.*, 489 F. Supp. 3d 611 (W.D. Tex. 2020). In that case, the Plaintiffs alleged the Defendants violated their First Amendment rights in two ways: (1) by failing to allow Plaintiffs to "conduct their Sunrise Memorial Ceremony in the Alamo Chapel in September of 2019" while allowing tourists to enter the Alamo Chapel on that same day; and (2) by excluding Plaintiffs from the human remains protocol which prevented them from performing their "forgiveness ceremony." *Id.* at 617. With respect to the forgiveness ceremony, the Plaintiffs explained that:

> their core religious beliefs require that when a body is moved, they must perform a "forgiveness ceremony," seeking the deceased ancestor's forgiveness for disturbing their final resting place. Plaintiffs believe that these ceremonies are sacred obligations, and that when they are performed, "the spirits will guide and heal and give blessings as a result of the practice." And, "if the ceremonies are not performed, [Plaintiffs] believe that there will be spiritual repercussions and that evil will come their way."

*Id.* (Citations to First Amended Complaint omitted). In finding no violation of the Free Exercise Clause and therefore granting Defendants' motions to dismiss, the Court provided the following analysis which this Court finds instructive here:

> "The Free Exercise Clause . . . protects religious observers against unequal treatment and against 'laws that impose special disabilities on the basis of religious status.'" To state a claim under the Free Exercise Clause, Plaintiffs must plead they have a "sincerely held religious belief." They then must prove that the government regulation "substantially burdens that belief." To be a "substantial burden" under the Free Exercise Clause, the action or regulation must either "(1) influence the adherent to act in a way that violates the religious beliefs, or (2) force the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs. Importantly, the regulation does not "rise to the level of a substantial burden on religious exercise, if it merely prevents the adherent from . . . enjoying some benefit that is not otherwise generally available."

*Id.* at 622-23 (citations omitted). Relying on *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 451 (1988), a case cited by the Defendant in its Response herein, the court explained Plaintiffs claims were foreclosed by *Lyng* as follows:

> There, Native Americans challenged the state's construction of a road through sacred grounds, which the plaintiffs used for religious ceremonies that required "privacy, silence, and an undisturbed natural setting." The Supreme Court acknowledged that the "threat to the efficacy of at least some religious practices [was] extremely grave," but held that the Free Exercise Clause "simply cannot be understood to require the Government to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens." The Supreme Court reasoned that the "Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government."
>
> Likewise, here, Plaintiffs are seeking to gain participation in the human remains protocol and permission to conduct their ceremony in the Alamo Chapel. Indeed, as Defendants point out, inclusion in the human remains protocol and permission to enter the Alamo Chapel outside of operating hours to conduct a religious ceremony are both "benefit[s] that [are] not otherwise generally available[.]" Rather, they are benefits Plaintiffs seek to exact from Defendants. Such relief is unavailable under *Lyng* [and] *Patterson*.

*Id.* at 623 (citations omitted). Similarly, Plaintiffs in the instant case are seeking the benefit of accessing the Sacred Area at any time during the construction project, a benefit not otherwise generally available, and seeking to exact from the City the benefits of dictating which trees may be removed, the method to be used to construct certain improvements, and what species of birds may not be deterred in the "Sacred Area." Even Plaintiffs' own expert engineer, Sazzad Shafique, conceded that when presented with competing engineering methods, it is usually the landowner (in

this case the City) who is allowed to make the decision.[4] Whereas the Plaintiffs in the *Alamo Trust* case received an order of dismissal, Plaintiffs in the instant case have been granted some relief.

For the foregoing reasons[5] and as the Court continues to observe the human condition, Plaintiffs' Emergency Motion for Injunction Pending Appeal (docket entry 54) is DENIED.

It is so ORDERED.

SIGNED this 25th day of October, 2023.

_____
FRED BIERY
UNITED STATES DISTRICT JUDGE

---

[4] Specifically, the colloquy was as follows:

THE COURT: If two competing engineering companies came up with these plans and we're presenting it to the owner of a property and there are arguably pluses and minuses either method, who gets to make that decision.

THE WITNESS: Usually the owner.

THE COURT: The owner. All right. In this case it appears, at least part of it, that one side is asking the Court to tell the owner which methodology to use, which is neither here nor there as far as your testimony, but it's an issue.

Recross of Sazzad Shafique, Realtime Unedited Transcript, September 27, 2023, at page 282, lines 24-25 and page 283, lines 1-8.

[5] The City's Findings of Fact and Conclusions of Law which the Court adopted as its own also confirm that Plaintiffs' alleged claim under RLUIPA fails as a matter of law because Plaintiffs admit they have no property interest in Brackenridge Park, and Plaintiffs' failure to even mention RLUIPA during the preliminary injunction hearing suggests that they have abandoned that claim. While Plaintiffs did not discuss RLUIPA in their Motion, they nevertheless rely upon RLUIPA cases in trying to support their argument for injunctive relief. *See e.g.* Dkt. 54 at page 9, 11 (citing *Opulent Life Church v. City of Holy Springs*, 697 F.3d 279, 295, 298 (5th Cir. 2012)).

Although all the points set forth in Defendant's Response and above are relevant in their own right, they are also relevant to the instant Motion because they confirm that Plaintiffs have not—and cannot—satisfy the "irreparable harm" element of a claim for injunction pending appeal by simply pointing to some alleged or feared—but never proven—Constitutional violation.