No. 23-50746

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

GARY PEREZ AND MATILDE TORRES,

*Plaintiffs-Appellants,*

v.

CITY OF SAN ANTONIO,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Texas (Biery, J.)

**REPLY BRIEF OF APPELLANTS GARY PEREZ AND MATILDE TORRES IN SUPPORT OF THEIR EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL AND TO EXPEDITE APPEAL (OPPOSED MOTION)**

Mark W. Rasmussen
Margaret I. Lyle
Jonathan D. Guynn
J. Benjamin Aguiñaga
Chance McCraw
Timothy M. Villari
JONES DAY
2727 North Harwood Street
Dallas, TX 75201.1515
Telephone: +1.214.220.3939
E-mail: mrasmussen@jonesday.com
E-mail: milyle@JonesDay.com
E-mail: jguynn@jonesday.com
E-mail: jbaguinaga@jonesday.com
E-mail: cmccraw@jonesday.com
E-mail: tvillari@jonesday.com

John Greil
Steven T. Collis
Law & Religion Clinic
University of Texas School of Law
727 East Dean Keeton St.
Austin, TX 78705
Telephone: +1.512.471.5151
E-mail: john.greil@law.utexas.edu
E-mail: steve.collis@law.utexas.edu

ATTORNEYS FOR PLAINTIFFS

## TABLE OF CONTENTS

                                                        **Page**

INTRODUCTION .............................................................................................. 1
ARGUMENT ................................................................................................... 2
I.     Plaintiffs Have Demonstrated a Strong Likelihood of Success, or a Substantial Case, on the Merits. ........................................................ 2
       A.     The City's Actions Violate TRFRA ......................................... 2
       B.     The City's Actions Violate Article I, § 6-a of the Texas Constitution ............................................................................. 6
II.    The District Court's October 26 Order Is Mistaken ......................... 9
CONCLUSION .............................................................................................. 10
CERTIFICATE OF SERVICE ...................................................................... 12
CERTIFICATE OF COMPLIANCE ............................................................ 13

# TABLE OF AUTHORITIES

Page

**CASES**

*Barr v. City of Sinton*,
  295 S.W.3d 287 (Tex. 2009) ............................................................... 4, 5, 8

*City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*,
  636 F.2d 1084 (5th Cir. 1981) ................................................................. 1

*Employment Division v. Smith*,
  494 U.S. 872 (1990) ................................................................................ 8

*Fowler v. State of R.I.*,
  345 U.S. 67 (1953) .................................................................................. 9

*Hague v. Comm. for Indus. Org.*,
  307 U.S. 496 (1939) ................................................................................ 9

*HEB Ministries, Inc. v. Tex. Higher Educ. Coordinating Bd.*,
  235 S.W.3d 627 (Tex. 2007) ................................................................... 8

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
  485 U.S. 439 (1988) ....................................................................... 7, 8, 10

*Merced v. Kasson*,
  577 F.3d 578 (5th Cir. 2009) ................................................................... 4

*Ramirez v. Collier*,
  595 U.S. 411 (2022) ............................................................................ 3, 4

*Tandon v. Newsom*,
  141 S. Ct. 1294 (2021) ............................................................................ 1

*Texas Dep't of State Health Servs. v. Crown Distributing LLC*,
  647 S.W.3d (Tex. 2022) (Young, J., concurring) .................................... 8

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Watson v. City of Memphis*,
   373 U.S. 526 (1963) ................................................................................................. 4

# INTRODUCTION

The City's Opposition ("Opp.") does not address the equities or the public interest, and it offers only a conclusory denial of irreparable harm. For good reason: Plaintiffs have established all three. They suffer irreparable harm every day that they are unable to worship in the Sacred Area; they will suffer even more irreparable harm if the City proceeds with tree-removal and anti-nesting measures; and an injunction preventing First Amendment harm is always equitable and in the public interest. Mot. at 18–20.

Instead, the City focuses entirely on the merits of Plaintiffs' claims. But the City all but admits that it cannot justify the fencing barring Plaintiffs from worshipping in the Sacred Area. And it mischaracterizes the law and record in attempting to show that its tree-removal and anti-nesting measures survive strict scrutiny. For its part, the district court's intervening order simply adopts the City's own misplaced arguments. An injunction pending appeal is thus warranted.[1]

---

[1] The City seeks to require Plaintiffs to post a bond, mentioning an unsupported $17,000 figure. Opp. at 2. At the hearing, the City waived that issued by declining to submit damages evidence warranting a bond. Tr. 805:14–17. Moreover, public-interest litigation is a recognized exception to the bond requirement. *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981); *see also Tandon v. Newsom*, 141 S. Ct. 1294 (2021) (granting injunction pending appeal without bond).

# ARGUMENT

I. **PLAINTIFFS HAVE DEMONSTRATED A STRONG LIKELIHOOD OF SUCCESS, OR A SUBSTANTIAL CASE, ON THE MERITS.**

   A. **The City's Actions Violate TRFRA.**

The City agrees that "TRFRA prohibits a government agency from 'substantially burden[ing] a person's free exercise of religion,'" unless the government "'demonstrates that the application of the burden to the person' is 'in furtherance of a compelling governmental interest'; and is 'the least restrictive means of furthering that interest.'" Opp. at 10.[2] The City also "waive[s]" (except "for trial") any argument that its actions are not "a substantial burden upon [Plaintiffs'] religious exercise." *Id.* at 11. But the City misunderstands strict scrutiny.

*Sacred Area Access.* The City resists Plaintiffs' claim for access to the Sacred Area for individual worship and prayer merely by reciting the district court's view that they "waived such a claim." *Id.* at 12. But the City's citationless waiver argument betrays its weakness: As the numerous record citations in Plaintiffs' motion reflect (which the City never addresses), Plaintiffs did not waive this claim. Mot. at 14–15.

The City asserts that granting Plaintiffs access would be "unworkable." Opp. at 12. That is not how strict scrutiny works. Governments cannot satisfy the compelling

---

[2] The City suggests that Plaintiffs "appear to have abandoned" their other claims. Opp. at 10. That is incorrect. *See* Mot. at 17 (expressly "preserv[ing]" Free Exercise Clause and Article I, Section 6 claims). Plaintiffs opted only against pursuing their RLUIPA claim at the preliminary-injunction stage. Dist. Ct. Dkt. 49 at 2 n.1.

2

government interest and narrow tailoring requirements by summarily claiming that accommodating Plaintiffs' religious exercise would be "unworkable"—with no evidence, no articulation of any compelling interest (the City does not dispute that its stated rationales for the fencing no longer hold up, Mot. at 14), and no attempt to show that completely barring Plaintiffs' individual worship and prayer is the least restrictive means of furthering any interest. *Ramirez v. Collier*, 595 U.S. 411, 429 (2022) (courts do not "simply defer to [the government's] determination" of compelling interests); *Fulton v. City of Philadelphia,* 141 S.Ct. 1868, 1881 (2021) ("[S]o long as the government can achieve its interests in a manner that does not burden religion, it must do so.").

Finally, the City protests that Plaintiffs "cannot now complain" because the district court adopted Plaintiffs' proposed findings and conclusions on this issue. Opp. at 13. Not so. Plaintiffs' proposed findings and conclusions emphasized that the Sacred Area is "Plaintiffs' place of worship." *E.g.*, Dist. Ct. Dkt. 52 at 21, ¶ 10. And Plaintiffs briefed, argued, and testified that they need access for individual worship and prayer, not just scheduled group ceremonies. Mot. at 14. The district court only granted access for ceremonies on specific dates. Mot. at 11. Plaintiffs are entitled to seek the remaining access they sought below and were denied.

*Tree Removal.* Regarding tree-removal plans, the City makes two legal errors. First, the City's only attempt to show a compelling interest in eliminating nearly every tree in the Project Area is its brief claim that "the City[] [has a] compelling government interest of making the Project Area safe for visitors in the Park." Opp. at 18. That is

3

exactly "the kind of 'broadly formulated interest[]' that does not satisfy the scrutiny mandated by TRFRA." *Barr v. City of Sinton*, 295 S.W.3d 287, 306 (Tex. 2009).

Having failed to identify a compelling interest in tree destruction, the City then gets narrow-tailoring backwards. *Ramirez*, 595 U.S. at 432. It tries to fault *Plaintiffs* for not offering evidence of viable alternatives, *e.g.*, Opp. at 18, 19, but the *City* bears the burden of showing least restrictive means, not *Plaintiffs*. *See Merced v. Kasson*, 577 F.3d 578, 588 (5th Cir. 2009).

In addition, the City mischaracterizes the record. The City implies that an alternative pier-and-spandrel system might save only three trees. Opp. at 18. But the unrefuted evidence shows it would preserve *an additional 59 trees*. Tr. 245:5–17. The City also claims the system "was rejected in part because it would cost two to three times as much as the cantilever" option. Opp. at 20. But the City relies on a non-engineer City employee who conceded that he did *not* "know [specifically] how much more" the system would cost. Tr. 371:8–10. And the City's actual engineer said the City did not run the figures but that the increased cost could be as little as 20%. Tr. 630:20–631:4. Plus, the pier-and-spandrel system would eliminate $400,000 in tree-relocation costs, Tr. 277:5–7, offsetting any theoretical increased costs. In any event, Plaintiffs' free exercise cannot be "dependent upon any theory that it is less expensive to deny than to afford them." *Watson v. City of Memphis*, 373 U.S. 526, 537 (1963).

The City also contends that the pier-and-spandrel system is not viable because it requires engineering (drilling through the front instead of the back of the retaining wall,

4

Tr. 260:9–19) that violates federal guidelines. Opp. at 20–21. Yet the City can (but has not even tried to) seek an exemption from these guidelines. Tr. 394:5–395:4, 646:4–16; Pls.' Ex. 50-K. In short, the City's tree-removal plan is not the product of a serious attempt to employ the least restrictive means to further a compelling interest.

*Anti-Nesting.* So too with the City's proposed anti-nesting measures. To justify driving cormorants out of the Project Area, the City hints at supposed harm from human contact with bird feces. Opp. at 23. But the City knows that it is not pursuing anti-nesting measures based on a feces concern, and it presented zero expert evidence to that effect. Mot. at 16; Tr. 557:6–10. Moreover, the evidence shows that municipalities like the City have been unable to substantiate "public health concerns" due to feces, as opposed to mere personal sanitation issues. Pls.' Ex. 21 at 12.

The real reason the City wants to drive out migratory birds is because their seasonal nesting might pause construction. Opp. at 22. But again, this is "the kind of 'broadly formulated interest[]' that does not satisfy the scrutiny mandated by TRFRA." *Barr*, 295 S.W.3d at 306. Further, the City never considered alternatives that could accommodate Plaintiffs' religious exercise. For example, the undisputed testimony is that *no* migratory birds nest for a four-month period, Tr. 565:4–11—over half the time the City believes it needs for construction. Opp. at 22. The City never considered whether it could complete construction within that four-month period; accelerate construction; deter new nesting after construction began; or simply resume any remaining work after migratory birds leave the Project Area again.

5

Similarly, the City never considered whether it could complete construction within the four-month period when no migratory birds nest plus the period when egrets and herons (but not cormorants) nest: Cormorants are the last migratory bird species to arrive—and the last to leave—the Project Area, Tr. 549:10–16; Pls.' Ex. 49-F, which means that the City could engage in anti-nesting measures that would not interfere with the cormorants and Plaintiffs' religious exercise. Finally, the City never investigated whether it can deter egrets and herons—the real targets of these measures—without deterring cormorants. Dkt. 19 ¶ 59; Tr. 531:1–533:14, 559:15–1, 567:11–23. The City's citationless representation otherwise (Opp. at 22–23) is mistaken. All this is fatal on strict-scrutiny review.

### B.     The City's Actions Violate Article I, § 6-a of the Texas Constitution.

The City similarly offers no serious response to Plaintiffs' argument on the merits of their Article I, § 6-a claim. Indeed, the City does not dispute that the Constitution's plain text "prohibits a city from issuing a decision or rule 'that prohibits or limits religious services.'" Mot. at 17. Instead, the City again argues that the district court gave Plaintiffs the access they requested. Opp. at 14. That is incorrect. *See supra* Section I(A). And the City offers no argument against the merits of Plaintiffs' claim for access.[3] As for Plaintiffs' challenge to the City's tree-removal and anti-nesting measures, the City

---

[3] The City "denies" Plaintiffs made a claim for access under Article I, § 6-a. Opp. at 14. The City is wrong. *See* Dist. Ct. Dkt. 52 at 21 (stating under Article I, § 6-a heading that "[t]he City's fencing off … has the effect of closing Plaintiffs' place of worship").

posits that "there is no constitutional right to use public property as a place of worship." Opp. at 14. The City further insists that "the government has the right to limit conduct on its own property, even if such limitation might also impose limits on the exercise of religion." *Id.* at 15. But the cases the City cites in support are not Article I, § 6-a cases, or even cases addressing Texas law. They are cases involving claims under the *federal* Free Exercise Clause. *See id.* at 14–17. They are thus irrelevant to whether the City's proposed measures violate Article I, § 6-a of the Texas Constitution.

There also are good reasons why the Texas Supreme Court—if confronted with the question—would likely reject the City's attempt to import these cases into Article I, Section 6-a. Those cases trace back to *Lyng v. Northwest Indian Cemetery Protective Association*, 485 U.S. 439 (1988), in which the United States Supreme Court held that building a road and harvesting timber in areas sacred to Native Americans did not violate the Free Exercise Clause. The Supreme Court held as much because "[t]he crucial word in the [Clause] is 'prohibit.'" *Id.* at 451. The Court reasoned that the government's construction projects did not threaten to "prohibit" the free exercise of the Native Americans' religion—but noted that "a law [as here] prohibiting [Native Americans] from visiting [their sacred area] would raise a different set of constitutional questions." *Id.* at 453.

The "crucial" word "prohibit" that drove the decision in *Lyng* is not present in the Texas Constitution: "No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion[.]" Tex. Const. art. I,

§ 6. In fact, TRFRA itself flows from the Texas Constitution's command that "it shall be the duty of the Legislature to pass such laws as may be necessary to protect equally every religious denomination in peaceable enjoyment of *its own mode of public worship*." Tex. Const. art. I, § 6 (emphasis added). And no Texas court has ever invoked the "*Lyng* rule" in a case under the Texas Constitution.

The broad protection under Article I, Section 6-a of the Texas Constitution squarely covers the interference imposed and proposed by the City. And although the Texas Supreme Court has often assumed without deciding that the federal and state provisions are coextensive, *e.g.*, *HEB Ministries, Inc. v. Tex. Higher Educ. Coordinating Bd.*, 235 S.W.3d 627, 649–50 & n.87 (Tex. 2007), Plaintiffs have a powerful argument that Texas's provision is broader in the respect that *Lyng* found dispositive, *see Texas Dep't of State Health Servs. v. Crown Distributing LLC*, 647 S.W.3d, 648, 677 (Tex. 2022) (Young, J., concurring); *cf. Barr*, 295 S.W.3d at 296 n.37 (noting that the Texas Supreme Court has never adopted *Employment Division v. Smith* for purposes of the Texas Constitution).

Finally, even if *Lyng* were instructive, it would support Plaintiffs. The Court emphasized "that the Government has taken numerous steps in this very case to minimize the impact that construction … will have on the Indians' religious activities." 485 U.S. at 454. For all the reasons explained above and in Plaintiffs' motion, however, the City has extended no such accommodation to Plaintiffs, notwithstanding Plaintiffs' specific testimony that they do not object to construction if the design does not destroy their ability to practice their religion. Tr. 113:23–114:2, 134:16–19.

8

The City's position in this case is extreme: It believes it can "impose limits on the exercise of religion" because it owns the land. Opp. at 15; *see* Dist. Ct. Dkt. 59 at 8 (district court adopting similar view). But this narrow view of substantial burden is incompatible with more recent cases. *Cf. Landor v. Louisiana Dep't of Corr. & Pub. Safety*, 82 F.4th 337, 340 (5th Cir. 2023); *see Tanzin v. Tanvir*, 141 S. Ct. 486, 492 (2020). And it is exactly backwards: "Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of *the public*," not the government. *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515 (1939) (emphasis added). The Texas Constitution and TRFRA limit how the City can burden religious exercise in a public park. Just as a city cannot extinguish speech rights simply because it owns a public park, it cannot violate religious rights either. *See Fowler v. State of R.I.*, 345 U.S. 67, 69 (1953).

## II.    THE DISTRICT COURT'S OCTOBER 26 ORDER IS MISTAKEN.

After the City filed its Opposition in this Court, the district court denied Plaintiffs' motion for an injunction pending appeal. Dist. Ct. Dkt. 59. A few points bear mentioning. First, that order did not address the district court's mistaken waiver finding in the October 11 order regarding individual prayer and worship access. Second, the order suggested that Plaintiffs want "the Court [] to tell the property owner City how to engineer the project." *Id.* at 2. That's not true: Plaintiffs simply ask the City to accommodate—even to attempt to accommodate—their religious beliefs as required by state and federal law. Tr. 78:20–23, 111:21–22, 114:7–14, 335:24–336:1, 342:16–343:22, 407:2–5, 464:23–465:1. Third, the order urged Plaintiffs to "compromise." *Id.*

9

at 3. Plaintiffs have always been willing to work with the City to find reasonable accommodations, but they cannot "compromise" their religious beliefs. Fourth, the district court cited *Lyng* and its progeny to conclude that Plaintiffs have no viable claim. *Id.* at 3–7. This was erroneous for the reasons discussed above. Finally, the order does not address Plaintiffs' TRFRA claims.

## CONCLUSION

Plaintiffs request that the Court grant their emergency motion for injunction pending appeal.

October 30, 2023

Respectfully submitted,

*/s/Mark W. Rasmussen*
Mark W. Rasmussen
Margaret I. Lyle
Jonathan D. Guynn
J. Benjamin Aguiñaga
Chance McCraw
Timothy M. Villari
JONES DAY
2727 N. Harwood St.
Dallas, Texas 75201
214-220-3939
mrasmussen@jonesday.com
milyle@JonesDay.com
jguynn@jonesday.com
jbaguinaga@jonesday.com
cmccraw@jonesday.com
tvillari@jonesday.com

*Counsel for Plaintiffs*

*/s/John Greil*
John Greil
Steven T. Collis
LAW AND RELIGION CLINIC
UNIVERSITY OF TEXAS SCHOOL OF LAW
727 East Dean Keeton St.
Austin, Texas 78705
(512)-471-5151
john.greil@law.utexas.edu
Steve.collis@law.utexas.edu

*Counsel for Plaintiffs*

11

**CERTIFICATE OF SERVICE**

I certify that on October 30, 2023, the foregoing motion was electronically filed with the United States Court of Appeals for the Fifth Circuit using the CM/ECF system, and that all parties required to be served have been served. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

/s/ *Chance B. McCraw*
Chance B. McCraw
*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2571 words, excluding parts exempted by Rule 27(a)(2)(B); and (2) the typeface and type style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface (14-point Garamond) using Microsoft Word (the program used for the word count).

Dated: October 30, 2023

*/s/ Chance B. McCraw*
Chance B. McCraw
*Counsel for Plaintiffs*