No. 23-50746

---

## In the United States Court of Appeals
## for the Fifth Circuit

---

GARY PEREZ AND MATILDE TORRES,

*Plaintiffs-Appellants,*

v.

CITY OF SAN ANTONIO,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Western District of Texas
Honorable Fred Biery
(5:23-cv-00977-FB)

---

## *AMICUS CURIAE* BRIEF OF THE INTERNATIONAL COUNCIL
## OF THIRTEEN INDIGENOUS GRANDMOTHERS
## AND CAROL LOGAN IN SUPPORT OF APPELLANTS

---

Stephanie Hall Barclay
PROFESSOR OF LAW, NOTRE DAME LAW SCHOOL
John A. Meiser
DIRECTOR, NOTRE DAME LAW SCHOOL
RELIGIOUS LIBERTY CLINIC
1338 Biolchini Hall
Notre Dame, IN 46556
jmeiser@nd.edu
Telephone: (574) 631-3880

*Counsel for* Amici Curiae

## CERTIFICATE OF INTERESTED PERSONS & CORPORATE DISCLOSURE STATEMENT

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this court may evaluate potential disqualification or recusal.

1.    Plaintiffs-Appellants Gary Perez and Maltide Torres

2.    Counsel for Plaintiffs-Appellants (listed below)

Mark W. Rasmussen
Margaret I. Lyle
Jonathan D. Guynn
J. Benjamin Aguiñaga
Chance McGraw
Timothy M. Villari

*Jones Day*
*2727 N. Harwood St.*
*Dallas, TX 75201*

John Greil
Steven T. Collis

*Law and Religion Clinic*
*University of Texas School of Law*
*727 East Dean Keeton St.*
*Austin, TX 78705*

3.    Defendant-Appellee City of San Antonio, Texas

4.     Counsel for Defendant-Appellee (listed below)

Fred R. Jones
Ian M. McLin
Lee Brinson Warren
Natalie Friend Wilson
Sara Murray

*Langley & Banack, Incorporated*
*745 E. Mulberry Ave, Ste. 700*
*San Antonio, TX 78212*

Jane Webre

*Scott, Douglass & McConnico, LLP*
*303 Colorado St., Ste. 2400*
*Austin, TX 78701*

Deborah Klein

*Deputy City Attorney*
*City of San Antonio*
*International Center*
*203 South St. Mary's Street, Second Floor*
*San Antonio, TX 78205*

5.     *Amici Curiae* International Council of Thirteen Indigenous
Grandmothers and Carol Logan

6.     Counsel for *Amici Curiae* (listed below)

Stephanie Hall Barclay
John A. Meiser

*Notre Dame Law School Religious Liberty Clinic*
*1338 Biolchini Hall*
*Notre Dame, IN 46556*

Pursuant to Federal Rule of Appellate Procedure 26.1, the *amici* state that they have no parent corporation and no stock.

*/s/ John A. Meiser*

*Attorney of Record for* Amici Curiae
*International Council of Thirteen
Indigenous Grandmothers and Carol
Logan*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...........................................i

TABLE OF CONTENTS ............................................................iv

TABLE OF AUTHORITIES ........................................................v

INTERESTS OF *AMICI CURIAE* ...........................................1

SUMMARY OF THE ARGUMENT .........................................2

ARGUMENT ...........................................................................6

    I.  The planned desecration of the sacred area would substantially—and irreparably—burden religious exercise ...................................6

        A.  Desecrating or destroying religious exercise imposes a substantial burden upon believers .............................................7

        B.  The law does not support the City's cramped interpretation of substantial burden.......................................11

    II.  Decimating this site would perpetuate a history of callousness and coercion regarding Indigenous sacred sites...........................19

CONCLUSION ......................................................................25

CERTIFICATE OF COMPLIANCE .......................................26

CERTIFICATE OF SERVICE .............................................27

# TABLE OF AUTHORITIES

**Cases**

*A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248 (5th Cir. 2010) ............................................................................ 11, 14

*Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) ...................................... 14

*Apache Stronghold v. United States*, 38 F.4th 742 (9th Cir. 2022) ........... 13

*Baranowski v. Hart*, 486 F.3d 112 (5th Cir. 2007) ................................. 16

*Barr v. City of Sinton*, 295 S.W.3d 287 ............................... 8, 10, 12, 14

*DeMarco v. Davis*, 914 F.3d 383 (5th Cir. 2019) ................................. 4, 16

*Diaz v. Collins*, 114 F.3d 69 (5th Cir. 1997) ....................................... 16

*Dorman v. Aronofsky*, 36 F.4th 1306 (11th Cir. 2022) ............................ 11

*Greene v. Solano Cnty. Jail*, 513 F.3d 982 (9th Cir. 2008) ...................... 12

*Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014) ................................. 11

*Holt v. Hobbs*, 574 U.S. 352 (2015). ................................................ 15

*Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059 (9th Cir. 2011) ............................................................ 12

*Longoria v. Dretke*, 507 F.3d 898 (5th Cir. 2007) ................................. 16

*Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988) .................................................................... 18

*Mack v. O'Leary*, 80 F.3d 1175 (7th Cir. 1996) ..................................... 11

*Mayfield v. Tex. Dep't Crim. Just.*, 529 F.3d 599 (5th Cir. 2008) ............. 16

*Merced v. Kasson*, 577 F.3d 578 (5th Cir. 2009) ................................. 9, 10

*Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058
    (9th Cir. 2008) ................................................................ 12, 13, 14, 18

*Opulent Life Church v. City of Holly Springs*, 697 F.3d 279
    (5th Cir. 2012) ........................................................................... 9

*Patel v. U.S. Bureau of Prisons*, 515 F.3d 807 (8th Cir. 2008) ................... 11

*Ramirez v. Collier*, 595 U.S. 411 (2022) ........................................................ 16

*Sherbert v. Verner*, 374 U.S. 398 (1963) .................................................. 14, 15

*Slockish v. U.S. Dep't of Transp.*, 2021 WL 5507413
    (9th Cir. Nov. 24, 2021) (No. 21-35220) ................................... 24

*Slockish v. U.S. Fed. Highway Admin.*, No. 08-cv-01169, 2018 WL
    2875896 (D. Or. June 11, 2018) ......................................... 22, 23

*Sossamon v. Lone Star State of Tex.*, 560 F.3d 316 (5th Cir. 2009) .......... 16

*Vill. of Bensenville v. FAA*, 457 F.3d 52, 67 (D.C. Cir. 2006) ...................... 18

*Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005) ................................ 13

*Wisconsin v. Yoder*, 406 U.S. 205 (1972) ...................................................... 15

*Yellowbear v. Lampert*, 741 F.3d 48 (10th Cir. 2014) ................................. 16

**Statutes**

Tex. Civ. Prac. & Rem. Code Ann. § 110.003 ....................................... 3, 8, 18

**Other**

Stephanie Hall Barclay & Michalyn Steele, *Rethinking
    Protections for Indigenous Sacred Sites*,
    134 Harv. L. Rev. 1294 (2021) .................................. 4, 15, 18, 20, 21

Alex Tallchief Skibine, *Towards a Balanced Approach for the Protection of Native American Sacred Sites*, 17 Mich. J. Race & L. 269 (2012) ...................................................................................................20

Plaintiffs' Objections to Magistrate's Findings and Recommendations at 17–18, *Slockish v. U.S. Fed. Highway Admin.*, No. 08-cv-01169 (D. Or. Apr. 22, 2020)...........................................................................23

Native Burial Sites Blown Up for US Border Wall, BBC News (Feb. 10, 2020), https://perma.cc/DC56-Z4DQ ............................................22

Erik Ortiz, Ancient Native American Burial Site Blasted for Trump Border Wall Construction, NBC News (Feb. 12, 2020, 6:13 PM), https://perma.cc/K5CY-NWDU ....................................................22

Answering Br. for Plaintiffs-Appellants, *Slockish v. U.S. Dep't of Transp.*, 2021 WL 5507413 (9th Cir. Aug. 6, 2021) (No. 21-35220) .....................................................................23, 24

## INTERESTS OF *AMICI CURIAE*[1]

*Amici curiae* are the International Council of Thirteen Indigenous Grandmothers and Carol Logan, an elder from the Confederated Tribes of Grande Ronde. *Amici* submit this brief to highlight the troubling history of governmental destruction of Indigenous sacred sites and to reject the erroneously cramped interpretation of TRFRA's broad protections suggested by the City in this case.

The International Council of Thirteen Indigenous Grandmothers is a global alliance of Indigenous elders who come together in prayer, education, and healing for Mother Earth. The members come together to protect Indigenous ways of life and to preserve the lands where Indigenous peoples live and upon which their cultures depend.

Carol Logan is an elder from the Confederated Tribes of Grande Ronde and a lineal descendant of the Clackamas People. She advocated to prevent the federal government's seizure of Indigenous sacred land in *Slockish v. U.S. Department of Transportation*. Only after the

---

[1] This brief was not authored in whole or in part by a party or counsel to a party. No person other than *amici curiae*, their members, and their counsel contributed money that was intended to fund preparing or submitting this brief. *See* Fed. R. App. P. 29.

government seized and destroyed sacred sites there did it concede that the destruction was unnecessary. *See infra* Part II. Ms. Logan hopes to prevent similar needless destruction here.

## SUMMARY OF THE ARGUMENT

For centuries, generations of the Lipan-Apache people have gathered for prayer, mediation, and worship along a bend in the Yanaguana—known as the San Antonio River in English—which mirrors the constellation Eridanus in the skies above. It is a place where the lower, middle, and upper worlds come together; a place that reflects the Yanaguana creation story, which teaches that life began in the area when droplets of water fell to the earth from the feathers of a cormorant. And, because of the confluence of these spiritual elements, it is the only place in the world where certain religious ceremonies involving the river, the cormorants, and the stars above may be performed.

Regrettably, it is also a place that is at risk of being the latest casualty of another, much darker, centuries-old tradition: the callous desecration and destruction of Native American sacred sites by government action. The City of San Antonio has already barred access to the site by Lipan-Apache members like Gary Perez and Maltide Torres

while it prepares a project to restore concrete retaining walls in the area. Through that project, the City now plans to destroy the spiritual ecology of the site by cutting down trees and preventing cormorants from nesting. If this comes to pass, the Lipan-Apache stand to forever lose their ability to perform religious ceremonies that require the sacred convergence of the riverbend, the trees, and the birds who live there.

None of this is necessary. Indeed, the City has forged ahead with its plans despite at least two alternative designs that would accomplish its goals while saving both birds and trees.

The City's actions would not only perpetuate a shameful history of governmental disregard for Indigenous sacred sites, but would also violate the law. The Texas Religious Freedom Restoration Act (TRFRA) prohibits the City from placing a substantial burden on "a person's free exercise of religion" unless it can satisfy the most exacting scrutiny. Tex. Civ. Prac. & Rem. Code § 110.003(a). A burden is at its most substantial when the government action renders a religious exercise impossible—a commonsense truth recognized by both Texas and federal courts. Indeed, scores of cases recognize that the government "substantially burdens" a

person's religious exercise when it denies her the very means of practicing her faith.

Perhaps sensing the extent of the religious burden threatened by its actions, the City seems to have acquiesced in that point for the purposes of this appeal.  *See* Ct. App. Dkt. 48, at 11.  But the City has said that it will fight the point later at trial.  It suggests that only the government's *punishment* of a religious exercise—and not its *destruction* of that same exercise—can constitute a "substantial burden."  *Id.*  That argument flouts common sense and misunderstands the law.  This Court must resist any invitation by the City to adopt that pernicious reading of TRFRA into this Circuit's law.[2]

There is no reason for this Court to abide the City's severe restriction of the Lipan-Apache's religious exercise, a restriction that continues a shameful pattern of abuse and ignorance regarding

---

[2] Although this brief focuses specifically on the appellants' claims under TRFRA, similar arguments apply to the religious burdens protected by federal and state constitutional law.  Neither gives the City the authority to vitiate religious exercise in the way threatened here. *Cf.* Stephanie Hall Barclay & Michalyn Steele, *Rethinking Protections for Indigenous Sacred Sites*, 134 Harv. L. Rev. 1294, 1326–46 (2021); *see also, e.g.*, *DeMarco v. Davis*, 914 F.3d 383, 388–90 (5th Cir. 2019) (confiscation and destruction of prisoner's religious materials constituted substantial burden for purposes of Free Exercise claim).

Indigenous sacred sites.  For many Native peoples, including the Lipan-Apache, religious practice is inextricably tied to specific land.  But unlike other faith groups, which often own the land on which their churches sit, Indigenous peoples rarely own their sacred land.  Instead, the government does.  This makes people of Indigenous faiths particularly vulnerable to religious abuse at the hands of the government, as the facts of this case demonstrate.

This Court should squarely hold that the City's actions substantially burden the Lipan-Apache's religious exercise.  Any contrary holding would undermine TRFRA's broad-ranging protection, perpetuate the legacy of callousness toward Native American land-based religious practices, and imbue the law with an invidious double-standard that guards against lesser restrictions on many mainstream religious practices while failing to prevent total destructions of the practices of Native peoples.

## ARGUMENT

### I.   The planned desecration of the sacred area would substantially—and irreparably—burden religious exercise.

San Antonio's proposed project will substantially burden the Lipan-Apache by denying their access to, desecrating, and effectively destroying the sacred ecology of the Yanaguana area.

To the Lipan-Apache people, the Yanaguana area is both sacred and irreplaceable, occupying a critical place in their creation story. "[C]ertain . . . religious ceremonies that they are required to perform can only be accomplished at this riverbend," such as the Midnight Water ceremony in which the Lipan-Apache view a reflection of a cormorant in the river (representing the lower world), while standing in the presence of nesting cormorants (the middle world), underneath the constellation Eridanus above (the upper world).  D. Ct. Dkt. 52, at 12, ¶ 47.  The City has already substantially burdened the appellants' religious exercise by denying access to this site and barring them from worshipping there.  *Id.* at 22, ¶ 13.  The City now plans to make that burden irreversible by cutting down the sacred trees and driving away the sacred birds that are integral to religious exercise.  *Id.*  As a result, the appellants will be unable to perform religious practices that require the convergence of

these spiritual elements, like the Midnight Water ceremony.  If they can continue to conduct ceremonies like this at all, they will be able to do so only in a manner that is "not religiously acceptable."  *Id.* at 13, ¶ 52.

For purposes of this appeal, the City appears not to contest that these actions would substantially burden the appellants' religious exercise.  *See* Dkt. 48, at 11.  But the City suggests it will later argue that it has *not* imposed a substantial burden because it has not "coerced the Appellants to act contrary to their religious beliefs" through penalties or denial of benefits.  *Id.* (quotation omitted).  The City's proposed distinction between acts that eradicate religious exercise and those that punish it misunderstands the law and defies common sense.  As the City seems to acknowledge, TRFRA forbids the City from burdening religious exercise by making it more costly to perform.  TRFRA does not excuse the City's choice to make religious exercise altogether impossible instead.

**A.    Desecrating or destroying religious exercise imposes a substantial burden upon believers.**

Texas law recognizes the straightforward proposition that the government substantially burdens religious exercise when it prohibits, desecrates, or destroys a religious practice.

TRFRA broadly provides that the government "may not substantially burden a person's free exercise of religion" unless the government "demonstrates that the application of the burden to the person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that interest." Tex. Civ. Prac. & Rem. Code § 110.003. The statute leaves the definition of "substantial burden" to the courts. *See Barr v. City of Sinton*, 295 S.W.3d 287, 296, 301 (Tex. 2009). Texas's Supreme Court has held that whether a government imposition on religious exercise is a "substantial burden" is effectively a matter of "the degree to which a person's religious conduct is curtailed and the resulting impact on his religious expression." *Id.* at 301. The "ordinary meaning[]" of "substantial" has two components: the burden must be "real," not "merely perceived"; and "significant," not "trivial." *Id.* "These limitations," the court emphasized, "leave a broad range of things covered." *Id.*

That broad range plainly includes the City's actions here. Indeed, the City has already prohibited the appellants from accessing the sacred site, which they must do in order to practice certain elements of their faith. That ban, even if temporary, is undoubtedly a substantial burden

on their religious exercise. *See Merced v. Kasson*, <u>577 F.3d 578, 590</u> (5th Cir. 2009) ("[Under TRFRA], at a minimum, the government's ban of conduct sincerely motivated by religious beliefs substantially burdens an adherent's free exercise of that religion." (emphasis omitted)); *Opulent Life Church v. City of Holly Springs*, <u>697 F.3d 279, 295</u> (5th Cir. 2012) ("The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." (quotation omitted)).

Even if physical access were one day restored, the City of San Antonio promises to severely burden the Lipan-Apache's spiritual practices by ridding the site of many ecological features necessary to perform them. This Court has recognized under TRFRA that, if the government makes it so that a person "cannot perform the ceremonies dictated by his religion," that "is a burden, and it is substantial." *Merced*, <u>577 F.3d at 591</u>. For the Lipan-Apache, "a physical location's capacity to function as a holy place relies on the presence of trees, birds, and other natural features." D. Ct. Dkt. 52, at 12, ¶ 48. By cutting down dozens of trees and driving away cormorants, San Antonio would leave the site "spiritually inert," thus "making it impossible" for the Lipan-Apache to

engage in certain religious practices. *Id.* at 13, ¶ 54. That will, at very least, deny the appellants' any ability to practice elements of their religion for decades as the site recovers. *See* D. Ct. Dkt. 49, at 5–6. And it may well *permanently* destroy these features of the land, threatening the Lipan-Apache's ability ever to perform these ceremonies again. *See id.* at 5 (City's proposed replacement trees will be insufficient to guarantee cormorant nesting); *id.* at 6 (newly planted trees will not preserve the present trees' ancestral connections).

Much less than this is needed to show a substantial burden, and the Texas Supreme Court has emphasized that "[a] restriction need not be completely prohibitive to be substantial." *Barr*, 295 S.W.3d at 305. The City of San Antonio's destruction of Appellants' ability to practice certain religious rituals "presents a much stronger case." *Merced*, 577 F.3d at 590. Not even alternate accommodations—or the fact that Appellants may still retain the ability to exercise *other* aspects of their religion—"alter the fact that the rituals which . . . are important to [them] . . . are now completely forbidden."[3] *A.A. ex rel. Betenbaugh v.*

---

[3] A number of other circuits have recognized the same under the federal Religious Freedom Restoration Act (RFRA) and Religious Land

*Needville Indep. Sch. Dist.*, 611 F.3d 248, 264 (5th Cir. 2010) (quotation omitted).

## B. The law does not support the City's cramped interpretation of substantial burden.

The City resists the straightforward conclusion that it would "substantially burden" a person's religious exercise to eliminate her ability to engage in it by suggesting that TRFRA simply does not concern itself with those kinds of impositions. Specifically, the City asserts that "substantial burdens" include *only* government actions which "coerce" a person "to act contrary to [her] religious beliefs" through threats of

---

Use and Institutionalized Persons (RLUIPA), which provide similar protections. *See, e.g.*, *Dorman v. Aronofsky*, 36 F.4th 1306, 1314 (11th Cir. 2022) (explaining that a substantial burden is any burden "more than an inconvenience" and is a burden that "tend[s] to force adherents to forego religious precepts" (internal quotation marks omitted)); *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014) ("The greater restriction (barring access to the practice) includes the lesser one (substantially burdening the practice)."); *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008) (a substantial burden "significantly inhibit[s] or constrain[s] conduct or expression that manifests some central tenet of a person's individual religious beliefs" (quotation omitted)); *Mack v. O'Leary*, 80 F.3d 1175, 1179 (7th Cir. 1996), *vacated on other grounds* ("[A] substantial burden on the free exercise of religion . . . is one that forces adherents of a religion to refrain from religiously motivated conduct, inhibits or constrains conduct or expression that manifests a central tenet of a person's religious beliefs, or compels conduct or expression that is contrary to those beliefs.").

penalties or denials of benefits.  Ct. App. Dkt. 48, at 11.  Not so.  The City

cannot avoid a substantial-burden finding by imposing a larger burden

(destruction) rather than a smaller one (penalty).  To conclude otherwise

would flout common sense and undermine TRFRA's "broad range" of

protections.  *Barr*, 295 S.W.3d at 301.

**First,** the City has not identified any case that would support such

a limited reading of TRFRA.  In its opposition to Appellants' motion for

an injunction pending appeal to this Court, the City cited only *Navajo

Nation v. U.S. Forest Service*, 535 F.3d 1058 (9th Cir. 2008), a Ninth

Circuit case interpreting the federal RFRA.  *See* Ct. App. Dkt. 48, at 11–

12.  That case does not bind this Court at all, let alone when interpreting

a different statute.  Worse still, the City's argument would be an outlier

even within the Ninth Circuit, which has otherwise recognized that the

government *does* impose a substantial burden when it makes it

impossible for a person to engage in certain religious practices, including

using a place of worship consistent with theological requirements.[4]  Even

---

[4] *See, e.g.*, *Int'l Church of Foursquare Gospel v. City of San Leandro*,
673 F.3d 1059, 1066–70 (9th Cir. 2011) (preventing plaintiff from
building place of worship could constitute substantial burden); *Greene v.
Solano Cnty. Jail*, 513 F.3d 982, 988 (9th Cir. 2008) (finding "little

in *Navajo Nation*, the court excluded only burdens that fall "short of" scenarios in which the government has made religious exercise more costly. *Id.* at 1070. The court observed that the action in *Navajo Nation*—covering a mountain with artificial snow made from recycled wastewater—would not result in any physical destruction: "no plants, springs, natural resources, shrines with religious significance, or religious ceremonies" would be affected nor any "places of worship made inaccessible." *Id.* at 1062–63. The plaintiffs instead retained "virtually unlimited access . . . for religious and cultural purposes" and could still "conduct their religious ceremonies." *Id.* at 1063. The same could not be said here.[5]

---

difficulty" concluding that a prison's refusal to allow inmate to attend a worship service imposed a "substantial burden" on his religion, even if it did not put him to a "false choice" of forgoing religious practice or suffering discipline); *Warsoldier v. Woodford*, 418 F.3d 989, 996 (9th Cir. 2005) ("physically forc[ing] [an inmate] to cut his hair" would impose a substantial burden).

[5] Moreover, the Ninth Circuit recently vacated and reheard *en banc* a three-judge panel decision which adopted the narrow view of substantial burden suggested by the City here. *See Apache Stronghold v. United States*, 38 F.4th 742, 760 (9th Cir. 2022), *vacated upon reh'g en banc*, 56 F.4th 636 (9th Cir. 2022). Among other things, the en banc court is considering whether to overrule *Navajo Nation* or at least to clarify its reach. *See, e.g.*, *id.* at 781 (Berzon, J., dissenting) ("[*Navajo Nation*] did not involve a situation in which the government objectively and severely

Before the district court, the City also cited this Court's decision in *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004), ostensibly in support of this same narrow reading of "substantial burden." *See* D. Ct. Dkt. 34, ¶¶ 22, 41. Once again, *Adkins* is a RLUIPA case and does not control this Court's interpretation of TRFRA. Indeed, the Texas Supreme Court previously discussed *Adkins* and *declined* to adopt any "bright-line rule" for substantial burden derived from it. *Barr*, 295 S.W.3d at 301–02. Instead, Texas courts focus "on the degree to which a person's religious conduct is curtailed and the resulting impact on his religious expression." *Id.* at 301. This Court has therefore declined to follow *Adkins* in TRFRA cases, looking instead to the "more skeletal framework" articulated by the Texas Supreme Court in *Barr*. *See Needville Indep. Sch. Dist.*, 611 F.3d at 264 & n.55. And, under that framework, it is difficult to conceive of anything that would "curtail" or "impact" a person's religious conduct more than eliminating her very ability to engage in it.

---

interfered with plaintiff's access to religious locations or resources. . . . [I]f—contrary to my view—*Navajo Nation*'s discussion of the meaning of 'substantial burden' does not leave room to recognize greater burdens than those described in *Sherbert* and *Yoder*, . . . then I would hold that the Supreme Court since *Navajo Nation* was decided has undercut the theory or reasoning underlying *Navajo Nation* in such a way that the cases are clearly irreconcilable." (cleaned up)).

***Second***, the City's narrow reading of TRFRA would turn the substantial burden analysis on its head. The Supreme Court has long recognized that government imposes substantial burdens on religious exercise when it makes voluntary religious exercise more costly or difficult, through things like threatened penalties or denials of benefits.[6] At the far end of the spectrum, even a small fine—as few as five dollars— may be enough to create a substantial burden. *See Wisconsin v. Yoder*, 406 U.S. 205, 207–08 (1972).[7] Courts have recognized the obvious conclusion that the substantial burden requirement is more easily satisfied at the opposite end of the spectrum, when the government makes religious exercise impossible by taking away the choice to engage in it altogether. Just last year, the Supreme Court had little difficulty concluding that a policy that made certain religious exercise in Texas's execution chambers impossible imposed a "substantial burden" under

---

[6] *See, e.g.*, *Sherbert v. Verner*; 374 U.S. 398, 399–401 (1963); *Wisconsin v. Yoder*, 406 U.S. 205, 207–08, 218 (1972); *Holt v. Hobbs*, 574 U.S. 352 (2015).

[7] To be sure, "at some point . . . a government consequence would likely be de minimis enough as not to constitute any meaningful interference with voluntary religious choice." Barclay & Steele, *supra* n.2, at 1345.

RLUIPA. *Ramirez v. Collier*, 595 U.S. 411, 425–27 (2022). In the words of then-Judge Gorsuch in another RLUIPA case, "it doesn't take much work to see that" making religious exercise impossible "easily" results in a substantial burden by removing any "degree of choice in the matter." *Yellowbear v. Lampert*, 741 F.3d 48, 56 (10th Cir. 2014).

This Court's own cases are consistent with that approach. In *Baranowski v. Hart*, for example, this Court held that a prison's refusal to provide a Jewish prisoner with a kosher diet "may be deemed to work a substantial burden on [the] practice of his faith" under RLUIPA. 486 F.3d 112, 125 (5th Cir. 2007). This Court reached the same conclusion in cases where prisoners had their religious materials confiscated and destroyed, *DeMarco*, 914 F.3d at 389–90, were denied the ability to gather for necessary group worship, *Mayfield v. Tex. Dep't Crim. Just.*, 529 F.3d 599, 613–15 (5th Cir. 2008), were denied access to chapel services, *Sossamon v. Lone Star State of Texas*, 560 F.3d 316 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011), or were prevented from growing out their hair, as required by their religious beliefs, *Longoria v. Dretke*, 507 F.3d 898, 903 (5th Cir. 2007). *See also Diaz v. Collins*, 114 F.3d 69, 72 (5th Cir. 1997) (suggesting that denial of

prisoner's ability to possess religiously necessary items may impose substantial burden).

As in those cases, here the City of San Antonio threatens to take away the Lipan-Apache's ability to practice critical elements of their religion. Though the district court ordered the City to give the Appellants limited access for the immediate future, that reprieve will be short-lived if it proceeds to decimate the site. And once the spiritual ecology of the site is destroyed, it matters not whether the City continues to deny Appellants "access" to the site or restricts what they may do there, any more than it would be meaningful to let a Christian still "access" a once sacred pilgrimage site that the government demolished.

*Third,* the substantial-burden analysis does not change merely because this case involves government property. The City has suggested that actions taken on government property, categorically, do not constitute "substantial burdens" on religious exercise, regardless of their consequences. *See* Ct. App. Dkt. 48, at 15; D. Ct. Dkt. 34, ¶ 38; D. Ct. Dkt. 56, ¶ 23. Not so. For starters, that argument finds no home in TRFRA, which promises expansive protections against burdens imposed by "any ordinance, rule, order, decision, practice, *or other exercise of*

*governmental authority*." Tex. Civ. Prac. & Rem. Code § 110.002(a) (emphasis added). The federal cases the government relies on for its argument—like *Navajo Nation* and *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988)—of course say nothing to undermine this. They also say nothing like what the government suggests, even for purposes of federal law. Those courts could have written much shorter opinions if the rule were simply "government land, government rules." Instead, those courts took pains to highlight the limited nature of the government interference with religious sensibilities and the lack of physical destruction of elements of the sacred sites. *See Lyng*, 485 U.S. at 439; *Navajo Nation*, 535 F.3d at 1058. Indeed, other courts have held that RFRA applies to "a federal governmental decision about what to do with federal land." *E.g., Vill. of Bensenville v. FAA*, 457 F.3d 52, 67 (D.C. Cir. 2006).

Further, it is precisely *because* the City claims control over this property that a baseline of interference with religious exercise exists, much the same way that a baseline of interference exists in the contexts of prison, the military, or even government zoning. *See* Barclay & Steele, *supra* n.2, at 1333–38. In those other areas, the Government has

18

recognized that certain religious practices will be impossible absent some affirmative accommodation of religious exercise. *See id.* Ignoring this baseline of government interference here will result in a disparity in the law that provides lesser protection for Indigenous religious exercise regarding sacred sites.

## II. Decimating this site would perpetuate a history of callousness and coercion regarding Indigenous sacred sites.

The narrow injunction granted by the court below will not remedy the many burdens imposed upon the Lipan-Apache people by the City's actions here. The appellants continue to suffer irreparable harm every day that they are unable to worship in the sacred area, a harm that will be made worse if the City moves forward with its planned decimation of the site itself. Unfortunately, this would be yet another act of governmental violence and callousness that Indigenous people know all too well.

For many Native peoples, they are people of a particular place, and their particular homelands and landscapes are inextricably tied to their

identity.[8] So, too, are particular places inextricably tied to spiritual and cultural rites and identity. As Professor Alex Skibine and others have noted, "Native American religions are land based." Alex Tallchief Skibine, *Towards a Balanced Approach for the Protection of Native American Sacred Sites*, 17 Mich. J. Race & L. 269, 270 (2012). To deprive tribal people of access to certain sites, or to compromise the integrity of those sites, is to effectively prohibit the free exercise of their religion. There is no adequate substitute and no adequate compensation for the deprivation. The religion is, for all intents and purposes, banned because the sites involved are so integral to the rites and beliefs of the people.

Yet in the United States, governments have erected numerous obstacles that inhibit use of these sacred sites by Native peoples. These obstacles, both historic and contemporary, have resulted in significant interference with Indigenous spiritual practices related to particular sites—often operating as an effective prohibition on these practices. Conflicts arise regarding use of sacred sites largely because so many of these sites are located on what is now government property. Indigenous

---

[8] Much of the material in this Section is drawn from the following article: Stephanie Hall Barclay & Michalyn Steele, *Rethinking Protections for Indigenous Sacred Sites*, 134 Harv. L. Rev. 1294 (2021).

peoples are then often placed in a difficult position, beholden to the Government to continue to engage in centuries-old practices and ceremonies. And the Government came to acquire much of this land by ignoring treaties or simply confiscating additional land. For example, at the time of the Dawes Act or General Allotment Act of 1887, 76 Indian tribes held around 138 million acres secured by treaty and executive order. By 1934, after implementation of the allotment policy, tribes had been divested of nearly 100 million additional acres of their remaining lands through opening so-called "surplus" lands to non-Indian settlement and government confiscation. Barclay & Steele, *supra* n.2, at 1311–12.

For many Indigenous peoples, the reality of government land divestiture means that their most sacred sites are completely within the government's control. And, unfortunately, the government has not often been a respectful neighbor, much less a faithful steward of these sacred spaces. At the hands of both public and private actors, graves have been despoiled, altars decimated, and sacred artifacts crassly catalogued for collection, display, or sale. *See id*. Nor is this callous destruction simply a troubling relic of the past. Within the past several years, Indigenous

sacred sites have been bulldozed,[9] developed for commercial interests, and even blown up.[10]

Draining the river, cutting down the trees, and banishing the cormorants that are sacred to the Lipan-Apache would add one more tragedy to that list. The City's arguments below suggest that because *many* free-exercise cases are about burdens that do not rise to this level, religious-liberty statutes extend *only* to those more-quotidian burdens. But it should not count against the victims of greater burdens that many cases involve lesser burdens.

After all, it is little surprise that impossibility arises often in cases involving prisons and Native Americans. For in both situations—in prisons owing to incarceration and for Natives owing to "the history of government divestiture and appropriation of Native lands"—there is "a baseline of coercion." Barclay & Steele, *supra* n.2, 1301. In such cases,

---

[9] *See Slockish v. U.S. Fed. Highway Admin.*, No. 08-cv-01169, <u>2018 WL 2875896</u>, at *1 (D. Or. June 11, 2018); *see also* Pls' Objs. to Magistrate's Findings and Recommendations at 17–18, *Slockish*, No. 08-cv-01169 (D. Or. Apr. 22, 2020), ECF No. 350.

[10] *Native Burial Sites Blown Up for US Border Wall*, BBC News (Feb. 10, 2020), https://perma.cc/DC56-Z4DQ; Erik Ortiz, *Ancient Native American Burial Site Blasted for Trump Border Wall Construction*, NBC News (Feb. 12, 2020, 6:13 PM), https://perma.cc/K5CY-NWDU.

"[m]aking religious practice physically impossible by opting to continue the passive baseline of coercion rather than an active religious accommodation is an obvious case where religious voluntarism has been defeated." *Id.*

That coercion often comes with permanent, irreparable consequences. Consider *Slockish v. U.S. Federal Highway Administration*, 2018 WL 2875896 (D. Or. June 11, 2018). There, a Federal court allowed the government to bulldoze a Native American sacred burial ground—over Native Americans' vehement objections— because the burial ground was a convenient location to put a road. This road expansion project also included the permanent destruction of old-growth trees. The government had several alternative ways to add a turn lane and make the road safer without destroying the site. But this did not matter, and the government completely destroyed it anyway. Ultimately, the government acknowledged the whole ordeal was unnecessary. After the government completed the road, it admitted that it actually *didn't* need to destroy the trees and burial ground, stating "[o]n one issue, Plaintiffs and the government agree: the destruction of Plaintiffs' sacred site never had to happen." *See* Answering Br. for

Federal Appellees at 1, 43 *Slockish v. U.S. Dep't of Transp.*, 2021 WL 5507413 (9th Cir. Nov. 24, 2021) (No. 21-35220).  That is cold comfort to the tribal elders like Carol Logan, who permanently lost a place they and their ancestors had performed religious ceremonies since time immemorial.

Here, the government risks making the same mistake it made in *Slockish*.  As in *Slockish*, the government action proposed here threatens to work an irreparable injury on Native religious believers.  And as in *Slockish*, the government justifies its proposal by advancing a cramped, dualistic reading of "substantial burden."  But under TRFRA, the kind of irreparable injury the government threatens here is surely a substantial burden.  Accordingly, this Court should recognize it as such and decline to repeat *Slockish*'s error.

## CONCLUSION

*Amici* respectfully urge this Court to recognize that the government substantially burdens adherents' religious practice when it renders that practice impossible.[11]

Respectfully submitted,

*/s/ John A. Meiser*

Stephanie Hall Barclay
PROFESSOR OF LAW, NOTRE DAME LAW SCHOOL
John A. Meiser
DIRECTOR, NOTRE DAME LAW SCHOOL
RELIGIOUS LIBERTY CLINIC
1338 BIOLCHINI HALL
Notre Dame, IN 46556
jmeiser@nd.edu
Telephone: (574) 631-3880

*Counsel for* Amici Curiae

November 15, 2023

---

[11] *Amici curiae* thank William Clark, Olivia Lyons, Christopher Ostertag, and Tess Skehan, students in the Notre Dame Law School Religious Liberty Clinic, for their work on this brief.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this amicus brief complies with Federal Rule of Appellate Procedure 29(a)(5) as it contains 5,004 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f).

The brief's typesize and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in 14-point Century Schoolbook, a proportionally spaced font.

*/s/ John A. Meiser*
John A. Meiser
*Counsel for* Amici Curiae

Dated: November 15, 2023

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit by using the Court's CM/ECF system. I further certify that service was accomplished on all parties via the Court's CM/ECF system.

*/s/ John A. Meiser*
John A. Meiser
*Counsel for* Amici Curiae

Dated: November 15, 2023