CASE NO. 23-50746

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

GARY PEREZ; MATILDE TORRES,
*Plaintiffs–Appellants / Cross-Appellees*

v.

CITY OF SAN ANTONIO,
*Defendant–Appellee / Cross-Appellant*

_____

## RESPONSE TO MOTION TO CLARIFY ADMINISTRATIVE STAY

_____

Appellee the City of San Antonio (the "City") files this response to the motion to clarify the Court's administrative stay filed by Plaintiffs-Appellants Gary Perez and Matilde Torres ("Plaintiffs").

### OVERVIEW

Throughout this expedited appeal, the City has kept Plaintiffs and the Court apprised of the status of the Brackenridge Park improvement project and the earliest dates by which the City anticipated commencing different activities. Through filings with the Court and communications with the Circuit Mediator, the City has given notice regarding the status of federal permitting and the anticipated timing of construction activities

4863-2543-0434

that would impact tree removal. Consistent with that longstanding practice of openness, the City advised Plaintiffs that it would commence its annual rookery management activities beginning February 19, 2024, because the earliest migratory birds are arriving at this time. Plaintiffs now ask this Court to clarify that all of those activities are enjoined pending this appeal. The Court should deny that relief.

The Court's temporary administrative stay needs no clarification. To maintain the status quo pending appeal, the Court previously stayed the district court's partial grant of one of Plaintiffs' three requested injunctions. The only aspect of that order that could have been "stayed" by this Court is the access injunction, which is now moot as the City opened access to the Sacred Area. Germane to Plaintiffs' motion, this Court's administrative stay does not affect the City's rookery management program, which has never been enjoined.

The Court should deny Plaintiffs' motion to clarify the administrative stay—or simply clarify that it does not enjoin the City from recommencing its rookery management program, which was not enjoined by the district court or by this Court pending appeal. Construing the "temporary administrative stay" to have the effect of enjoining the

4863-2543-0434

rookery management program without ruling on the merits would effectively give Plaintiffs the relief they seek while bypassing Plaintiffs' high burden to justify the "extraordinary remedy" of an injunction. *See Robinson v. Ardoin*, 86 F.4th 574, 587 (5th Cir. 2023). The fact that this Court declined to enter an injunction pending appeal answers the question of whether the Court's administrative stay was intended to award the same relief. If that had been the intent, the Court would simply have granted Plaintiffs' requested injunction pending appeal.

## RELEVANT BACKGROUND

In the district court, Plaintiffs sought three injunctions. First, they sought to enjoin the City from preventing Plaintiffs from accessing their "Sacred Area"—a twenty-foot by thirty-foot area situated at the northernmost point of the southern bank of the San Antonio River on a specific riverbend located within Brackenridge Park.

Second, Plaintiffs sought to enjoin the City from conducting certain tree-removal activities necessitated by the City's chosen engineering methodology to address public safety hazards as part of a large-scale rehabilitation project within the Park.

4863-2543-0434

Third, Plaintiffs sought to enjoin the City's ongoing rookery management program within the Park, based on that program's deterrence of nesting by migratory cormorants along with other more problematic migratory bird species with whom the cormorants colonize, as part of mitigating the public health and safety hazards posed by the rookery.

The district court denied injunctive relief as to both (i) tree-removal activities and (ii) the rookery management program. ROA.984. Regarding access to the Sacred Area, the court ordered the City to remove a dangerous broken limb hanging over the Sacred Area, ROA.736, and awarded very narrow relief, "granting access for 'religious services' involving 15 to 20 people for no more than an hour on specified astronomical dates coinciding with Plaintiffs' spiritual beliefs." R.E.4; ROA.985. The City has removed the dangerous limb and realigned the construction fencing, thus providing access to the Sacred Area for everyone—broader access than that ordered by the district court. Because the City has granted Plaintiffs (and everyone) access to the Sacred Area, Plaintiffs' appeal is moot as to the access issue.

4863-2543-0434

Plaintiffs appealed the district court's order denying in part and granting in part the requested injunctions. ROA.1047. Plaintiffs sought in the district court an injunction pending appeal as to all three issues. ROA.1050. Before the district court ruled on the request, Plaintiffs sought the same relief in this Court. ROA.1152. The district court denied the request for injunction pending appeal. ROA.1155. Two days later, a motions panel of this Court entered the following order (Dkt. No. 74):

---

### UNPUBLISHED ORDER

Before STEWART, GRAVES, and OLDHAM, *Circuit Judges.*
PER CURIAM:

    IT IS ORDERED that Appellants' opposed motion for an injunction pending appeal is CARRIED WITH THE CASE.

    IT IS FURTHER ORDERED that Appellants' opposed motion to expedite the appeal is GRANTED.

    IT IS FURTHER ORDERED that a temporary administrative stay is issued until further orders of the court.

---

Plaintiffs' motion to clarify now before the Court pertains to the effect of this Court's "temporary administrative stay" with respect to the district court's refusal to enjoin the rookery management program. Though the motion to clarify also addresses tree-removal activities, only

4863-2543-0434

the rookery management program is scheduled to commence in the near term, so that is the true issue presented to the Court.[1]

## RESPONSE TO MOTION TO CLARIFY

Migratory birds are soon due to start arriving in Brackenridge Park, as they do every year beginning in February. As in past years, the City plans to mitigate the public health and safety hazards posed by the birds through its rookery management program. The City anticipates needing to begin those efforts by February 19, 2024.

Plaintiffs—having tried and failed to obtain an injunction in the district court, and having tried and failed to obtain an injunction pending appeal from either that court or this Court—now seek to endanger park visitors and further frustrate the City's program by asking to "clarify" this Court's administrative stay of the district court's limited access injunction, which has nothing to do with the rookery management program.

---

[1] The City will not commence any construction activities that would entail tree-removal until mid-March at the earliest, and more likely not until April 1. The City has not yet received necessary final permits from the U.S. Army Corps of Engineers, and no activities can begin until such permits are issued. As it has done consistently throughout this appeal, the City will apprise the Court of the timing of any construction activities.

4863-2543-0434

To the extent the administrative stay needs to be clarified, this Court should clarify that it does not enjoin the rookery management program. Alternatively, to the extent the Court instead intended for the administrative stay to enjoin the rookery management program pending appeal, then the Court should take the opportunity now to deny on the merits Plaintiffs' requested injunctive relief as to the rookery management program. Doing otherwise would effectively grant Plaintiffs the injunctive relief they seek without having to meet their high burden.

A.      The administrative stay does not enjoin the rookery management program.

"Entering temporary administrative stays so that a panel may consider expedited briefing in emergency cases is a routine practice in [this] court." *In re Abbott*, 800 F. App'x. 296, 298 (5th Cir. 2020). A temporary administrative stay is "intended to preserve the status quo until the substantive motion for a stay pending appeal can be considered on the merits." *Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019).

The status quo pending this appeal is as follows:

- There is no order from any court prohibiting the City from conducting the rookery management program in Brackenridge Park, because the district court denied injunctive relief as to that

issue and the district court and this Court both declined to grant an injunction pending appeal;

- There is no order from any court prohibiting the City from conducting tree-removal activities in Brackenridge Park, because the district court denied injunctive relief as to that issue and the district court and this Court both declined to grant an injunction pending appeal; and

- There is a limited injunction order requiring the City to "grant[] access for 'religious services' involving 15 to 20 people for no more than an hour on specified astronomical dates coinciding with Plaintiffs' spiritual beliefs," the effect of which is stayed by the temporary administrative stay issued by this Court. Plaintiffs maintain their appeal as to the scope of the access injunction, but the City mooted that appeal by removing the dangerous branch and reconfiguring the construction fencing to provide open access to everyone.

This Court's administrative stay of the district court's limited injunction regarding access does not affect the rookery management program. In fact, Plaintiffs already asked for the rookery management

4863-2543-0434

program to be enjoined pending this appeal, and this Court declined to grant that relief, ordering instead that that request would be carried with the case on the merits. (Dkt. No. 74) ("IT IS ORDERED that Appellants' opposed motion for an injunction pending appeal is CARRIED WITH THE CASE."). By asking to "clarify" the unrelated administrative stay, Plaintiffs are seeking a second (or, really, third or fourth) bite at the apple.

This Court's temporary administrative stay operated—as these types of stay are intended—to preserve the status quo during the appeal on the merits. That means the rookery management program remains as it always has been—not enjoined by any court.

B.    <u>Alternatively, the City requests that the Court deny on the merits Plaintiffs' request to enjoin the rookery management program.</u>

In the alternative, to the extent the Court intended its temporary administrative stay to have the same effect as an injunction pending appeal, the Court should deny on the merits Plaintiffs' request to enjoin the rookery management program.

The Court considers "four factors in deciding whether to grant a stay pending appeal: (1) whether the moving party has made a strong showing that it is likely to succeed on the merits; (2) whether the moving

party will be irreparably injured absent a stay; (3) whether the issuance

of a stay will substantially injure the other interested parties; and (4)

where the public interest lies." *NAACP v. Tindell*, 90 F.4th 419, 422 (5th

Cir. 2024). Plaintiffs cannot satisfy any of the elements of that standard

to warrant an injunction on appeal staying the rookery management

program. For efficiency's sake, this response will focus on the first

element: whether Plaintiffs have made a strong showing that they are

likely to succeed on the merits.

   1.   <u>What the rookery management program does.</u>

The record from the temporary injunction hearing in the district

court demonstrates that migratory bird species populate Brackenridge

Park, including herons and egrets as well as cormorants, which Plaintiffs

consider sacred. In January 2022, the City began its rookery

management program in Brackenridge Park, including the two-acre

Project Area, to prevent migratory birds from nesting there. This was an

annual maintenance project aimed at protecting park amenities and

gathering areas for community use. In partnership with the United

States Department of Agriculture (USDA) and the Texas Parks and

Wildlife Department (TPWD), the project included tree maintenance and

4863-2543-0434

bird mitigation activities that begin in February and run through June each year. Activities, which were developed in the City of San Antonio Urban Rookery Management Plan prepared by TPWD, include tree pruning, mylar balloons and streamers in trees, predator and distress noises, lasers, clapper boards, and pyrotechnics. A contractor administered the techniques under the supervision of the USDA.

Currently, the proposed 2017 Project area and the Playground area are fenced for public safety. This year, the maintenance and mitigation project will include two additional fenced areas in the park to assist with public and contractor safety. The City plans to reduce the total fenced area to provide access to the Joske Pavilion, numerous picnic pads, bathrooms, and the Brackenridge Conservancy office.

Under the program, nesting is not disturbed elsewhere in the Park. Once the migratory birds establish nests outside the management area, birds are not deterred from landing in trees within the Project Area or spending time there to forage for food. The program affects only nesting in the trees within the management area.

The methods used are not lethal to the birds and do not affect reproduction. They include habitat modification such as removing dead

11

limbs and "some of the canopy where birds will want to be able to nest."

Tr.423:11-13. As noted above, they may also include use of visual

deterrents like mylar-type balloons or metallic streamers and noise

deterrents including pyrotechnics or predator calls. Tr.423:10-425:5.

There are no deterrents that will address the herons and egrets (which

are not considered sacred) but not deter the cormorants (which are

considered sacred). *Id.*

The purpose of the rookery management program is twofold: (1) to

mitigate the public health and safety hazards arising from the

tremendous amount of guano that the dense bird colonies produce; and

(2) to ensure no migratory birds are nesting in trees within the Project

Area such that work can begin and be fully compliant with the Migratory

Bird Treaty Act.

> 2. <u>Plaintiffs have not made a strong showing that they are
> likely to succeed on the merits of their Free Exercise claim
> relating to the rookery management program.</u>
>
>> a. <u>The rookery management program does not
>> substantially burden Plaintiffs' beliefs.</u>

The substantial burden analysis involving the rookery

management program turns on the known timing of the birds' migration

patterns. The evidence showed that the different species of birds migrate

4863-2543-0434

at different times. Yellow crowned herons and great egrets arrive in San Antonio first; they are seen "as early as February," followed later by the cattle egrets and cormorants. Tr.549:1-23. The cormorants arrive each year in April or May, "or oftentimes later." *Id.* All of the migratory birds in the Park, including the cormorants, leave and "migrate further down south" at the "first cold snap," which generally occurs in "[m]id to late October." Tr.565:6-7.

The record thus demonstrates that—regardless of the rookery management program—no cormorants would be present in the Park between the first cold snap around late October and the following April (if not May or even later). Plaintiffs testified that the cormorants are a necessary part of their ceremonies at the Sacred Area, but the rookery management program cannot impact any cormorants until at least April. Commencing deterrent activities now, to deter egrets and other non-sacred migratory birds who have begun arriving in San Antonio, thus will not substantially burden Plaintiffs' free exercise of their faith.

In addition to the timing issue, the City's rookery management program does not substantially burden Plaintiffs' religious beliefs because cormorants can still nest elsewhere in the 343-acre Park outside

13

the management area. After establishing nests elsewhere, cormorants can perch in the trees within the management area and in fact do so during their season. They just cannot nest there. There is thus no evidence or indication that the rookery management program would make it less likely that a cormorant would perch in the cypress trees within the Sacred Area or fly overhead during ceremonies there.

b. <u>The rookery management program is the least restrictive means to advance compelling governmental interests.</u>

Even if the rookery management program imposed a substantial burden on Plaintiffs' beliefs, it still would not violate the Texas Religious Freedom Restoration Act (the TRFRA) because it is the least restrictive means to advance a compelling governmental interest. The program serves two compelling interests: (i) public health and safety; and (ii) compliance with federal law to serve the interests underlying the construction project.

As to public health and safety, the record shows that the rookery management program is the least restrictive means to advance the City's interest in mitigating the hazardous effects of bird guano to make the area safe for human visitors. *See* ROA.2267 (letter from state wildlife

4863-2543-0434

veterinarian explaining that the Park's rookery presented public health and safety issues because of the significant amount of guano near playgrounds, picnic tables, and other Park amenities where children play). The program is the product of extensive consultation and engagement with technical advisors and wildlife management experts. ROA.2425, 2441. The program employs a "yellow zone" and "red zone" approach in which deterrent efforts are limited to areas of moderate or high public use. ROA.2431 (examples of "red zone" areas include "pavilions, restrooms, playscapes, splashpads, recreational centers, picnic pad sites," and the like).

Again, there is no way to deploy those efforts toward egrets and herons only but not cormorants. Tr.567:3; 423:10-425:5; 551:2-12.  And these methods "do not harm the birds or keep them from reproducing." ROA.2426. They simply resolve the "human-wildlife conflict," ROA.2449, by persuading the birds not to nest in "an undesired location and encourage them to go to an area where they would be more desirable." Tr.546:21-547:2. Even with the limited methods in place, the cormorants still fly to and above the Sacred Area, "hang out" at Lambert Beach, "come in the trees," and "go down in the water" to forage. Tr.446:24-447:3.

4863-2543-0434

Moreover, although the deterrent methods cannot distinguish between cormorants and the more problematic species, the record shows that the City deploys these methods in a measured approach tailored to restrict cormorant nesting in the management area to the least extent possible. The City applies deterrence only to the extent required to achieve the goal of relocating the problematic species—and no further. For example, during the 2022 migration season the City successfully relocated the problematic species and determined that those species had finished their annual migration to San Antonio by June of that year. The City then stopped deterrence methods in the management area, which in fact allowed some late-migrating cormorants to nest there. Tr.406:9-19. The City's approach exemplifies narrow tailoring.

As to compliance with federal law, the Migratory Bird Treaty Act forbids construction interference with actively nesting migratory birds and their nests. The first phase of construction—slated to last six to eight months, Tr.452:1-16—cannot proceed under federal law absent a rookery management program to prevent nesting in the Project Area. If that program were foregone, the window of time between the first cold snap around late October and the arrival of the great egrets in February would

16

be the only time that construction activities could proceed in the Project Area. The district court noted that the migration patterns would "effectively put the Project on hold ad infinitum, given the different species' migration patterns and the Migratory Bird Treaty Act. There could not be an eight-month window of opportunity to accomplish the Project." ROA.987. For essentially the reasons why the rookery management program is narrowly tailored to address the guano hazard, it is also the least restrictive means to comply with federal law to serve the compelling interests underlying the construction project.

WHEREFORE the City of San Antonio respectfully prays that the Court deny Plaintiffs' motion to clarify the administrative stay or, in the alternative, confirm that the soon-to-commence rookery management activities are not stayed by any court order.

Respectfully submitted,

_____

Jane Webre
State Bar No. 21050060
jwebre@scottdoug.com
SCOTT DOUGLASS & MCCONNICO, LLP
Colorado Tower
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399

LANGLEY & BANACK, INC.
FRED R. JONES
State Bar No. 10886700
fjones@langleybanack.com
NATALIE F. WILSON
State Bar No. 24076779
nwilson@langleybanack.com
IAN M. MCLIN
State Bar No. 24005071
imclin@langleybanack.com
LEE WARREN
State Bar No. 24099453
lwarren@langleybanack.com
SARA MURRAY
State Bar No. 14729400
smurray@langleybanack.com
745 East Mulberry, Suite 700
San Antonio, TX  78212-3166
Telephone: (210) 736-6600
Facsimile:  210) 736-6889
CITY OF SAN ANTONIO

18

DEBORAH KLEIN
Deputy City Attorney
State Bar No. 11556750
Deborah.Klein@sanantonio.gov
International Center
203 S. St. Mary's Street,
2nd Floor
San Antonio, TX  78205
Telephone: (210) 207-8949
Facsimile: (210) 207-4004

**ATTORNEYS FOR DEFENDANT-
APPELLEE CITY OF SAN ANTONIO**

## CERTIFICATE OF SERVICE

I certify that on February 15, 2024, I electronically filed the foregoing pleading via the CM/ECF system, which will provide notice to counsel of record for Plaintiffs-Appellants:

| | |
|---|---|
| Mark W. Rasmussen<br>mrasmussen@jonesday.com<br>Margaret I. Lyle<br>milyle@jonesday.com<br>Jonathan D. Guynn<br>jguynn@jonesday.com<br>Chance McCraw<br>cmccraw@jonesday.com<br>Timothy M. Villari<br>tvillari@jonesday.com<br>JONES DAY<br>2727 N. Harwood Street<br>Dallas, TX  75201 | John Greil<br>john.greil@law.utexas.edu<br>Steven T. Collis<br>steve.collis@law.utexas.edu<br>LAW AND RELIGION CLINIC<br>UNIVERSITY OF TEXAS SCHOOL OF LAW<br>727 East Dean Keaton Street<br>Austin, TX  78705 |

_____
Jane Webre

4863-2543-0434

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitations,
Typeface Requirements, and Type-Style Requirements

This response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3098 words, excluding exempt parts. It complies with the typeface and type style requirements of Rule 27(d)(1)(E) because it was prepared in a proportionally spaced typeface (14-point Century Schoolbook). I understand that a material misrepresentation in this certificate of compliance may result in striking the pleading and in sanctions against the person signing the pleading.

_____
Jane Webre

February 15, 2024

4863-2543-0434