No. 23-50746

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

GARY PEREZ AND MATILDE TORRES,

*Plaintiffs-Appellants,*

v.

CITY OF SAN ANTONIO,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Texas (Biery, J.)

## RESPONSE TO EMERGENCY MOTION TO LIFT
## TEMPORARY STAY

Mark W. Rasmussen
Margaret I. Lyle
Jonathan D. Guynn
Chance McCraw
Timothy M. Villari
JONES DAY
2727 North Harwood Street
Dallas, TX 75201.1515
Telephone: +1.214.220.3939
E-mail: mrasmussen@jonesday.com
E-mail: milyle@JonesDay.com
E-mail: jguynn@jonesday.com
E-mail: cmccraw@jonesday.com
E-mail: tvillari@jonesday.com

ATTORNEYS FOR PLAINTIFFS

John Greil
Steven T. Collis
Law & Religion Clinic
University of Texas School of Law
727 East Dean Keeton St.
Austin, TX 78705
Telephone: +1.512.471.5151
E-mail: john.greil@law.utexas.edu
E-mail: steve.collis@law.utexas.edu

ATTORNEYS FOR PLAINTIFFS

i

**INTRODUCTION**

The City's Emergency Motion to Lift Temporary Stay ("Motion") fails to justify a partial lifting of the Court's administrative stay. The stay remains necessary to preserve the status quo and protect this Court's jurisdiction to decide on the merits whether the City's anti-nesting measures survive strict scrutiny, and to decide on the merits Plaintiffs' pending motion for injunction pending appeal. Instead, the Motion exemplifies the attitude that necessitated and prolonged this litigation. Notwithstanding the mandate from the Supreme Court in *Fulton v. City of Philadelphia, Pennsylvania* and other cases, if the City can accommodate Plaintiffs' religious practice, then it must, the City refused and still refuses to even try. Even in the midst of court-referred mediation, the City disclaims any obligation to accommodate Plaintiffs and even threatens that it will withdraw from mediation if it does not get what it wants right away. Because the City has failed to carry its burden, the Court should deny the City's Motion.

The City is asking the Court to lift the administrative stay so that it can implement its **2022** Urban Rookery Management Plan ("2022 Plan"). But when that Plan was created the City had not "specifically tried to accommodate plaintiffs' religious exercise in crafting the bird deterrence." Tr. 429:24–25. And City witnesses admitted that they never investigated whether the City could target egrets and herons—the real targets of the City's anti-nesting and bird deterrence measures—without affecting cormorants. Tr. 531:1–533:14, 567:11–23, 591:12–14. Indeed, Jessica Alderson, who *prepared the 2022*

*Plan* testified that she had no idea about the religious significance of cormorants. She only learned that "[a]s a result of this case." Tr. 593:21–22.

If the City wishes to implement anti-nesting and bird deterrence measures that will substantially burden Plaintiffs' religious exercise, then it must satisfy strict scrutiny. The City cannot meet strict scrutiny because the 2022 Plan is not designed and is not narrowly tailored to achieve a compelling interest. To be clear, the City's current request asks the Court to permit the City to implement a 2022 Rookery Management Plan that necessarily includes *zero* new accommodations for Plaintiffs' religious practice. Witnesses testified at the preliminary injunction hearing regarding the City's failure to study and design potential alternatives that would not target cormorants in violation of Plaintiffs' religious rights. Tellingly, the word "religion"—let alone any substantive analysis of the burden their request would impose on Plaintiffs' religious practice if granted—does not even appear in the City's Motion, reflecting the value they place on Mr. Perez's and Ms. Torres's religious liberty rights.

The City's Motion, if granted, will empower the City to prevent cormorants from nesting and existing in the Project Area, thereby destroying the spiritual ecology of the Sacred Area. That will substantially burden Plaintiffs' religion, and will occur with the City still never having even *attempted* to accommodate Plaintiffs' religious exercise. The Motion should be denied.

**A. The City Did Not Inform Plaintiffs of the Extent of Its Proposed Bird Deterrence Until After It Filed Its Motion.**

Until last night after the City filed the Motion, Plaintiffs were in the difficult position of evaluating whether the City's proposed bird deterrence measures would violate their religious rights, without the City explaining what exactly it planned to do. Still now, neither the 2022 Plan nor the City's Motion, describes how cormorants will be treated. Plaintiffs' current understanding is that the City refuses to offer a bird-deterrence carve out for cormorants.

In the confer period, the City's Counsel informed Plaintiffs of its intention "to implement the 2024 Rookery Management Plan." (Ex. A, Email of Feb. 14, 2024 at 2:55pm). But Plaintiffs had never seen the 2024 Rookery Management Plan and do not know whether it included a carve out for cormorants—for instance, whether the City would target the young cormorants currently in the area, or whether the City would cease bird deterrent activities when the cormorants migrate, (typically April or May). ECF 179 at 13. Plaintiffs' counsel requested "a copy of the Rookery Management Program" and an explanation of "what parts of the Program were modified to accommodate our clients' religious practice, and what steps the City took to investigate those accommodations." (Ex. B, Email of Feb. 19, 2024 at 3:27pm).

Plaintiffs' Counsel stated that "we will need the above information before knowing whether we oppose your request." *Id.* The City then filed its Motion, stating that "Plaintiffs oppose this relief." ECF 187 at 2. After filing, the City emailed Counsel

that "The City intends to continue operating under the Rookery Management Plan that was previously produced to you as D-19." (Ex. B, Email of Natalie Wilson).

Put another way, the City told Plaintiffs it would implement the "2024 Rookery Management Plan" (which seems to not exist), did not provide it, and informed Plaintiffs after filing its Motion that it would implement the 2022 Plan.

When Plaintiffs' Counsel today requested that the City represent (1) that it would not target cormorants in its bird deterrence activities and (2) that it would cease bird deterrence when cormorants migrate into the Project Area, in April or May, the City refused to do so. So the City's position is that it will deter cormorants unless this Court tells it not to.

**B. The City's Bird Deterrence Never Attempted to Accommodate Plaintiffs, Is Not Narrowly Tailored to Achieve a Compelling Interest, and Is Being Implemented Only to Facilitate Tree Removal on the City's Preferred Schedule.**

1. The City Did Not Attempt to Accommodate Plaintiffs' Religious Exercise.

The 2022 Plan does not exist to solve a problem of cormorants. It exists to deter egrets and herons. Def. Ex. 19.2 ("The goal of this urban rookery management plan is to deter egrets and herons from nesting in undesired locations."), ROA.2425–40. And "cormorants are not the target species for the bird deterrence." Tr. 589:9–11. So it would seem that the City could achieve its goals without destroying Plaintiffs' religious practice by deterring cormorants. *Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522, 541 (2021) ("Put another way, so long as the government can achieve its interests in a

manner that does not burden religion, it must do so."). But the City has refused to make any reasonable accommodation that would allow cormorant nesting.

Plaintiffs presented numerous ways that the City could achieve its goal of safely rebuilding the Lambert Beach walls without needing to prevent cormorants from nesting in the Project Area. Those possibilities included (among others): (1) performing construction on an accelerated schedule for the time when no migratory birds are present, (2) performing construction in two phases, interrupted by the cormorant nesting time, or (3) ceasing anti-nesting measures when migratory cormorants arrive in March or April. *See* Appellant's Br. at 43. But, according to the City's own witnesses, the City never even investigated if those alternatives could work. *See* Tr. 531:1–533:14, 567:11–23, 591:12–14.

2. Anti-Nesting and Bird Deterrence Does Not Achieve a Compelling Interest and Is Being Implemented Only to Facilitate Tree Removal on the City's Preferred Schedule.

The invocation of bird guano is a red herring. *See* ROA.1606 (noting public health officials have *never* been able to cite public health as a concern for heronries). The City knows that it is not pursuing anti-nesting measures to protect against supposed harm from human contact with bird feces, which is why it presented zero evidence to that effect; rather the City's position on the record is that its anti-nesting efforts are about eliminating migratory birds that might forestall construction. *See* Tr. 413:22–23. If the City cared about eliminating bird guano in Brackenridge Park, it would implement anti-nesting *in the entire park. See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508

U.S. 520, 547 (1993) (government undermines purported interest "when it leaves appreciable damage to that supposedly vital interest unprohibited"). The City's own exhibits identified rookery locations at Lambert Beach (the Project Area) *but also* "Joske Pavilion, Brackenridge Park Conservancy Office and playground areas" (outside the Project Area). Def. Ex. 17, ROA.2381–83 (Brackenridge Park Migratory Birds Fact Sheet). If the City cared about the guano, it would prevent nesting at all those other locations. But the City does not care about those locations, so it only imposes zero-nesting at Lambert Beach, and allows "nesting elsewhere in the 343-acre Park." ECF 187 at 5. That solution fails to prevent bird guano in the Park, but *does* prevent Mr. Perez and Ms. Torres from performing religious services. The worst of both worlds. The real goal is not guano-reduction, but chopping down trees in the Project Area. And it means the City has undermined any supposed interest in reducing bird poop.

The City tells the Court "Time is of the essence on these activities." ECF 187 at 2. But the City has not shown urgency to implement this Bond Project that passed *in May 2017*.[1] ECF 120 at 26. And Plaintiffs informed the City of their religious objections

---

[1] The City's shifting representations regarding scheduling also undermine its current credibility. *Compare* Dkt. 58, at 5 ("when Appellants filed their Emergency Motion on Monday, October 23, 2023, the City had represented that it would begin construction of Phase I of the Bond Project as early as October 26, 2023, and tree removal as early as December 1, 2023. As of today, Wednesday, October 25, 2023, the City now states that it will begin construction no earlier than November 2, 2023, and tree removal no earlier than December 15, 2023.") (emphasis added); ECF 179 at 6 ("The City will not commence any construction activities that would entail tree removal until mid-March at the earliest, and more likely not until April 1.").

*at least* by June 2022. ROA.1490–1494 (letter from Ms. Torres). If delays occur now, it is due to the City's *failure to investigate accommodations*. The City's failure to comply with the federal and state law means that its Motion should be denied. *Ramirez v. Collier*, 595 U.S. 411, 434 (2022) ("[A] party's inequitable conduct can make equitable relief inappropriate.").

## CONCLUSION

The City created the 2022 Plan without attempting to accommodate Plaintiffs' religion. It still has made no attempt to do so. The stay remains necessary to protect this Court's jurisdiction to decide this case on the merits. This Court should maintain the status quo and deny the City's Motion.

February 20, 2024                             Respectfully submitted,


                                              */s/John Greil*

Mark W. Rasmussen                             John Greil
Margaret I. Lyle                              Steven T. Collis
Jonathan D. Guynn                             LAW AND RELIGION CLINIC
Chance McCraw                                 UNIVERSITY OF TEXAS SCHOOL OF LAW
Timothy M. Villari                            727 East Dean Keeton St.
JONES DAY                                     Austin, Texas 78705
2727 N. Harwood St.                           (512)-471-5151
Dallas, Texas 75201                           john.greil@law.utexas.edu
214-220-3939                                  Steve.collis@law.utexas.edu
mrasmussen@jonesday.com
milyle@JonesDay.com
jguynn@jonesday.com                           *Counsel for Plaintiffs*
cmccraw@jonesday.com
tvillari@jonesday.com



*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on February 20, 2024, the foregoing motion was electronically filed with the United States Court of Appeals for the Fifth Circuit using the CM/ECF system, and that all parties required to be served have been served. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Chance B. McCraw*

Chance B. McCraw

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1,604 words, excluding parts exempted by Rule 27(a)(2)(B); and (2) the typeface and type style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface (14-point Garamond) using Microsoft Word (the program used for the word count).

Dated:  February 20, 2024

/s/ Chance B. McCraw
Chance B. McCraw
*Counsel for Plaintiffs*