CASE NO. 23-50746

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

GARY PEREZ; MATILDE TORRES,
*Plaintiffs–Appellants/Cross-Appellees*

v.

CITY OF SAN ANTONIO,
*Defendant–Appellee/Cross-Appellant*
_____

# REPLY ON OPPOSED EMERGENCY MOTION FOR RELIEF FROM ADMINISTRATIVE STAY REGARDING ROOKERY MANAGEMENT ACTIVITIES
_____

Before the Court is the motion by Defendant-Appellee the City of San Antonio (the "City") asking the Court to lift the temporary administrative stay and allow it to proceed with bird deterrent activities within Brackenridge Park immediately. The motion explains that the City seeks this relief on an emergency basis because the earliest migratory birds are arriving, so the City must act now to deter them from nesting in the management area. As discussed below, this Court should reject the points Plaintiffs make in opposition and lift the administrative stay in part to allow the bird deterrent activities to commence.

A. <u>There is no way to deter herons and egrets and not also deter cormorants.</u>

Plaintiffs' response, again and again, advances a factually-false narrative—they fault the City for failing to modify its bird deterrent methods to deter only herons and egrets and not also deter cormorants. Response p.2 (seeking design "that would not target cormorants"); p.3 ("City refuses to offer a bird deterrence carve out for cormorants"); p.4 (complaining that City would not represent "that it would not target cormorants in its bird deterrent activities").

The fundamental premise of Plaintiffs' complaints is wrong. There was substantial, undisputed evidence at the injunction hearing that deterrence activities are all-or-nothing. There are no deterrent activities that deter only herons and egrets but not cormorants. Consequently, "there is not a way" to deter the more problematic species like egrets and herons without also deterring the cormorants. Tr.441:23-442:1; *see* Tr.423:15-22; 424:13-16; 425:6-19; 550:1-551:12. The record is abundantly clear on this point: "There isn't a way." Tr.567:3.

The City's bird deterrent activities thus do not "carve out" cormorants. Not because, as Plaintiffs allege, the City is disinterested in accommodating Plaintiffs' sincerely-held religious beliefs. It is because of

2

nature and biology and the undisputed evidence that such a carve out does not exist.

That said, the timing of bird migration can help. Herons and egrets arrive first, in February. If early deterrent activities push the herons and egrets away from the highly urbanized areas of the Park, and a critical mass of the early nesters establishes a rookery elsewhere, it is sometimes possible for activities to "slow down and cease" with respect to the "stragglers, who are on the end of the migration train," because these late-arriving birds like cormorants are colonial and tend to follow the pack. Tr.443:3-18. The City intends to follow that course, as it has done in the past. If early deterrence of herons and egrets successfully prevents nesting in the management area, the City can monitor nesting patterns and slow or cease deterrent activities later in the migration season, when the cormorants come, to ensure it remains compliant with the Migratory Bird Treaty Act's mandate. The existing plan thus reflects a narrowly tailored approach.

B.  <u>The bird deterrent activities focus on the highly urbanized areas of the Park because that is where the problem is acute.</u>

Plaintiffs argue that the City seeks to commence bird deterrent activities for project timing reasons only, and that "the invocation of bird

3

guano is a red herring." Response p.5. It is difficult to know how to respond to that contention, which is so wholly divorced from the undisputed record. The public health hazards presented by the excessive bird excrement are real, and they are a significant reason why the City asks the Court to lift the stay to allow the bird deterrent activities to go forward. Indeed, the fact that the San Antonio Zoo and the Episcopal Diocese—West Texas are currently conducting their own bird deterrent activities on their properties very near the Park indicates that the issue is not limited to the timing of construction of the Park Project.

Evidence at the injunction hearing showed that bird guano is a real problem in the highly urbanized areas of the Park. The record contains many photographs showing the extent of the rookery and the feces-covered picnic tables and playgrounds. Like these photos:

4885-1684-1127





ROA.2387; ROA.2401; ROA.2390; ROA.2393.

4885-1684-1127

The record also includes the opinion of state wildlife veterinarian Dr. J. Hunter Reed, who has a Master's in Public Health degree in addition to his veterinary education. ROA.2267. Dr. Reed explained that the Park's rookery presented public health and safety issues because of the significant amount of guano in the immediate vicinity of playgrounds and picnic tables and other Park amenities where children play:

> As it pertains to the rookery in Brackenridge Park, I have significant public health concerns for my fellow San Antonians. When large rookeries are established in the immediate vicinity of playgrounds, infrastructure, and recreational hardscapes, the risk of zoonotic disease transmission from several agents (including histoplasmosis, psittacosis, salmonellosis, among others) increases substantially. The sheer magnitude of fecal contamination, high likelihood of human contact with fecal matter, and limited ability to perform effective environmental decontamination make rookery management action paramount to disease risk mitigation. Additionally, the population most likely to be exposed in this scenario, young children, are also the most likely to develop severe disease if infected. This is an outcome that I believe everyone seeks to avoid.

ROA.2267.

Plaintiffs also introduced evidence at the injunction hearing that discussed the bird deterrent activities and amplified the significant health hazards that the excessive bird excrement posed:

> **What are the impacts of bird feces to water quality and public health?**
> High concentrations of bird fecal bacteria affect water quality and bird rookeries are significant contributors to that pollution. Bird feces may also carry diseases that cause respiratory problems in humans.
>
> - The San Antonio River Authority (https://www.sariverauthority.org/be-river-proud/river-health) has measured elevated levels of E.coli detected in the San Antonio River at Brackenridge Park due to the high population of birds.
> - Egrets have been linked to psittacosis-ornithosis agents in Texas populations which is a concern for human health, along with Histoplasma capsulatum fungus (https://www.cdc.gov/fungal/diseases/histoplasmosis/index.html), which can occur in fecal waste, especially around rivers and water systems.

ROA.1407.

The bird deterrent activities will address that very real health hazard, which is not the red herring Plaintiffs claim. Moreover, the immediate timing imperative is tied directly to the migration patterns of the early-arriving species that are arriving in San Antonio now in February. Nature's migration patterns mandate that the deterrent activities start now.

Contrary to Plaintiffs' contention, the bird deterrent activities will not be limited to just the Project Area. Below is a map showing the planned management area for the 2024 bird deterrent activities. The red line delineates the management area, within which the City will engage in bird deterrent activities; the yellow lines mark the Project Area; and the orange lines mark the playground:



The management area is thus much, much larger than the 2-acre Project Area or the 20x30-foot Sacred Area, though both of those areas are included within the management area. The management area encompasses the highly urbanized portion of the Park including amenities like the Joske Pavilion, playgrounds, picnic areas, and paved trails. Because that area of the Park is where most of the human activity is, that is where the bird deterrence is needed.

4885-1684-1127

Plaintiffs complain that the City "did not inform Plaintiffs of the extent of its proposed bird deterrence activities until after it filed its motion." Response p.3. But the City's response to Plaintiffs' earlier motion to clarify included much detail regarding the annual program, which was also the subject of significant testimony at the injunction hearing. *See* City Response pp.10-12.[1] Plaintiffs' contentions to the contrary are simply not true.

Finally, Plaintiffs' response does not acknowledge another important reason for allowing deterrent activities to begin: risks associated with delaying the repair of the crumbling river walls. Plaintiffs treat timing of the project as a nefarious element but ignore the public safety implications of the crumbling walls and falling trees. The City raised this point in its motion (p. 6). The risks of failing river walls and trees in the Project Area were also discussed in the City's Brief of Appellee pp. 6-9. Repairs on the walls cannot begin if migratory birds are

---

[1] The City is constrained from revealing communications between the parties made in the context of the Circuit Mediation Program. Suffice it to say that Plaintiffs were directly advised, before filing their motion to clarify, that this year's deterrent activities will involve methods similar to last year, as described in the testimony at the temporary injunction hearing.

4885-1684-1127

nesting in the Project Area, even if the parties reach a mediated settlement or the Court issues a decision allowing the construction to proceed.

C. <u>It is not appropriate to grant Plaintiffs all the relief of an injunction on appeal through the slim reed of a temporary administrative stay.</u>

No court has granted an injunction against the City's bird deterrent activities. In the district court, Plaintiffs sought injunctive relief to prevent the City from conducting bird deterrent activities. There was an evidentiary hearing, and Judge Biery denied that relief, finding "the bird deterrent operation is in the realm of public health and safety." ROA.987. Judge Biery then denied Plaintiffs' request for an injunction pending appeal to prevent the City from conducting bird deterrent activities.

This Court has carried Plaintiffs' request for an injunction pending appeal with the case and has not ruled on the issue. An earlier panel issued the one-sentence administrative stay, and this Court recently clarified that it applies to the bird deterrent activities. In essence, therefore, Plaintiffs currently have all the injunction relief they seek, but no court has ever determined that they meet the requirements for such relief. And meanwhile, that *de facto* injunction is preventing the City's urgently-needed response to the migrating birds.

Plaintiffs argue that the Court should keep the administrative stay in place because the City's bird deterrent activities cannot survive strict scrutiny. Response pp.2, 4. But the bare fact that a strict scrutiny standard applies does not dispense with the requirements for injunctive relief, and Plaintiffs cannot satisfy those requirements. In particular, Plaintiffs cannot establish a likelihood of success on the merits of their free exercise claim because: (1) the bird deterrent activities do not substantially burden their religious beliefs; and (2) the City's activities are the least restrictive means of advancing compelling governmental interests. This merits issue is discussed in full detail in the City's Brief of Appellees pp.54-60. Among other things, the brief explains that there is no way to deploy deterrent efforts toward egrets and herons but not cormorants. Tr.567:3; 423:10-425:5; 551:2-12. And these methods "do not harm the birds or keep them from reproducing." ROA.2426. They simply resolve the "human-wildlife conflict," ROA.2449, by persuading the birds not to nest in "an undesired location and encourage them to go to an area where they would be more desirable." Tr.546:21-547:2. Even with the limited methods in place, the cormorants still fly to and above the Sacred

4885-1684-1127

Area, "hang out" at Lambert Beach, "come in the trees," and "go down in the water" to forage. Tr.446:24-447:3.

The passage of time since the administrative stay was issued in October and the early bird migration now in February has forced this issue to a head. There was no need for bird deterrent activities during those months because the birds had migrated south after the first cold snap in October. So for all of those months, the lack of a ruling on the merits of the injunction issue was not truly meaningful. But because the early migrating birds have now returned to the area, the merits of the injunction inquiry are now meaningful. Plaintiffs have not and cannot meet the requirements for an injunction on appeal, and the Court should grant the City's motion to lift the administrative stay.

WHEREFORE the City of San Antonio respectfully prays that the Court grant it relief from the administrative stay to allow it to begin its rookery management activities immediately.

Respectfully submitted,

_____
Jane Webre
State Bar No. 21050060
jwebre@scottdoug.com
SCOTT DOUGLASS & MCCONNICO, LLP
Colorado Tower
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399

LANGLEY & BANACK, INC.
FRED R. JONES
State Bar No. 10886700
fjones@langleybanack.com
NATALIE F. WILSON
State Bar No. 24076779
nwilson@langleybanack.com
IAN M. MCLIN
State Bar No. 24005071
imclin@langleybanack.com
LEE WARREN
State Bar No. 24099453
lwarren@langleybanack.com
SARA MURRAY
State Bar No. 14729400
smurray@langleybanack.com
745 East Mulberry, Suite 700
San Antonio, TX 78212-3166
Telephone: (210) 736-6600
Facsimile: 210) 736-6889

13

CITY OF SAN ANTONIO
DEBORAH KLEIN
Deputy City Attorney
State Bar No. 11556750
Deborah.Klein@sanantonio.gov
International Center
203 S. St. Mary's Street,
2nd Floor
San Antonio, TX  78205
Telephone: (210) 207-8949
Facsimile: (210) 207-4004

**ATTORNEYS FOR DEFENDANT-APPELLEE CITY OF SAN ANTONIO**

CERTIFICATE OF SERVICE

I certify that on February 21, 2024, I electronically filed the foregoing pleading via the CM/ECF system, which will provide notice to counsel of record for Plaintiffs-Appellants:

| | |
|---|---|
| Mark W. Rasmussen<br>mrasmussen@jonesday.com<br>Margaret I. Lyle<br>milyle@jonesday.com<br>Jonathan D. Guynn<br>jguynn@jonesday.com<br>Chance McCraw<br>cmccraw@jonesday.com<br>Timothy M. Villari<br>tvillari@jonesday.com<br>JONES DAY<br>2727 N. Harwood Street<br>Dallas, TX  75201 | John Greil<br>john.greil@law.utexas.edu<br>Steven T. Collis<br>steve.collis@law.utexas.edu<br>LAW AND RELIGION CLINIC<br>UNIVERSITY OF TEXAS SCHOOL OF LAW<br>727 East Dean Keaton Street<br>Austin, TX  78705 |

_____
Jane Webre

14

Certificate of Compliance with Type-Volume Limitations,
Typeface Requirements, and Type-Style Requirements

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1780 words, excluding exempt parts. It complies with the typeface and type style requirements of Rule 27(d)(1)(E) because it was prepared in a proportionally spaced typeface (14-point Century Schoolbook). I understand that a material misrepresentation in this certificate of compliance may result in striking the pleading and in sanctions against the person signing the pleading.

_____
Jane Webre

February 21, 2024