CASE NO. 23-50746

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

GARY PEREZ; MATILDE TORRES,
*Plaintiffs–Appellants/Cross-Appellees*

v.

CITY OF SAN ANTONIO,
*Defendant–Appellee/Cross-Appellant*

_____

## RESPONSE IN OPPOSITION TO
## PETITION FOR REHEARING *EN BANC*

_____

| | |
|---|---|
| Fred R. Jones<br>fjones@langleybanack.com<br>Natalie Friend Wilson<br>nwilson@langleybanack.com<br>Ian McLin<br>imclin@langleybanack.com<br>Lee Brinson Warren<br>lwarren@langleybanack.com<br>Sara Murray<br>smurray@langleybanack.com<br>LANGLEY & BANACK, INC.<br>745 East Mulberry, Suite 700<br>San Antonio, TX  78212<br>Telephone: (210) 736-6600 | Jane Webre<br>jwebre@scottdoug.com<br>SCOTT DOUGLASS &<br>    MCCONNICO LLP<br>303 Colorado Street, Suite 2400<br>Austin, TX 78701<br>Telephone: (512) 495-6300<br><br>City of San Antonio<br>Deborah Klein<br>Deputy City Attorney<br>deborah.klein@sanantonio.gov<br>International Center<br>203 South St. Mary's Street<br>Second Floor<br>San Antonio, TX 78205<br>Telephone: (210) 207-8949 |

**COUNSEL FOR THE CITY OF SAN ANTONIO**

<u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.    Plaintiffs-Appellants: Gary Perez and Matilde Torres

Counsel for Plaintiffs-Appellants:

Mark W. Rasmussen
mrasmussen@jonesday.com
Margaret I. Lyle
milyle@jonesday.com
Jonathan D. Guynn
jguynn@jonesday.com
J. Benjamin Aguiñaga
jbaguinaga@jonesday.com
Chance McCraw
cmccraw@jonesday.com
Timothy M. Villari
tvillari@jonesday.com
JONES DAY
2727 N. Harwood Street
Dallas, TX 75201.1515
Telephone: (214) 220-3939

John Greil
john.greil@law.utexas.edu
Steven T. Collis
steve.collis@law.utexas.edu
LAW AND RELIGION CLINIC
UNIVERSITY OF TEXAS SCHOOL OF LAW
727 East Dean Keaton Street
Austin, TX 78705
Telephone: (512) 471-5151

2.      Defendant-Appellee: the City of San Antonio

Appellate Counsel for the City of San Antonio:

Jane Webre
jwebre@scottdoug.com
Scott Douglass & McConnico LLP
Colorado Tower
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300

Trial and Appellate Counsel for the City of San Antonio:

Fred R. Jones
fjones@langleybanack.com
Natalie Friend Wilson
nwilson@langleybanack.com
Ian McLin
imclin@langleybanack.com
Lee Brinson Warren
lwarren@langleybanack.com
Sara Murray
smurray@langleybanack.com
Langley & Banack, Inc.
745 East Mulberry, Suite 700
San Antonio, TX 78212
Telephone: (210) 736-6600

City of San Antonio
Deborah Klein
Deputy City Attorney
deborah.klein@sanantonio.gov
International Center
203 South St. Mary's Street,
Second Floor
San Antonio, TX 78205
Telephone: (210) 207-8949

May 16, 2024

Jane Webre

<u>RESPONSE TO RULE 35(b) STATEMENT</u>

Plaintiffs identify *nine* errors they contend warrant rehearing *en banc*. This Court cautions that *en banc* rehearing "is not favored" and is an extraordinary procedure to highlight "an error of exceptional public importance or an opinion that directly conflicts with prior Supreme Court, Fifth Circuit or state law precedent." 5th Cir. Loc. R. 35.1. Recent grants of *en banc* rehearing reflect that high bar. One pending *en banc* petition identified two issues where the panel stated that: (1) "it was bound to follow circuit precedent 'in tension' with Supreme Court precedent," and (2) it split with six circuits by that ruling.[1] Another presented a "question of exceptional importance" involving floating barriers in the Rio Grande to deter illegal immigration.[2] By contrast with those examples of a clear and articulable conflict in precedent or a precise question that is indisputably of exceptional importance, the fact that Plaintiffs advance *nine* alleged errors reflects that their scattershot petition comes nowhere near the high bar for *en banc* review.

Because of the meaningful difference between true conflicts in precedent and mere error correction, it "will rarely occur" that issues advanced for *en banc* review "will be the same as those appropriate for panel rehearing." 5th Cir. Loc. R. 35.2.4. Most of the nine alleged errors in Plaintiffs' *en banc* petition mirror the "grounds for

---

[1] *Wilson v. Midland County, Texas*, No. 22-50998.

[2] *United States v. Abbott*, No. 23-50632.

rehearing" in their petition for panel rehearing. Indeed, most of Plaintiffs' claimed errors don't involve legal issues but instead advance factual complaints. Notably, the dissenting opinion doesn't contend that the majority misconstrued the law or articulated any incorrect legal standard; it instead would have found that the district court abused its discretion in denying a preliminary injunction based on the *specific facts* before it.

Finally, this is an interlocutory appeal from denial of a preliminary injunction. Review of Plaintiffs' free exercise challenges should wait until after trial on the merits with a complete evidentiary record.

On the merits, Plaintiffs' petition mischaracterizes the record and the panel opinion. The panel got it right, and the judgment is well-supported. But to the point, this appeal does not present any legal issues that meet the "extraordinary" standard for *en banc* review. The Court should deny the petition.

TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

RESPONSE TO RULE 35(B) STATEMENT......................................................... iv

TABLE OF AUTHORITIES .............................................................................. viii

STATEMENT OF THE ISSUES...........................................................................1

STATEMENT OF THE COURSE OF PROCEEDING AND DISPOSITION ........1

STATEMENT OF RELEVANT FACTS ................................................................1

    A.    Hazards from crumbling walls in Brackenridge Park ...........................1

    B.    Hazards from migratory birds ..............................................................4

    C.    The Sacred Area ....................................................................................7

    D.    City project to address hazards at Lambert Beach ...............................8

ARGUMENT .....................................................................................................11

    A.    The opinion's substantial-burden analysis does not warrant *en banc* review. ......................................................................................11

    B.    The opinion's compelling-interest analysis does not warrant *en banc* review. ......................................................................................14

    C.    The opinion's narrow-tailoring analysis does not warrant *en banc* review. ......................................................................................16

        1.    The panel did not implicate a circuit split regarding accommodations......................................................................16

        2.    The panel properly placed the burden of proof. .......................17

        3.    The federal regulation issue is a red herring.............................18

    D.    There is no cause to adopt a different standard of review. .................19

E.    There is no reason to certify a question to the Supreme Court of
Texas........................................................................................................20

CONCLUSION ....................................................................................................21

CERTIFICATE OF COMPLIANCE.......................................................................23

CERTIFICATE OF SERVICE ...............................................................................24

## TABLE OF AUTHORITIES

**Cases**

*A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*,
  611 F.3d 248 (5th Cir. 2010) .........................................................14

*Austin v. Kroger Tex. L.P.*, 746 F.3d 191, 197 (5th Cir. 2014) ..............................21

*Barr v. City of Sinton*,
  295 S.W.3d 287 (Tex. 2009) ...................................... 12, 13, 14, 17

*Bose Corp. v. Consumers Union of U.S., Inc.*,
  466 U.S. 485 (1984)......................................................................19

*DeMarco v. Davis*,
  914 F.3d 383 (5th Cir. 2019) .........................................................14

*Fulton v. City of Philadelphia*,
  593 U.S. 522 (2021)......................................................................16

*Hogan v. S. Methodist Univ.*,
  No. 23-0565, 2024 WL 1819826 (Tex. April 26, 2024) ...............................20

*Lozano v. Collier*,
  98 F.4th 614 (5th Cir. 2024) .........................................................18

*Merced v. Kasson*,
  577 F.3d 578 (5th Cir. 2009) .............................................. 13, 14

*United States v. Friday*,
  525 F.3d 938 (10th Cir. 2008) .......................................................19

**Statutes and Rules**

5th Cir. Loc. R. 35.1.................................................................................. iv

5th Cir. Loc. R. 35.2.4............................................................................. iv

Tex. Civ. Prac. & Rem. Code §110.003(a)...............................................11

Tex. Civ. Prac. & Rem. Code §110.003(b)...............................................11

**Other Authorities**

Migratory Bird Treaty Act, 16 U.S.C. §703 ............................................14

**Constitutional Provisions**

Tex. Const. art. I, §6-a ...........................................................................20

## STATEMENT OF THE ISSUES

Whether the panel opinion presents a question of exceptional importance or conflicts with any decision by the Supreme Court or this Court regarding any element of Plaintiffs' free exercise claim.

## STATEMENT OF THE COURSE OF PROCEEDING AND DISPOSITION

Plaintiffs allege free exercise claims relating to a construction project in Brackenridge Park in San Antonio. ROA.13-42. Plaintiffs requested access to an area they consider sacred ("Sacred Area") and sought to enjoin the City from removing trees during retaining-wall repair and continuing an ongoing rookery management program. *Id.*

After a *four-day* evidentiary hearing, the district court ordered the City to remove a dangerous broken limb in the Sacred Area and grant Plaintiffs access. ROA.736. It denied injunctive relief as to trees and birds. ROA.984. The City removed the limb and allowed Plaintiffs and the public access to the Sacred Area.

On appeal, all panel members agreed that any dispute regarding access to the Sacred Area was moot. A divided panel affirmed the denial of other injunctive relief.

## STATEMENT OF RELEVANT FACTS

A.    Hazards from crumbling walls in Brackenridge Park

Brackenridge Park is a large urban park on the San Antonio River. In the early 1900s Lambert Beach was constructed at a bend in the river (ROA.3100):



The north-bank retaining walls have fallen into disrepair, in part due to trees and their root systems. ROA.4309. The walls present a safety hazard. ROA.558. Some portions have already failed, and others are at risk of failing:





ROA.2342; ROA.2269.

If the walls are not rehabilitated, they will inevitably fail, and trees lining the bank will fall as well. ROA.4805-4806.

B.    <u>Hazards from migratory birds</u>

The Park is a seasonal home to migratory birds. The birds typically develop a rookery (a large colony of breeding birds) around Lambert Beach. ROA.2379. The river there has elevated E.coli levels because of the birds' fecal bacteria. ROA.2381-2382. Picnic areas and playgrounds become "covered in bird feces." ROA.4478-4479. The rookery and the associated hazards are extensive:









ROA.2386; ROA.2399; ROA.2390; ROA.2393.

The rookery presents health and safety issues *particularly to children* because of the significant amount of guano near playgrounds and other areas where children play. ROA.2267; ROA.2426 ("When rookeries establish near playgrounds,…the risk of zoonotic disease transmission…increases.").

To address the health threat, the City and Texas Parks & Wildlife developed a rookery management program "to deter birds from an undesired location and encourage them to go to an area where they would be more desirable." ROA.4604; ROA.2425-2440. The program includes trimming trees and brush to reduce nesting habitat and deterrent techniques including pyrotechnics and spotlights. ROA.2382. These measures "do not harm the birds or keep them from reproducing." ROA.2426. They just encourage the birds to nest elsewhere.

Rookery management began in 2022 and successfully deterred birds from nesting near Lambert Beach. ROA.4494. The cormorants at issue still regularly visit the area: "They come in and hang out, you see them in the morning, they come in through the day. They'll come in the trees and then they'll go down in the water and then they'll fly back to their nesting area." ROA.4501.

C.    The Sacred Area

Plaintiffs believe in the sacredness of a twenty-by-thirty-foot Sacred Area on the southern bank of a riverbend near Lambert Beach flanked by two bald cypress trees.



ROA.3093.

Plaintiffs assert that their religion requires performing ceremonies at the Sacred Area. The Sacred Area provides "access to the steps on the southern bank," ROA.4244. Plaintiffs incorporate the riverfront into their ceremonies. One important ceremony is the winter solstice, December 21. ROA.4839. Plaintiffs contend that cormorants must be present during the ceremonies to be viewed in the cypress trees.

During their migration season, cormorants visit the Sacred Area even when they don't nest there. ROA.4501. But cormorants' annual migration is bounded. They migrate to San Antonio each year in April or May. ROA.4607. All of the migratory birds, including cormorants, leave and migrate south at the "first cold snap" in mid-to-late-October. ROA.4623. Irrespective of rookery management activities, no cormorants are in the Park between mid-October and late spring.

D.    <u>City project to address hazards at Lambert Beach</u>

After voters approved bonds for repairs to the Park, the City spent several years planning. ROA.562-67. The City fenced off a two-acre area ("Project Area") for the first phase. ROA.599; ROA.619-42. The Sacred Area is within the Project Area, but it remains accessible.

The Project includes repairing north-bank retaining walls at Lambert Beach, across the river from the Sacred Area. ROA.644; ROA.2249. That will entail removing some trees on the north bank and relocating others that are close to the river. No trees will be affected in the Sacred Area.

Work will also address dead and dying trees in the Project Area that are dangerous to the public. Last year a large limb fell onto a sidewalk at the nearby San Antonio Zoo, allegedly injuring seven people and resulting in a lawsuit, ROA.566, and a cedar elm failed and a large portion fell into the river near the Sacred Area:



ROA.2355-69.

While planning the Project, the City consulted highly-credentialled arborists and engineers; held hearings to consider public input; and adjusted plans to save the greatest number of trees. ROA.3096-3099. Plaintiffs do not dispute that north-bank retaining walls need repair and some trees will be removed in that process. They complain that more trees should be saved.

Contrary to Plaintiffs' representations, the City considered Plaintiffs' input and modified plans based on their input:

> Q. Do you recall receiving any input during these meetings from either of the plaintiffs?
>
> A. Yes. Yes, I did.
>
> Q. And the City took that input?
>
> A. We did.
>
> Q. And did the City give it consideration in the implementation of the design and construction plan?
>
> A. Yes, we did.
>
> Q. Were any of the plans modified based on any of the public feedback?
>
> A. They were.
>
> Q. What was modified?
>
> A. The amount of trees to be destroyed was modified. There's a lot of detail in there. But, yes.

ROA.4406; *see also* ROA.2263-2266 ("In response to public input, the project has been updated to preserve 35 additional trees."). When Plaintiffs allege, again and again, that the City did not consider their beliefs, that is simply false.

Plaintiffs tout pier-and-spandrel as an alternative engineering method for retaining-wall repair, but the excavation required is wider than the demonstrative at Petition.3—eliminating Plaintiffs' hypothesized tree savings—because it needs "some kind of support so that the soil doesn't collapse on the worker." ROA.4308.

There are also "practical factors that affect the options available to the engineers." ROA.4687. Tree location matters—"how are you going to get a drilling rig in here?...It will require removing a whole series of canopies." ROA.4688. The walls' condition matters because "if you put a large piece of equipment on top of the wall, that will generate horizontal pressure on the face of the wall." ROA.4688. These factors weigh against pier-and-spandrel, which requires large and heavy equipment.

City personnel, arborists, and engineers worked "to really look at the alternatives and to figure out whether or not what was being proposed was the best solution moving forward, that we were saving as many trees as possible." ROA.4662. They analyzed pier-and-spandrel, but the "consensus…was that no additional trees would be saved because they would still be impacted by the construction regardless of the methodology." ROA.4663.

## ARGUMENT

### A.    The opinion's substantial-burden analysis does not warrant *en banc* review.

Under the Texas Religious Freedom Restoration Act ("TRFRA"), the government cannot "substantially burden a person's free exercise of religion." Tex. Civ. Prac. & Rem. Code §110.003(a). That provision doesn't apply if "the government agency demonstrates that the application of the burden to the person" is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that interest." §110.003(b). Plaintiffs contend that the panel's analysis of *each element* of TRFRA presents an error of such magnitude as to

warrant *en banc* rehearing. In fact, nothing warrants *en banc* rehearing, starting with substantial burden.

Procedurally, the panel determined that Plaintiffs forfeited any argument that the City's actions substantially burden their religious beliefs because they didn't address the issue in their opening brief and raised it for the first time in reply. Op.14-15. The forfeiture makes this a poor vehicle to address substantial-burden issues.

On the merits, the panel did not "adjudge the accuracy of Plaintiffs' religious beliefs" regarding the role of cormorants. Petition.4. In analyzing Plaintiffs' claim under TRFRA, "the correct standard for evaluating substantial burden is…whether the burden is 'real' and 'significant.'" Op.16 (citing *Barr v. City of Sinton*, 295 S.W.3d 287, 301 (Tex. 2009) ("Thus defined, 'substantial' has two components: real vs. merely perceived, and significant vs. trivial. These limitations leave a broad range of things covered.")). The panel determined that the burden was "real" but was not "significant" because it "only indirectly impacts" Plaintiffs' religious expression, and Plaintiffs' "reverence of the cormorants as sacred genesis creatures from the Sacred Area is not implicated here because the City's rookery management program does not directly dictate or regulate the cormorants' nesting habits, migration, or Park visitation." Op.17-18. Far from disregarding Plaintiffs' stated religious beliefs, the opinion reflects a respectful and deferential analysis.

Nor did the panel narrow the test for what acts count as substantial burdens or make TRFRA "a religious liberty outlier." Petition.5. Under TRFRA, the

substantial-burden inquiry addresses *conduct*: "the focus is on the degree to which a person's religious conduct is curtailed and the resulting impact on his religious expression." *Barr*, 295 S.W.3d at 301.[3] The panel determined that the City's activities did not curtail Plaintiffs' religious *conduct*. Plaintiffs have access to the Sacred Area for ceremonies. While they may wish a cormorant to be present during ceremonies, rookery management does not "directly dictate or regulate" whether a cormorant is in a tree above the Sacred Area at the time of any ceremony. Op.18; Op.40 n.37 (noting that "whether birds decide to migrate and nest in the Park based on natural occurrences or designed measures—is a thing of chance"). Moreover, "regardless of the rookery management program," because of migration patterns, no cormorants "inhabit the area for extended periods of time each year." Op.18. Migration patterns, not rookery management, mean that no cormorants are in the Park on December 21 during winter solstice ceremonies.

Rookery management is thus unlike governmental actions that "remove an object necessary for a religious practice", Petition.5, such as confiscating Bibles[4],

---

[3] Plaintiffs assert that the panel held that "incidental" burdens on religious liberty don't violate TRFRA. Petition.5. The panel did not hold this, and its opinion does not conflict with *Merced v. Kasson*, which rejected the argument that under TRFRA, burdens are *per se* insubstantial if "incidental by way of a law of general application." 577 F.3d 578, 591 (5th Cir. 2009). *Merced* instead followed *Barr* when analyzing substantial-burden, just as the panel did.

[4] *DeMarco v. Davis*, 914 F.3d 383, 389 (5th Cir. 2019).

cutting hair[5], or prohibiting ritual slaughter of animals[6] and thereby curtailing an individual's religious *conduct*. The panel did not depart from *Barr* or this Court's TRFRA precedent or articulate a contrary legal standard warranting *en banc* review.

B.    The opinion's compelling-interest analysis does not warrant *en banc* review.

Plaintiffs argue that bird deterrence *within* the Project Area isn't effective to alleviate bird-feces issues *outside* the Project Area, and that mismatch warrants *en banc* review. Petition.6. Their complaint regarding photographs outside the Project Area (though within a few hundred feet) is a misdirection. Numerous photographs show concentrations of birds and their guano *within* the Project Area:

---

[5] *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 264-66 (5th Cir. 2010).

[6] *Merced*, 577 F.3d at 587.



ROA.2405; *see also* ROA.2386, ROA.2398-2399, ROA.2404.

Moreover, ameliorating bird feces isn't the only compelling governmental interest. Deterrence is also necessary to comply with the Migratory Bird Treaty Act, 16 U.S.C. §703, which prohibits interfering with nesting migratory birds "from the moment that egg is conceived in the nest until the fledgling can get out on its own." ROA.4469-4470. The first six-to-eight-month phase of construction cannot proceed without a program to prevent nesting within the Project Area. Otherwise, construction could proceed only between the first cold snap in mid-October and the first migratory species' arrival in February. That would "effectively put the Project

on hold ad infinitum, given the different species' migration patterns and the Migratory Bird Treaty Act. There could not be an eight-month window of opportunity to accomplish the Project." ROA.987. The Petition wholly ignores this compelling interest, and the fact-bound nature of its compelling-interest argument doesn't present grounds for *en banc* review.

C.    The opinion's narrow-tailoring analysis does not warrant *en banc* review.

1.    The panel did not implicate a circuit split regarding accommodations.

Plaintiffs assert that the panel adopted a "startling" rule that "governments on notice of a requested religious accommodation have no obligation to investigate possible accommodations." Petition.8. The Petition misrepresents the opinion and advances a false narrative that the City ignored Plaintiffs' beliefs.

The panel discusses at length the City's efforts to repair retaining walls and accomplish bird deterrence in the least restrictive manner. Op.24-37. It explains that Plaintiffs misrepresent Supreme Court precedent:

> On appeal, Appellants repeatedly argue that, according to *Fulton*, the City must accommodate their religious exercise in crafting the bird deterrence measures and tree-removal plans. They plainly state that "[the City's] intolerant view is forbidden under the Supreme Court's command that, if [the] government can *accommodate* religious exercise, it must." But recall that the *Fulton* Court did not declare that "if [the] government can *accommodate*, it must"—rather it stated that "so long as the government can *achieve its interests in a manner that does not burden religion*, it must do so." This is simply a rewording of the strict scrutiny standard, not a command to commence all or even any of the proposed measures.

Op.24 (citing *Fulton v. City of Philadelphia*, 593 U.S. 522, 541 (2021) (court's emphasis)).

The panel further explains that Plaintiffs misrepresent the record when they contend that the City made no effort to accommodate their beliefs:

> This is a far cry from an overt admission by the City that "it has not considered—and it refuses to consider—[Appellants'] religious exercise" as Appellants allege….*The record does not support Appellants' allegations that the City has refused to try to accommodate [Appellants'] religious exercise.*

Op.26 (emphasis added).

Plaintiffs' contention that the panel "entered the wrong side of a circuit split" regarding accommodations rests on misrepresentations of the record, applicable precedent, and the panel opinion. It is no basis for *en banc* review.

> 2.    The panel properly placed the burden of proof.

Plaintiffs contend the panel "got things backward" and relieved the City of the burden to prove that its actions are the least restrictive means to advance compelling interests. Petition.10. Plaintiffs again misrepresent the opinion, which detailed evidence and concluded that the City demonstrated that it "seriously undertook [consideration] to address the problem with less intrusive tools readily available to it" and "that it considered different methods that other jurisdictions have found effective." Op.30. The opinion listed "possibly less restrictive alternatives" that Plaintiffs suggested, Op.33, but it unambiguously placed the burden where it

belongs—on the City: "As stressed, the burden is on the City to establish that its proposed measures advance a compelling governmental interest and is the least restrictive means of furthering that interest." Op.37 (citing *Barr*, 295 S.W.3d at 299). It does not spawn confusion warranting *en banc* review regarding burden of proof.

Plaintiffs suggest that members of this Court seek to "provide much-needed clarity to district courts and prison officials" in prison lawsuits. Petition.11 (quoting *Lozano v. Collier*, 98 F.4th 614, 631 (5th Cir. 2024) (Oldham, J., concurring)). But this is not a prison lawsuit, and it is not an apt vehicle to provide that clarity.

3.    The federal regulation issue is a red herring.

Plaintiffs complain that the City relied on non-existent federal regulations to support its engineering design for retaining-wall repair. Petition.11-12. They assert "phantom standards" that allegedly do not exist "are not even binding on the City," and the City never sought a variance from them. *Id*. Their argument is factually baseless, and it is no basis for *en banc* review.

First, the Secretary of Interior standards appear at ROA.1953. Second, the standards are just one of many reasons the City rejected pier-and-spandrel as a viable alternative to save more trees. Op.29-31; ROA.2230-2241. Third, they are binding because the retaining walls "are historically-significant structures; they're cultural resources." ROA.4420-4421. They are also incorporated into State and local permit requirements. ROA.4645-4646, ROA.4650. Plaintiffs cite ROA.4702:4-6 for the proposition that the regulations are not binding because this is not a "grant-in-aid

development project." Petition.11. The City witness cited actually testified that he does not know whether the project received such a grant.

This federal-regulation issue presents no grounds for *en banc* review. There is no conflict or issue of exceptional importance. At best, Plaintiffs advance fact-specific arguments based on misrepresentation of facts.

D.    There is no cause to adopt a different standard of review.

Plaintiffs ask the Court *en banc* to require independent review of the entire record. Petition.13. The independent review rule operates to ensure that "constitutional facts" are correctly decided so as to protect First Amendment rights. There is no cause to take that step here, where historical facts—like cormorant migration patterns or the City's analysis of engineering issues for retaining-wall repair—are dispositive. *See United States v. Friday*, 525 F.3d 938, 950 (10th Cir. 2008) (explaining that "the special *Bose* rule applies only to 'constitutional facts' and not to the basic historical facts upon which the claim is grounded, which are subject to the usual 'clearly erroneous' standard of review") (citing *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 503 (1984)).

Moreover, the opinion reflects that the panel did not simply accept the district court's fact-findings but rather engaged in a thorough *independent* review of the entire record. In particular, its discussion recounts the City's efforts at length, even identifying witnesses and City employees by name. Op.24-37. The panel engaged in independent review and agreed with the district court: The City's actions are the

least restrictive means to advance compelling governmental interests. Far from being "outcome-determinative," Petition.13, Plaintiffs' request for independent review simply wishes that the facts were different.

E.     There is no reason to certify a question to the Supreme Court of Texas.

Plaintiffs argue that the panel erroneously held against them on whether "Plaintiffs' religious services fall within the protection of" Tex. Const. art. I, §6-a. Petition.14. The panel actually held that Plaintiffs "do not sufficiently brief the question," and their "sparse briefing" did not support a preliminary injunction.[7] Op.39-40. Questions of constitutional interpretation often entail complex analysis. *See Hogan v. S. Methodist Univ.*, No. 23-0565, 2024 WL 1819826, at *3-7 (Tex. April 26, 2024) (opinion on certified question interpreting "retroactive" in Texas Constitution). Plaintiffs simply failed to provide it. Moreover, they never asked the panel to certify the question, even in the alternative.

Even now, Plaintiffs do not argue their briefing *was* adequate, even on a question so important that they ask the *en banc* Court to certify it.  Petition.14. They do not cite the standards for certifying questions or make any effort address Texas law on the issue. *Austin v. Kroger Tex. L.P.*, 746 F.3d 191, 197 (5th Cir. 2014) ("As

---

[7] On the merits, Plaintiffs' complaint under §6-a focused primarily on lack of access to the Sacred Area during the time before the City removed the dangerous broken limb and was able to permit access. Plaintiffs now have full access to the Sacred Area for ceremonies, and the panel agreed that any dispute regarding access is moot.

a matter of discipline, we survey the Texas law in this area 'both to explain our uncertainty and assure that we seek certification only when necessary.'"). Once again, Plaintiffs have failed to adequately brief the issue. Moreover, certifying this issue now would reward Plaintiffs' actions in "lying behind the log" and using the certification process as a last-minute bailout strategy to undo unfavorable decisions.

## CONCLUSION

The panel determined that the City's activities do not violate Plaintiffs' free exercise of religion, and Plaintiffs simply want a different result. The Court should deny *en banc* rehearing because there are no conflicts of law or issues of exceptional importance. Moreover, the panel got it right. Brackenridge Park continues to be a park. Plaintiffs continue to have access to the Sacred Area for ceremonies. The retaining-wall repair will remove some trees, but the City worked to minimize removal, and after the repairs the City will plant twenty-two new trees in replacement. The City "holds no animosity toward" Plaintiffs. Op.11. It simply seeks to make the Park safe and accessible for all.

Respectfully submitted,

_____
Jane Webre
State Bar No. 21050060
jwebre@scottdoug.com
Scott Douglass & McConnico LLP
Colorado Tower
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399

    - and -

Langley & Banack, Inc.
Fred R. Jones
State Bar No. 10886700
fjones@langleybanack.com
Natalie F. Wilson
State Bar No. 24076779
nwilson@langleybanack.com
Ian M. McLin
State Bar No. 24005071
imclin@langleybanack.com
Lee Warren
State Bar No. 24099453
lwarren@langleybanack.com
Sara Murray
State Bar No. 14729400
smurray@langleybanack.com
745 East Mulberry, Suite 700
San Antonio, TX  78212-3166
Telephone: (210) 736-6600
Facsimile:  210) 736-6889

    -and -

CITY OF SAN ANTONIO
DEBORAH KLEIN
Deputy City Attorney
State Bar No. 11556750
Deborah.Klein@sanantonio.gov
International Center
203 S. St. Mary's Street,
2nd Floor
San Antonio, TX  78205
Telephone: (210) 207-8949
Facsimile: (210) 207-4004

**ATTORNEYS FOR DEFENDANT-APPELLEE**
**CITY OF SAN ANTONIO**

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitations,
Typeface Requirements, and Type-Style Requirements

This brief complies with (1) the type-volume limitation of FED. R. APP. P. 35(b)(2) because it contains 3,848 words, excluding exempt parts; and (2) the typeface and type style requirements of FED. R. APP. P. 32(a)(5). I understand that a material misrepresentation in this certificate of compliance may result in striking the brief and in sanctions against the person signing the brief.

May 16, 2024.

Jane Webre

COUNSEL FOR APPELLEE
CITY OF SAN ANTONIO

<u>CERTIFICATE OF SERVICE</u>

I certify that on May 16, 2024, I electronically filed the foregoing brief via the CM/ECF system, which will provide notice to counsel of record for Plaintiffs-Appellants:

Mark W. Rasmussen
mrasmussen@jonesday.com
Margaret I. Lyle
milyle@jonesday.com
Jonathan D. Guynn
jguynn@jonesday.com
J. Benjamin Aguiñaga
jbaguinaga@jonesday.com
Chance McCraw
cmccraw@jonesday.com
Timothy M. Villari
tvillari@jonesday.com
JONES DAY
2727 N. Harwood Street
Dallas, TX  75201

John Greil
john.greil@law.utexas.edu
Steven T. Collis
steve.collis@law.utexas.edu
LAW AND RELIGION CLINIC
UNIVERSITY OF TEXAS SCHOOL OF LAW
727 East Dean Keaton Street
Austin, TX  78705

_____
Jane Webre

COUNSEL FOR APPELLEE
CITY OF SAN ANTONIO