# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 28, 2024
Lyle W. Cayce
Clerk

No. 23-50746

GARY PEREZ; MATILDE TORRES,

*Plaintiffs—Appellants*,

*versus*

CITY OF SAN ANTONIO,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:23-CV-977

ON PETITION FOR PANEL REHEARING

Before RICHMAN, *Chief Judge*, and STEWART and HIGGINSON, *Circuit Judges*.

CARL E. STEWART, *Circuit Judge*:

The original opinion in this case was filed on April 11, 2024. *Perez v. City of San Antonio*, 98 F.4th 586 (5th Cir. 2024). There we held that "[b]y way of their sparse briefing on the question, Appellants fail to establish a likelihood of success on the merits of their claims under Article I, § 6-a of the Texas Constitution." Because Appellants did not adequately brief that issue, and because their other arguments lacked merit, we affirmed the district court's judgment and denied Appellants' Emergency Motion for Injunction

No. 23-50746

Pending Appeal. Appellants then submitted a petition for panel rehearing and a petition for rehearing en banc, which are now pending before the court. In their petitions, Appellants requested, in the alternative, that we certify a question to the Supreme Court of Texas on grounds that the scope of Article I, § 6-a of the Texas Constitution is a significant issue of first impression.

For the following reasons we GRANT the petition for panel rehearing, we WITHDRAW our original opinion, and we issue the following order certifying a question to the Supreme Court of Texas.

## I. Factual and Procedural History

Gary Perez and Matilde Torres (together "Appellants") brought action against the City of San Antonio (the "City") alleging that the City's development plan for Brackenridge Park (the "Park") prevented them from performing ceremonies essential to their religious practice. Appellants sued the City under the First Amendment Free Exercise Clause, the Texas Religious Freedom Restoration Act ("TRFRA"), and the Texas Constitution and sought declaratory and injunctive relief to require the City to (1) grant them access to the area for religious worship, (2) minimize tree removal, and (3) allow cormorants to nest. Following a preliminary injunction hearing, the district court ordered the City to allow Appellants access to the area for religious ceremonies but declined to enjoin the City's planned tree removal and rookery management measures.

### A. The Lipan-Apache Native American Church

Appellants are members of the Lipan-Apache Native American Church ("Native American Church"). Perez serves as the principal chief and cultural preservation officer for the Pakahua/Coahuiltecan Peoples of Mexico and Texas and for the Indigenous Governors' office for the State of Coahuila, Mexico. Torres is a member of the Pakahua Peoples of Mexico and Texas. Perez has worshipped and led religious ceremonies in the Park for at

least twenty-five years. Torres has worshipped and participated in religious ceremonies in the Park for at least ten years.

The district court determined that Appellants' religious beliefs are sincerely held. According to their complaint, Appellants believe that life in the region of San Antonio began at a spring called the Blue Hole. Specifically, a spirit in the form of a blue panther lived in the Blue Hole. And when a spirit in the form of a cormorant visited the Blue Hole, the blue panther scared the bird. As the bird fled, water droplets from its tail scattered across the San Antonio River Valley, including the Park, spurring life in the region. The San Antonio River flows through the northern portion of the Park. Appellants also believe that a riverbend, located within the Lambert Beach area of the Park, mirrors the celestial constellation Eridanus and bridges the physical and spiritual worlds. Appellants require certain religious ceremonies to be performed only at this riverbend located within the Lambert Beach area. Moreover, they proclaim that this space's capacity to function as a holy place relies on the presence of trees, birds, and other natural features, which are all part of its "spiritual ecology." Appellants also proclaim that certain religious ceremonies cannot be properly administered without specific trees present and cormorants nesting.

*B. Brackenridge Park, the Sacred Area and Project Area, and the Bond Project*

The Park is a public park in the City, consisting of approximately 343 acres. The Park contains various features and attractions including paths, sports fields, the San Antonio Zoo, the Japanese Tea Garden, the Sunken Garden Theater, and the Witte Natural History Museum. The Park has also been inhabited and utilized by indigenous peoples for thousands of years. Appellants and other members of the Native American Church believe that a specific area within the Lambert Beach section of the Park is a sacred location where they must gather to worship and conduct religious

ceremonies. This area is also the site of the City's planned reformation efforts, which include repairing retaining walls along the San Antonio River. In this litigation, Appellants refer to this area as the "Sacred Area" and the City refers to it as the "Project Area." Appellants define the Sacred Area as the twenty-foot by thirty-foot area between two cypress trees on the southern riverbank of the Lambert Beach area. Within the Project Area, the City developed plans to repair the retaining walls along the San Antonio River, repair the historic Pump House, and construct a handicap-accessible ramp.

In May 2016, San Antonio citizens voted in favor of a $850 million bond package for public improvements. Proposition 3 of the bond package—dedicated to improvements related to parks, recreation, and open spaces—included $7,750,000 for improvements to the Park. The improvements planned for the Park, which are the subject of this suit, are collectively referred to as the "Bond Project." To design the Bond Project and determine the repair methodology to be utilized, the City commissioned the bond project design team, a team of various professionals, including architects, engineers, and historic preservation officials. The bond project design team recommended utilizing a cantilevered wall system to repair the retaining walls. To arrive at this recommendation, the team considered multiple factors including, but not limited to, tree density and location, topography, existing retaining wall stability and height, equipment accessibility, construction feasibility, legal compliance, and regulatory compliance. The City also determined that certain trees in the Project Area would (1) interfere with the construction, (2) be irreparably damaged by the construction, or (3) damage the repaired retaining walls and historical structures in the future. Thus, the City developed plans to (1) completely remove 46–48 trees, (2) relocate 20–21 trees to other areas of the Park, (3) preserve about 16 trees in place, and (4) plant at least 22 new trees in the Project Area. The City held public meetings to receive community input regarding repairs of the original

walls. Appellants, and other citizens, expressed concern with the removal and relocation of trees in the Project Area and a desire for the City to consider alternative plans that would preserve more trees in place.

Additionally, the City's plan for the Bond Project includes bird deterrent techniques[1] intended to deter migratory birds from nesting in the Lambert Beach area. Pursuant to the Migratory Bird Treaty Act,[2] the removal or relocation of trees planned for the Project Area cannot proceed if migratory birds, including cormorants, are nesting in the area. The City contracted with the U.S. Department of Agriculture ("USDA") and coordinated with the Texas Parks and Wildlife Department ("TPWD") and the U.S. Fish and Wildlife Service ("UFWS") to modify bird habitats and deter birds from nesting in highly urbanized areas of the Park, including the Project Area.

To complete the Bond Project, the City must comply with local, state, and federal regulations. Locally, with the San Antonio Development Services Department, the City applied for and received a variance from a City Unified Development Code ("UDC") provision that requires 80% significant tree preservation and 100% heritage tree preservation for projects within the 100-

---

[1] The litigants and the district court use "rookery management," "anti-nesting" measures, and "bird deterrence" activities interchangeably. The rookery management program is the product of extensive consultation and engagement with technical advisors and wildlife management experts. To assist with the City's bird deterrence efforts, the Texas Parks and Wildlife Department ("TPWD") recommended habitat modifications (by removing old nests and dead wood to open the tree canopy) and other deterrent techniques to encourage the birds to relocate from the undesired location or to prevent establishment in the first place. Those techniques include pyrotechnics, clappers, spotlights, lasers, distress calls, effigies, balloons, explosives, and drones. Notably, these measures "do not harm the birds or keep them from reproducing." Moreover, these techniques are legal and in accordance with U.S. Fish and Wildlife Service ("UFWS") guidelines, as well as TPWD Code.

[2] 16 U.S.C. § 703 *et seq.*

year floodplain. Moreover, state and federal regulations govern the preservation of the Lambert Beach retaining walls. As historic structures, the retaining walls contribute to the Park's designation as a City Historic Landmark and as a State Antiquities Landmark and its placement on the National Register of Historic Places. Because of this historic designation, construction is regulated by the Texas Historical Commission and the United States Army Corps of Engineers ("USACE"). The City must submit a final treatment plan and obtain a permit from USACE before repairing the retaining walls or removing or relocating trees within the Lambert Beach area. Once USACE approves the final treatment plan, a thirty-day comment period will begin to solicit feedback from stakeholders, including local indigenous tribes. Lastly, the Secretary of the Interior's Design guidelines, the Americans with Disabilities Act, and Occupational Safety and Health Administration regulations are all applicable to the bond project improvements.

From roughly February 2023 to November 2023, the City temporarily prevented Appellants, Native American Church members, and peyote pilgrims from entering the Lambert Beach area. Appellants filed the instant suit on August 9, 2023, alleging that the City's bird deterrence activities, temporary closure of the Project Area, and proposed removal or relocation of trees in the Project Area place a substantial burden on their religious beliefs in violation of the First Amendment of the U.S. Constitution, the Texas Constitution, and TRFRA. They sought a preliminary injunction, which itemized the relief requested as (1) access to the Sacred Area for religious services, (2) preservation of the spiritual ecology of the Sacred Area by minimizing tree removal, and (3) preservation of the spiritual ecology of the Sacred Area by allowing cormorants to nest. As to the preservation of the spiritual ecology, Appellants requested that the district court order the City

to "reevaluate the Bond Project to develop alternative plans that will accommodate [their] religious beliefs."

*C. The District Court's Decision*

After holding a four-day preliminary injunction hearing, the district court adopted the parties' stipulated facts[3] and determined that the City's plans did not burden Appellants' free exercise of religion. The district court concluded that Appellants held a sincere religious belief and had met their burden to prove the four elements for injunctive relief as to "access for religious services in the Sacred Area." It thus granted access for religious services involving fifteen to twenty people for approximately an hour on specified astronomical dates coinciding with Appellants' spiritual beliefs.[4] The district court also ordered the City to immediately remove the broken limb that the City maintained "pose[d] a risk of injury or death" in the Project Area. As to their request for "access for individual worship," the district court held that Appellants had waived this request but also noted that the balance of equities supported the conclusion that unplanned, unsupervised individual access was impractical. Following expert testimony, the district court concluded that the bird deterrent operation was in the realm

---

[3] To the extent any of the findings of fact constituted conclusions of law, the district court adopted and treated them as such.

[4] Torres testified at the injunction hearing that the average number of congregants participating in religious ceremonies or worship services has been between fifteen and twenty since 2020.

of public health and safety.[5] It also determined that the City had met its burden of proving "a compelling government interest for public health and safety, and the [balance of] equities favor[ed] the City on" Appellants' requested relief regarding minimizing tree removal and allowing cormorants to nest.

### D. Appellants' Emergency Motion for Injunction Pending Appeal

After the district court denied Appellants access for individual worship and declined to enjoin the City's planned tree removal and rookery management measures, Appellants filed with this court an Emergency Motion for Injunction Pending Appeal and to Expediate the Appeal (the "Emergency Motion"). In their Emergency Motion, Appellants contended that they satisfied the "irreparable harm" and "success on the merits" elements of a claim for an injunction because they had sufficiently proven a TRFRA violation and federal and Texas constitutional violations. *See Atchafalaya Basinkeeper v. U.S. Army Corps of Eng'rs*, 894 F.3d 692, 696 (5th Cir. 2018) (citation omitted). Appellants further argued that they satisfied the remaining requirements for obtaining an injunction pending appeal. The City opposed the motion.

We granted Appellants' motion to expedite the appeal and held oral argument in December 2023. We also issued a temporary administrative stay and ordered that Appellants' opposed motion for injunction pending appeal

---

[5] Expert opinion from Dr. J. Hunter Reed, a state wildlife veterinarian and health specialist, expressed significant public health concerns for citizens enjoying the Park. He warned that "[w]hen large rookeries are established in the immediate vicinity of playgrounds, infrastructure, and recreational hardscapes, the risk of zoonotic disease transmission . . . increases substantially." He continued that "[t]he sheer magnitude of fecal contamination, high likelihood of human contact with fecal matter, and limited ability to perform effective environmental decontamination make rookery management action paramount to disease risk mitigation."

No. 23-50746

be carried with the case on October 27, 2023. On February 21, 2024, at the City's request, we lifted the temporary administrative stay in part to allow the rookery bird deterrent management activities to proceed for the immediate next months until migratory cormorants arrived.

## II. Discussion

Appellants have raised four claims for relief—(1) a TRFRA claim, (2) a First Amendment Free Exercise claim, (3) a claim under the freedom-to-worship provision of the Texas Constitution, and (4) a claim under the religious-service-protections provision of the Texas Constitution. Appellants argue that they are likely to succeed on the merits of each claim because the City previously barred them from worshipping in the Sacred Area, seeks to permanently prevent them from performing religious services by destroying the area's spiritual ecology, and has never attempted to accommodate their religious exercise. Those arguments, and each of Appellants' claims for relief, were addressed in the original panel opinion filed in this case. We pretermit further consideration of those claims pending resolution of the Texas constitutional issue we now certify.

Appellants assert that the City's plan violates the religious-service-protections provision of the Texas Constitution, which provides that the state of Texas and its political subdivisions:

> may not enact, adopt, or issue a statute, order, proclamation, decision, or rule that prohibits or limits religious services, including religious services conducted in churches, congregations, and places of worship . . . by a religious organization established to support and serve the propagation of a sincerely held religious belief.

Tex. Const. art. I, § 6-a.

No. 23-50746

Appellants contend that the City's planned changes to the Sacred Area amount to a limitation of their religious services, while the City argues that those changes aim to promote safety and public health. Appellants further argue that § 6-a "does not even allow the City to try to satisfy strict scrutiny; it is a categorical bar on what the City seeks to do." Notwithstanding the City's interest in the park project, Appellants aver that the City's tree-removal and rookery management measures independently[6] violate § 6-a because they would "prohibit and limit [Appellants'] future religious services by irreparably destroying the very aspects of the Sacred Area that make it a living place of worship for [Appellants]."

Whether § 6-a imposes a complete bar on all restrictions to religious services or invokes a strict scrutiny inquiry is a determination best left to the Supreme Court of Texas.[7] To ascertain Texas law, this court looks first to the final decisions of the Supreme Court of Texas. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007). Where there is no definite pronouncement from the Supreme Court of Texas on an issue, we may choose to certify a question to that court.[8] Neither party has cited any cases interpreting this constitutional provision, nor has this court found any. This potentially outcome determinative issue raises novel and sensitive questions about the scope of religious service protections under the Constitution of the

---

[6] In addition to their arguments that the City's fencing violates §6-a by barring access for religious services, Appellants contend that "the City's tree-removal and anti-nesting measures independently violate Section 6-a."

[7] *See, e.g.*, Barr v. City of Sinton, 295 S.W.3d 287, 305 (Tex. 2009) (holding that Texas citizens do not have "an absolute right to engage in [religious] conduct" because "[t]he government may regulate such conduct in furtherance of a compelling interest").

[8] Under Texas law, "[t]he Supreme Court of Texas may answer questions of law certified to it by any federal appellate court if the certifying court is presented with determinative questions of Texas law having no controlling Supreme Court precedent." Tex.R.App. P. 58.1*; see also* Tex. Const. art. V, § 3–c(a).

No. 23-50746

State of Texas. Thus, we conclude that certification of this issue to the Supreme Court of Texas is appropriate.

### III. Question Certified

We CERTIFY the following question to the Supreme Court of Texas:

> Does the "Religious Service Protections" provision of the Constitution of the State of Texas—as expressed in Article 1, Section 6-a—impose a categorical bar on any limitation of any religious service, regardless of the sort of limitation and the government's interest in that limitation?

"We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the question certified." *See, e.g.*, *Janvey v. Golf Channel, Inc.*, 792 F.3d 539, 547 (5th Cir. 2015).