Case No. 23-50746

In The United States Court of Appeals
for the Fifth Circuit

Gary Perez; Matilde Torres,
*Plaintiffs–Appellants/Cross-Appellees*

v.

City of San Antonio,
*Defendant–Appellee/Cross-Appellant*

## ADVISORY REGARDING ROOKERY ACTIVITIES OR, IF NECESSARY, MOTION FOR RELIEF FROM ADMINISTRATIVE STAY

Throughout this expedited interlocutory appeal, Appellee the City of San Antonio (the "City") has kept Plaintiffs and the Court apprised of the status of the Brackenridge Park improvement project and the anticipated timing of relevant future events—construction activities, federal permitting, and the like. Consistent with that longstanding practice, the City gives notice that it will commence its annual rookery management activities by February 1, 2025, because migratory herons and egrets will soon begin to arrive in San Antonio.

Plaintiffs-Appellants Gary Perez and Matilde Torres ("Plaintiffs") agree with the City that there is not currently an administrative stay in place that would prevent the City from commencing its seasonal rookery management activities. If, however,

4936-6791-1695

such activities are currently subject to an administrative stay, the City asks the Court to lift the stay to allow rookery management activities to go forward as they have seasonally for the past several years. This Court granted such relief early last year to allow rookery management activities to proceed.

A. <u>The City gives notice that rookery management activities will begin.</u>

It is the parties' understanding that there is currently no administrative stay in place that would prohibit rookery management activities within Brackenridge Park.[1] The district court denied Plaintiffs' request for a preliminary injunction to prevent the activities. This Court in October 2023 issued a temporary administrative stay but did not grant Plaintiffs' motion for an injunction pending appeal.

In February 2024, when the City sought to commence rookery management activities at the start of the bird migration season, the Court lifted the administrative stay in part to allow the City to continue the rookery management activities. (Dkt.202-1) The City therefore continued the seasonal activities.

---

[1] Notwithstanding their agreement that there is no administrative stay in place that would prevent the City from commencing rookery management activities, Plaintiffs-Appellants "continue to oppose deterrence against cormorants." January 17, 2025 email from John Greil, counsel for Plaintiffs-Appellants.

2

On April 11, 2024, a panel of this Court issued its original opinion affirming the district court's order. (Dkt.209-1) The original opinion vacated the temporary administrative stay. *Id.* p.43. At that point, there was no administrative stay in place at all. On rehearing, the panel on August 28, 2024, withdrew its original opinion and certified a question to the Supreme Court of Texas. (Dkt.231-1) The order certifying the question does not state that the temporary administrative stay is reinstated.

Because there is no administrative stay in place, and the Court denied Plaintiffs' requested injunction pending appeal, the City concludes that it may proceed with the seasonal rookery management activities without further action by the Court. In the interest of continued transparency, however, the City gives notice that it will commence such activities by February 1, 2025, in order to address the arrival of the early-migrating birds.

B. <u>If there is an administrative stay in place, the City asks the Court to lift it to allow rookery management activities.</u>

If the parties are mistaken in their interpretation, and in fact the temporary administrative stay was somehow reinstated, the City respectfully moves that the Court lift the stay in part to allow rookery management activities to go forward as they have each February for a number of years. A year ago, this Court lifted the stay in part at the start of the migration season in 2024. And granting this relief would

maintain the status quo as it has existed for the past several years, predating this litigation.

Herons and egrets will begin to arrive in Brackenridge Park in February, as they do each year. If these early-arriving migratory birds are not deterred from nesting in the highly-urbanized management area when they arrive, then: (1) those areas of the park will continue to present a serious public health hazard, especially to children, because of excessive fecal contamination, and (2) the City will not be able to commence any construction activities in the Project Area until all birds depart in October after the "first cold snap," even if this appeal is resolved earlier.

The City's rookery management activities are timed with the known migration patterns of colonial migratory birds because different species of birds migrate at different times. Certain herons and egrets arrive first; they are seen "as early as February." Tr.549:1-23. The cormorants arrive each year in April or May, "or oftentimes later," so no cormorants would be deterred by activities at this time. *Id.* The bird deterrent activities "do not harm the birds or keep them from reproducing." ROA.2426. All of the migratory birds in the Park, including the cormorants, leave and "migrate further down south" at the "first cold snap," which generally occurs in October. Tr.565:6-7.

Because the first migratory birds begin arriving each year in February, the City must begin its bird deterrent activities in February in order to prevent those

4936-6791-1695

species from nesting in the area. If the early-arriving species nest in the area, the City cannot later disturb them. The migration timing issues are significant in a number of ways.

**First**, it is imperative that the City deter herons and egrets, the first species of migratory birds that arrive in San Antonio, because those species establish large rookeries that have the greatest impact on public health and safety. If the early-arriving herons and egrets are not effectively deterred from establishing their rookeries in the highly urbanized areas of the Park (including the Project Area) and redirected to more suitable areas, it will be significantly more difficult to deter later-arriving birds. Deterring the early-arriving herons and egrets is therefore essential to protect public health and safety, ensure the accessibility of park resources, and protect the birds themselves.

**Second**, bird deterrent activities by other entities (not the City) likely will begin near the Park around the same time. Those nearby activities by other entities (1) confirm that migratory birds present significant challenges in the urbanized center of San Antonio, not just at the Park, and the City is not the only steward of land that must act to address the adverse impact; and (2) may have the unfortunate effect of pushing migratory birds to nest within the Park's Project Area if there are not corresponding deterrent efforts within the Project Area.

**Third**, the management/bird-deterrence area—an area that includes the Project Area but that is larger in size—will again be covered in noxious bird guano, and many of the Park playgrounds, picnic areas, and trails will be unsuitable for use by humans, resulting in additional closure of access. In addition, the entire Project Area except the Sacred Area (which will also be covered in guano) will be closed. Mitigating this public health hazard and safeguarding Brackenridge Park is a substantial and compelling governmental interest, and the bird deterrent activities—which do not physically harm any birds or prevent them from nesting elsewhere in the 343-acre Park—are the least restrictive means to advance that compelling interest.

**Fourth**, staying the bird deterrent activities now, even for a short time, translates to almost a year's delay in commencing construction on the Park Project even if Plaintiffs' challenges to the Project are resolved earlier. A temporary stay is thus not temporary at all. The Migratory Bird Treaty Act forbids construction interference with actively nesting migratory birds and their nests. Under the mandates of that Act, if the early-arriving migratory birds establish nests in the Project Area when they arrive in February, the City cannot commence any construction activities in the area until after the migratory birds leave after the first cold snap in October. Given the crumbling riverbank walls involved in the Project, delaying their repair likewise adversely impacts public safety. Additional failures of

river walls in turn could cause large trees to fail, which presents a risk to park visitors and park infrastructure. All of this undermines the goal of completing the Project expeditiously so that all Park visitors, including Plaintiffs, can safely enjoy the Park and its amenities.

Staying the bird deterrent activities is thus a significant matter, and it is inappropriate for a temporary administrative stay to grant that relief without requiring Plaintiffs to meet the high burden of an injunction on appeal. If, in fact, there is an administrative stay in place, the City asks this Court to grant it relief from the stay to allow it to commence the bird deterrent activities February 1, 2025, before the early-arriving migratory species nest in the Park management area.

Respectfully submitted,

/s/ Jane Webre
Jane Webre
State Bar No. 21050060
jwebre@scottdoug.com
SCOTT DOUGLASS & MCCONNICO LLP
Colorado Tower
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399

Langley & Banack, Inc.
Fred R. Jones
State Bar No. 10886700
fjones@langleybanack.com
Natalie F. Wilson
State Bar No. 24076779
nwilson@langleybanack.com
Ian M. McLin
State Bar No. 24005071
imclin@langleybanack.com
Lee Warren
State Bar No. 24099453
lwarren@langleybanack.com
Sara Murray
State Bar No. 14729400
smurray@langleybanack.com
745 East Mulberry, Suite 700
San Antonio, TX 78212-3166
Telephone: (210) 736-6600
Facsimile:  210) 736-6889
City of San Antonio

Deborah Klein
Deputy City Attorney
State Bar No. 11556750
Deborah.Klein@sanantonio.gov
International Center
203 S. St. Mary's Street,
2nd Floor
San Antonio, TX 78205
Telephone: (210) 207-8949
Facsimile: (210) 207-4004

**Attorneys for Defendant-Appellee City of San Antonio**

## CERTIFICATE OF SERVICE

I certify that on January 21, 2025, I electronically filed the foregoing pleading via the CM/ECF system, which will provide notice to counsel of record:

| | |
|---|---|
| Mark W. Rasmussen<br>mrasmussen@jonesday.com<br>Margaret I. Lyle<br>milyle@jonesday.com<br>Jonathan D. Guynn<br>jguynn@jonesday.com<br>Chance McCraw<br>cmccraw@jonesday.com<br>Timothy M. Villari<br>tvillari@jonesday.com<br>JONES DAY<br>2727 N. Harwood Street<br>Dallas, TX 75201 | John Greil<br>john.greil@law.utexas.edu<br>Steven T. Collis<br>steve.collis@law.utexas.edu<br>LAW AND RELIGION CLINIC<br>UNIVERSITY OF TEXAS SCHOOL OF LAW<br>727 East Dean Keaton Street<br>Austin, TX 78705 |

_____
Jane Webre

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitations, Typeface Requirements, and Type-Style Requirements

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1397 words, excluding exempt parts. It complies with the typeface and type style requirements of Rule 27(d)(1)(E) because it was prepared in a proportionally spaced typeface (14-point Century Schoolbook). I understand that a material misrepresentation in this certificate of compliance may result in striking the pleading and in sanctions against the person signing the pleading.

_____
Jane Webre

January 21, 2025

4936-6791-1695