CASE NO. 23-50746

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

GARY PEREZ; MATILDE TORRES,
*Plaintiffs–Appellants/Cross-Appellees*

v.

CITY OF SAN ANTONIO,
*Defendant–Appellee/Cross-Appellant*
_____

**REPLY REGARDING ROOKERY ACTIVITIES
AND RELIEF FROM ADMINISTRATIVE STAY**
_____

Appellee the City of San Antonio (the "City") files this short reply to the response filed by Plaintiffs-Appellants Gary Perez and Matilde Torres ("Plaintiffs") (Dkt. 266-1) regarding the City's need to commence its annual rookery management activities in Brackenridge Park by February 1, 2025, because the first migratory birds will soon begin to arrive in San Antonio. The City's January 21 pleading sets out the reasons why the Court should lift the administrative stay, if necessary, so it can commence those activities. But in addition to those grounds, there are two additional reasons to reject Plaintiffs' opposition to the rookery management activities.

4919-1892-2004

1. <u>There is no way to deter herons and egrets without deterring cormorants.</u>

Herons and egrets are the first-arriving migratory birds, and the City must commence its deterrence activities now, so that the herons and egrets do not establish nests in the Park when they arrive starting about February 1. If these early-arriving birds establish nests in the Project Area, then pursuant to the federal Migratory Bird Treaty Act, the City cannot disturb the nests, and it will not be able to commence work on the project until after the birds migrate further south in late October. A delay of days or weeks in starting deterrence amounts to a delay of almost a year in construction. But in addition, the fecal matter from those birds will make the affected areas of the Park unsafe and unusable by the public throughout that time. As steward of this public land, the City has an obligation to make the Park safe for all visitors, and deterring migratory birds from the Management Area is the only way to control the toxic bird guano and make the playgrounds, picnic areas, and trails available for San Antonio families.

Plaintiffs do not oppose deterrence activities aimed at the herons and egrets, but they oppose deterring cormorants: "Plaintiffs suggested a reasonable alternative that would permit the City to deter egrets and herons from nesting in the Project Area without deterring cormorants and thereby preventing Plaintiffs from practicing their religion." Resp. p.4 (suggesting that the City should "limit bird deterrence to its 'target' birds"). The record demonstrates, however, that the "reasonable alternative"

2

Plaintiffs suggest is factually impossible. "There is not a way" to deter the more problematic species like egrets and herons without deterring the less problematic species like cormorants. ROA.4472-4474. The undisputed testimony demonstrated that none of the different deterrence activities can be limited to herons and egrets but not also deter cormorants: there is no "way to do *habitat modification* that would deter herons and egrets but would not deter cormorants"; there are no "*scents* that deter egrets and herons but don't deter cormorants"; there are no "*visual deterrents* that effectively deter egrets and herons but do not deter cormorants;" there are no "*noises* that deter only egrets and herons, that do not seem to bother or deter the cormorants." *Id*. The record is abundantly clear and undisputed on this point: "There isn't a way" to "deter egrets and herons but let double-crested cormorants into the Project Area." ROA.4625. In order to accomplish the goal of mitigating the hazard of bird feces, all species must be deterred.[1]

Imposing a temporal limit on the bird deterrence fails for the same reason. If the City starts deterring the herons and egrets now, with a plan to stop all deterrence

---

[1] Plaintiffs frames the City's bird deterrence as a thief stealing the bread to prevent the Lord's Supper. Resp. p.4. This Court, in its original panel opinion, correctly rejected such a characterization and described the appearance of a cormorant in the Sacred Area during Plaintiffs' worship services "a thing of chance." Panel Op. p.40 n.37. Indeed, while Plaintiffs ask this Court to prevent bird deterrence in the Park to safeguard worship services in the Sacred Area, they did not actually perform their service in the Sacred Area on the Winter Solstice in December 2024.

when the cormorants arrive in about April, that would simply kick the issue down the road. All of the migratory birds—including the newly-arrived cormorants and the herons and egrets that had been deterred earlier—would likely move back into the Management Area and create the same public health issue. This is particularly true given that other nearby landowners such as the San Antonio Zoo would be continuing bird deterrence on their properties.

Plaintiffs suggest that the City can fulfill its health and safety obligations and comply with federal law by deterring only the herons and egrets. But science and nature do not allow that. "There is not a way" to deter egrets and herons without deterring cormorants. ROA.4474. Plaintiffs' request that the Court allow the City to deter herons and egrets but not cormorants ignores that absolute fact, and the Court should reject it.

2. <u>Plaintiffs ask this Court to grant them injunctive relief that neither the district court nor this Court has granted, without satisfying the requisites of an injunction pending appeal.</u>

Plaintiffs describe the current bird deterrence dispute this way: "The Court should not allow the City to undertake efforts that would deter cormorants—i.e. limiting Plaintiffs' religious services—while the merits of this case remain undecided." Resp. p.5. What they describe is a preliminary injunction, but neither the district court nor this Court has granted that relief to Plaintiffs. Quite the opposite. The district court held a multi-day evidentiary hearing specifically

4919-1892-2004

addressing the issue of bird deterrence and denied Plaintiffs' request for a preliminary injunction to prevent such deterrence while the merits of Plaintiffs' case are decided. Indeed, this is an interlocutory appeal from the denial of a preliminary injunction. Likewise, the district court denied Plaintiffs' motion for an injunction pending appeal. Plaintiffs also sought the same injunction in this Court, but this Court has not granted that relief.

Nor have Plaintiffs made any effort to satisfy the required elements of an injunction pending appeal. They state simply that they seek to maintain the status quo (Resp. p.6), but the status quo between the parties before this appeal involved the City engaged in rookery management for years before Plaintiffs filed suit.

The reality is that Plaintiffs cannot satisfy the four factors this Court considers when analyzing whether to grant an injunction pending appeal. The factors are: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Tex. Top Cop Shop, Inc. v. Garland*, No. 24-40792, 2024 WL 5203138, at *1 (5th Cir. Dec. 23, 2024); *Nken v. Holder*, 556 U.S. 418, 434 (2009).

The factors weigh against granting an injunction here. This panel rejected the bulk of Plaintiffs' claims on the merits, and only a single claim remains pending on

certified question to the Texas Supreme Court. The panel opinion also rightly noted that the harm Plaintiffs complain of does not "seem to be as definite or permanent as [Plaintiffs] allege." Panel Op. p.40 n.37. Regarding the final two factors, staying bird deterrence in the Park will also substantially injure the City and disserve the public interest because the dangerous proliferation of bird feces will render areas of the Park unusable by the public.

The City therefore urges the Court, if necessary, to lift the administrative stay and allow it to proceed with rookery management activities by February 1, 2025.

## CONCLUSION AND PRAYER

Staying the bird deterrent activities is a significant matter, and it is inappropriate for a temporary administrative stay to grant that relief without requiring Plaintiffs to meet the high burden of an injunction on appeal. If, in fact, there is an administrative stay in place, the City asks this Court to grant it relief from the stay to allow it to commence the bird deterrent activities February 1, 2025, before the early-arriving migratory species nest in the Park management area.

Respectfully submitted,

_____
Jane Webre
State Bar No. 21050060
jwebre@scottdoug.com
SCOTT DOUGLASS & MCCONNICO LLP
Colorado Tower
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512)   495-6300
Facsimile: (512) 495-6399

LANGLEY & BANACK, INC.
FRED R. JONES
State Bar No. 10886700
fjones@langleybanack.com
NATALIE F. WILSON
State Bar No. 24076779
nwilson@langleybanack.com
IAN M. MCLIN
State Bar No. 24005071
imclin@langleybanack.com
LEE WARREN
State Bar No. 24099453
lwarren@langleybanack.com
SARA MURRAY
State Bar No. 14729400
smurray@langleybanack.com
745 East Mulberry, Suite 700
San Antonio, TX  78212-3166
Telephone: (210) 736-6600
Facsimile:  210) 736-6889
CITY OF SAN ANTONIO

DEBORAH KLEIN
Deputy City Attorney
State Bar No. 11556750
Deborah.Klein@sanantonio.gov
International Center
203 S. St. Mary's Street,
2nd Floor
San Antonio, TX 78205
Telephone: (210) 207-8949
Facsimile: (210) 207-4004

**ATTORNEYS FOR DEFENDANT-APPELLEE CITY OF SAN ANTONIO**

CERTIFICATE OF SERVICE

    I certify that on January 29, 2025, I electronically filed the foregoing pleading via the CM/ECF system, which will provide notice to counsel of record:

| | |
|---|---|
| Mark W. Rasmussen<br>mrasmussen@jonesday.com<br>Margaret I. Lyle<br>milyle@jonesday.com<br>Jonathan D. Guynn<br>jguynn@jonesday.com<br>Chance McCraw<br>cmccraw@jonesday.com<br>Timothy M. Villari<br>tvillari@jonesday.com<br>JONES DAY<br>2727 N. Harwood Street<br>Dallas, TX 75201 | John Greil<br>john.greil@law.utexas.edu<br>Steven T. Collis<br>steve.collis@law.utexas.edu<br>LAW AND RELIGION CLINIC<br>UNIVERSITY OF TEXAS SCHOOL OF LAW<br>727 East Dean Keaton Street<br>Austin, TX 78705 |

_____
Jane Webre

4919-1892-2004

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitations, Typeface Requirements, and Type-Style Requirements

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1335 words, excluding exempt parts. It complies with the typeface and type style requirements of Rule 27(d)(1)(E) because it was prepared in a proportionally spaced typeface (14-point Century Schoolbook). I understand that a material misrepresentation in this certificate of compliance may result in striking the pleading and in sanctions against the person signing the pleading.

January 29, 2025                                    _____
                                                    Jane Webre