No. 23-50746

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

GARY PEREZ AND MATILDE TORRES,

*Plaintiffs-Appellants,*

v.

CITY OF SAN ANTONIO,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Texas (Biery, J.)

## RESPONSE TO APPELLEE'S OPPOSED MOTION FOR RELIEF
## FROM STAY AS TO ROOKERY MANAGEMENT ACTIVITIES

Mark W. Rasmussen
Margaret I. Lyle
Chance McCraw
Timothy M. Villari
JONES DAY
2727 North Harwood Street
Dallas, TX 75201.1515
Telephone: +1.214.220.3939
E-mail: mrasmussen@jonesday.com
E-mail: milyle@JonesDay.com
E-mail: cmccraw@jonesday.com
E-mail: tvillari@jonesday.com

ATTORNEYS FOR PLAINTIFFS

John Greil
Steven T. Collis
Law & Religion Clinic
University of Texas School of Law
727 East Dean Keeton St.
Austin, TX 78705
Telephone: +1.512.471.5151
E-mail: john.greil@law.utexas.edu
E-mail: steven.collis@law.utexas.edu

ATTORNEYS FOR PLAINTIFFS

# INTRODUCTION

*Q: Is cormorant nesting a health concern?*
*A: No. Cormorant nesting would mean the project could not go on.*
Testimony of Bill Pennell, City of San Antonio project manager. ROA.4462.

*"Migratory cormorants will arrive in May 2025, if not sooner. When they do, the public health risks associated with guano will reemerge."*
City of San Antonio's Motion to Lift Stay at 4, ECF 282.

The City of San Antonio (the "City") seeks relief from the stay to drive away migratory cormorants—a sacred bird in the Native American Church and an essential element to Plaintiffs' religious services—without showing a need for such deterrence. Whether the City can drive away the cormorants from nesting at this sacred river bend without attempting to accommodate Plaintiffs' religious exercise is a central question that this Court will decide on appeal. And if the Texas Supreme Court accepts Plaintiffs' interpretation of the Texas Constitution, the City cannot limit these religious services even if it *had* attempted to accommodate Plaintiffs. The stay is necessary to preserve the subject matter of this appeal and maintain the status quo while the Texas Supreme Court and this Court decide whether the City's anti-nesting measures violate Plaintiffs' rights.

Moreover, the record on appeal is clear that the cormorants do not themselves pose a public health concern, as the City's project manager, Mr. Pennell, expressly admitted at the hearing. ROA.4462. Rather, the City deters birds due to a purported health problem caused by "the *egret and heron* rookery located at Brackenridge Park." ROA.4603 (emphasis added). Accordingly, this Court has allowed the City to divert

1

incoming *egrets and herons* to other areas of the park. *Cormorants*, on the other hand, "are not part of the City's concern with respect to health." ROA.4456. Plaintiffs' religious services require *cormorants* to nest *in* the Project Area, and not merely nearby. ROA.4120–21. Allowing the City to chase away cormorants would prevent Mr. Perez's and Ms. Torres's religious services. It would sacrifice Plaintiffs' religious liberty in the interest of a "public health" benefit that the City has not established and that the City's own witnesses disclaimed in their hearing testimony. Such a benefit—speculative at best and non-existent at worst—does not justify lifting the stay that maintains the status quo on appeal.

Furthermore, the City has taken inconsistent positions throughout this litigation that undercut its purported compelling interest in public health. At the district court and before this Court in its merits briefing, the City represented that bird deterrence is necessary *only within the two-acre Project Area*. But now, in seeking to lift the stay, the City plans to deter birds in an area that goes far beyond the Project Area. The City's shifting *post hoc* position in its recent motions to lift the stay undermines any "public health" interest and only emphasizes the need for the stay to remain in place until the Texas Supreme Court issues its opinion and this Court can rule on the merits.

This Court should maintain the status quo, maintain the stay against deterring cormorants in the Project Area, and deny the City's motion that will prevent Plaintiffs from exercising their religion.

## BACKGROUND

In October 2023, this Court entered a stay that restrained the City from limiting Plaintiffs' religious services in the two-acre Project Area with respect to access, holy trees, and sacred cormorants. *Perez v. City of San Antonio*, No. 23-50746 (5th Cir. Oct. 27, 2023) (per curiam), ECF 74. The Court temporarily and partially lifted that stay in February 2024 to "allow the rookery bird deterrent management activities to proceed for the immediate next months **until migratory cormorants arrive**." *Perez v. City of San Antonio*, No. 23-50746 (5th Cir. Feb. 21, 2024), ECF 202-1 (emphasis added). Before the migratory cormorants arrived that spring, the Court issued its panel opinion. *Perez v. City of San Antonio*, No. 23-50746 (5th Cir. Apr. 11, 2024), ECF 209.

In August 2024, this Court withdrew the panel opinion and certified a question to the Supreme Court of Texas that asked whether the "'Religious Service Protections' provision of the Constitution of the State of Texas—as expressed in Article 1, Section 6-a—impose[s] a categorical bar on any limitation of any religious service, regardless of the sort of limitation and the government's interest in that limitation[.]" *Perez v. City of San Antonio*, 115 F.4th 422, 428 (5th Cir. Aug. 28, 2024), ECF 231. That certified question remains pending before the Supreme Court of Texas.

In January 2025, this Court granted the City the same temporary relief as the year before: lifting the stay to "allow the rookery bird deterrent management activities to proceed for the immediate next months **until migratory cormorants arrive**." ECF 276-2 (emphasis added).

Now, the City requests a complete lifting of the stay for all bird deterrence activities, without any regard for the sacred cormorants—relief that this Court did not grant in its 2024 or 2025 orders. There is no reason to do so now. The City—for months—has been deterring all egrets and herons from nesting at the river bend. Those problematic birds will have nested elsewhere in the park and will not relocate to the bend this season. The *cormorants* that migrate are far less numerous: "[b]ased on the number of cormorants that have been noticed in the area," the City's witness explained, "the cormorants do not pose a health risk." ROA.4456.

Accordingly, Plaintiffs respectfully request that this Court deny the City's Motion. Doing so will preserve the status quo while the Supreme Court of Texas, and then ultimately this Court, resolve Plaintiffs' outstanding issues on appeal.

## ARGUMENT

### I. The City Has Failed to Demonstrate a Need to Upend the Status Quo While the Certified Question Is Pending Before the Supreme Court of Texas and the Appeal Remains Pending Before This Court.

The City fails to carry its burden to lift the administrative stay and upend the status quo that currently preserves Plaintiffs' constitutional rights. Plaintiffs did not oppose lifting the administrative stay to permit bird deterrence for *egrets and herons*, but Plaintiffs do oppose lifting the stay to permit bird deterrence of the religiously significant *cormorants*.

The City's deterring cormorants from nesting in the Project Area would prevent Plaintiffs from performing their religious services, which, as the record makes clear,

4

require the cormorants to nest *in* (not nearby) the two-acre Project Area. ROA.4119–21 (stating cormorants nearby were insufficient for their religious practice); ROA.4147 ("Success would have -- means that we would have kept as many trees as possible and allowed the cormorants to nest in the trees once again, put the spiritual ecology back into place."); ROA.4160–61 ("[T]he water bird is what gave life, you know, to that region and it's what takes our prayers, you know, to the heavens[.]… [I]f we don't have the birds there, it's not something that continues.… [T]hat's where the water bird gave life. So it's important for it to nest."); ROA.4173 ("To not have the birds there[,] … [the religious ceremony] would be meaningless."); ROA.4181 (nesting nearby is insufficient for Plaintiffs' ceremonies).

The City's destruction of a necessary component of the religious service would substantially burden Plaintiffs' exercise of religion. *See, e.g.*, *DeMarco v. Davis*, 914 F.3d 383, 389 (5th Cir. 2019) (prison official "confiscat[ing] copies of the Bible and religious books … placed a substantial burden on [prisoner's] practice of reading religious literature"). Deterring sacred cormorants substantially burdens Plaintiffs' religious services that require cormorants to nest at the Project Area.

The pending certified question to the Supreme Court of Texas—a novel issue of state constitutional law—will answer whether the City's deterrence of cormorants limits or prohibits Plaintiffs' religious exercise in violation of Article 1, Section 6-a of the Texas Constitution. If Plaintiffs' interpretation is correct—that the Amendment acts with an absolute force within a limited scope that includes Plaintiffs' services—then the

City's proposed actions would violate an essential constitutional right enshrined by the people of Texas.

Moreover, this Court will also decide the additional questions whether the City's deterrence of cormorants violates Plaintiffs' constitutional and statutory rights under TRFRA, the Free Exercise Clause of the United States Constitution, and Article 1, Section 6 of the Texas Constitution. These questions remain pending before this Court, which withdrew its prior merits opinion when it granted panel rehearing. *Perez v. City of San Antonio*, 115 F.4th 422, 423 (5th Cir. Aug. 28, 2024). Allowing the City to drive away cormorants now would thus fail to preserve the status quo for this Court's merits decision, while irreparably harming Plaintiffs' religious liberty. *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) ("The loss of First Amendment freedoms … unquestionably constitutes irreparable injury."). Such losses are irreparable even if they are "limited" or "temporary." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020).

The current stay prevents further harm to Plaintiffs while the Texas Supreme Court considers whether the City's bird deterrence against cormorants limits or prohibits Plaintiffs' religious services in violation of the Texas Constitution, and while this Court determines the merits of this appeal. At the same time, this Court's temporary and partial lift of the stay has allowed the City multiple months to deter egrets and herons—the problem species—as they arrived in the park. Since the City has not shown any actual need for more relief, this Court should deny the Motion and preserve the

status quo while it awaits a decision from the Supreme Court of Texas and while this

Court reaches its own decision on the merits.[1]

## II.  The City Can Complete Construction Within a Seven-Month Window Without Deterring Cormorants.

The City argues that denying its request to lift the stay will "prohibit the City

from commencing construction activities in the area." ECF 282 at 6. But the record is

clear that the City's Project only requires six months to complete. ROA.289 ("Duration

of project is anticipated to be 6 months …."). The City can deter egrets and herons

starting in February, allowing it to perform the construction during the seven months—

October to May—when cormorants are not nesting in the Project Area.[2]

Importantly, the City does not argue that a continued stay would make

completing the project impossible. Rather, it argues that the stay may result in a delay

that the City would prefer to avoid. "Only those interests of the highest order" count

as *compelling* government interests, however. *Thomas v. Rev. Bd. of Indiana*, 450 U.S. 707,

718 (1981) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972)). A *preference* for starting

construction at a certain time of year cannot constitute an interest of the highest order.

---

[1] In the alternative, this Court could decide Plaintiffs' pending Emergency Motion for an Injunction Pending Appeal and enjoin the City from implementing its Urban Rookery Management Program until this Court can decide the issues on the merits. Emergency Motion of Appellants Gary Perez and Matilde Torres for an Injunction Pending Appeal, ECF 6, *carried with the case by* ECF 74, *denied by* ECF 209, *denial vacated by* ECF 228, 231.

[2] Plaintiffs remain opposed to the City's current design plans, but do not litigate that issue here because the City's only requested relief relates to bird deterrence. Plaintiffs respectfully reserve their position with respect to all of the issues presented on appeal.

*See also Merced v. Kasson*, 577 F.3d 578, 592 (5th Cir. 2009) (under TRFRA, compelling government interests must be "of the highest order" and "paramount") (internal quotations omitted). Here, because the City can accomplish its objective of completing construction without deterring sacred cormorants, it must do so. *See Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522, 541 (2021) ("Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it must do so.").

## III.    The City Does Not Have a Compelling Interest in Deterring Cormorants for Public Health Reasons.

The City warns: "Migratory cormorants will arrive in May 2025, if not sooner. When they do, the public health risks associated with guano will reemerge." ECF 282 at 4. This Court should not be misled.

The City's uninterrupted position in this litigation—until now—was that *cormorants* do not pose a health risk. ECF 120 at 15. And the record evidence tells the same story. *See, e.g.*, ROA.4617 ("Q. And the goal of bird deterrence at Lambert Beach is to the -- to deter egrets and herons, correct? A. Correct."); ROA.4462 ("Q. Is cormorant nesting a health concern? A. No."). Unlike the egrets and herons, cormorants are not present in a sufficient quantity to cause a guano problem. ROA.4456 ("Q. And so is it accurate to state that the cormorants are not part of the City's concern with respect to health? A. Based on the number of cormorants that have been noticed in the area, that is correct."). In fact, the City allowed cormorants to nest in the Project

8

Area in 2022 after deterring the egrets and herons. ROA.4455 ("[W]e did stop bird deterrent activities in June of [2022], and other birds, black cormorants, did come in and nest.… It is possible to allow the later season cormorants to nest…."); ECF 120 at 16 (noting the City allowed cormorants to nest in the Project Area); ECF 179 at 16 (same); ECF 197 at 3 ("If early deterrence of herons and egrets successfully prevents nesting in the management area, the City can monitor nesting patterns and slow or cease deterrent activities later in the migration season, when the cormorants come….").

The City argues that sacred cormorants pose a public health risk without any legal or record support to rebut the pile of contrary record evidence from the City's own witnesses. "Mere speculation of harm does not constitute a compelling state interest." *Consol. Edison Co. of New York v. Pub. Serv. Comm'n of New York*, 447 U.S. 530, 543 (1980); *Fulton*, 593 U.S. at 542 ("speculation is insufficient to satisfy strict scrutiny"). And courts do not "simply defer to [the government's] determination." *Ramirez v. Collier*, 595 U.S. 411, 429 (2022).

The fact that the City has been deterring herons and egrets from the Project Area since February 2025 makes the guano issue even more speculative. *See* ECF 276 (lifting stay to allow deterrence against egrets and herons until migratory cormorants arrive). In the intervening months, those egrets and herons the City deterred from the Project Area will have established a rookery elsewhere. They will not abandon those nests to relocate to the Project Area mid-season because when migratory birds find "a suitable nesting site … they remain on that territory for the entire breeding season." DAVID

ALLEN SIBLEY, WHAT IT'S LIKE TO BE A BIRD at xxv (2020); ECF 120 at 58–59 (noting the City ceased bird deterrence to allow cormorants to nest and yet the problematic species—egrets and herons—did not move back to the Project Area); ROA.4494 (stating the egrets and herons did not migrate to the Project Area when the City ceased bird deterrence and let cormorants nest); ROA.4501 (stating cormorants did not leave their nests outside the Project Area to move to the Project Area). The City's mere speculation, not based on any evidence, is that those already-deterred birds will leave their nests to relocate to the Project Area. And for the cormorant birds that are about to arrive, the City has provided zero evidence that they are so numerous as to create a guano problem.

## IV.   The Court Should Not Credit the City's Inconsistent Positions.

The City's current position on the size and location of the deterrence area is inconsistent with the district-court record and its earlier position before this Court. At the preliminary injunction hearing that forms the basis of this appeal, the City introduced the below excerpted map as Defendant's Exhibit 31 to show the geographical extent of its planned deterrence efforts. ROA.2654.



**Figure 1:** ROA.2654 (depicting three fenced areas for 2023).

In this exhibit, the northernmost red crosshatched area covers the Project Area, the triangle covers the playground, and the southernmost area covers the staging area for bird deterrence. ROA.4736. During that hearing, the City's witnesses testified that it would only conduct bird deterrence in the identified Project Area, which notably did *not* include immediately adjacent areas that were accessible to the general public.

11

ROA.4734–36 (stating the City conducted bird deterrence only in the Project Area); ROA.587 ¶ 156 ("The bird deterrence program prevents only active nesting by migratory birds in the Project Area."); ECF 120 at 54 ("The program affects only nesting in the trees within the Project Area.").

At the time, Plaintiffs argued that the City's selective application of its bird deterrence measures (i.e., deterring birds in the Project Area but *not* in other nearby public areas) showed that the City lacked a compelling interest because it left "appreciable damage to that supposedly vital interest unprohibited." ECF 215 at 7 (quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 547 (1993)).

Now, in its motions on appeal last year and this year to lift the stay, the City has altered its position and asks this Court to permit bird deterrence in a number of the publicly accessible areas located close to the Project Area in an attempt, presumably, to cure the City's under-inclusivity problems that Plaintiffs previously pointed out. To be clear, these publicly accessible areas that are outside the Project Area—outlined in red and labeled as "Wildlife Management Area"—were *not* previously included in the bird deterrence zone when this case was appealed. *See* Ex. A, 2025.04.11 email from Natalie Wilson (attaching COSA 3154–56, with COSA 3156 excerpted below).



**Figure 2:** Attachment to Ex. A, 2025.04.11 email from Natalie Wilson and first produced to Plaintiffs on April 11, 2025, as COSA 3156.

The City's shifting briefing position on how large the deterrence area needs to be to support its public health interests only confirms that cormorant deterrence has *never* really been about public health concerns. Instead, it has always been about the City's preferred construction schedule. *See, e.g.*, ROA.4186 (bird deterrence is "so that [the City] can get on with construction"); ROA.4462 ("Cormorant nesting would mean the project could not go on. So the project -- there could not be nesting -- can't be nesting in the trees in the Project Area for the project to be able to start construction.").

This Court should not credit the City when it now shifts its position to claim a public health concern associated with cormorants that the City's own witnesses repeatedly and expressly disclaimed in their district-court testimony. The "[g]overnment 'justification[s]' for interfering with First Amendment rights 'must be genuine, not hypothesized or invented *post hoc* in response to litigation." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 n.8 (2022) (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)).

The Court should deny the City's Motion and maintain the stay to allow this Court to decide this case on the merits, especially in light of the City's shifting positions on appeal.

## V.   There Is No Record Evidence That Bird Deterrence Elsewhere Will Funnel Migratory Birds to the Two-Acre Project Area.

The City also argues that alleged nearby bird deterrence efforts by the Episcopal Diocese of West Texas and the San Antonio Zoo will funnel migratory birds into the 1.7 acres of the Project Area unless the City can deter sacred cormorants. ECF 282 at 7. This is a brand new argument. The record does not include any evidence of bird deterrence efforts by the Episcopal Diocese of West Texas, nor does the City cite to the record (or any other source, for that matter) in support of its argument. Nor is there any evidence in the record regarding how bird deterrence in these two other locations would funnel migratory birds specifically to the Project Area. But it is the *government's* burden to come forward with specific evidence justifying its burden on religion. *Merced*, 577 F.3d at 591; Tex. Civ. Prac. & Rem. Code § 110.003(b).

This Court generally does not consider evidence not in the record. *Day v. Wells Fargo Bank Nat. Ass'n*, 768 F.3d 435, 436 (5th Cir. 2014). This is with good reason. Such unsupported statements should not be the basis for impairing constitutional and statutory rights to religious exercise.

## CONCLUSION

The City does not need to deter cormorants to complete construction. It does not need to deter cormorants to protect public health. It has no basis for saying that it must deter cormorants to prevent other birds from nesting in the Project Area at this time in the season. And its inconsistent positions in this appeal reveal the lack of real substance. At bottom, the City seeks to deter cormorants to begin construction on the Bond Project on its preferred timeline—a timeline crafted without consideration of whether and how to accommodate Plaintiffs' religious exercise.

The City faces little to no harm from waiting for this Court to decide Plaintiffs' appeal, while Plaintiffs face certain and irreparable harm to their religious exercise if the City is permitted to deter sacred cormorants that are necessary components of religious ceremonies.

This Court should preserve the status quo to protect this Court's jurisdiction and deny the City's motion to lift the stay with respect to cormorants. In the alternative, this Court should grant Plaintiffs' motion for injunction pending appeal.

April 21, 2025

Respectfully submitted,

/s/ John Greil

Mark W. Rasmussen
Margaret I. Lyle
Chance McCraw
Timothy M. Villari
JONES DAY
2727 N. Harwood St.
Dallas, Texas 75201
214-220-3939
mrasmussen@jonesday.com
milyle@jonesday.com
cmccraw@jonesday.com
tvillari@jonesday.com

John Greil
Steven T. Collis
LAW AND RELIGION CLINIC
UNIVERSITY OF TEXAS SCHOOL OF LAW
727 East Dean Keeton St.
Austin, Texas 78705
(512)-471-5151
john.greil@law.utexas.edu
Steven.collis@law.utexas.edu

*Counsel for Plaintiffs*

*Counsel for Plaintiffs*

16

**CERTIFICATE OF SERVICE**

I certify that on April 21, 2025, the foregoing motion was electronically filed with the United States Court of Appeals for the Fifth Circuit using the CM/ECF system, and that all parties required to be served have been served. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; and (2) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

/s/ Chance B. McCraw
Chance B. McCraw
*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,569 words, excluding parts exempted by Rule 27(a)(2)(B); and (2) the typeface and type style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface (14-point Garamond text, 12-point Garamond footnote) using Microsoft Word (the program used for the word count).

Dated:  April 21, 2025

*/s/ Chance B. McCraw*
Chance B. McCraw
*Counsel for Plaintiffs*