Case No. 23-50746
_____

In The United States Court of Appeals
for the Fifth Circuit
_____

Gary Perez; Matilde Torres,
*Plaintiffs–Appellants/Cross-Appellees*

v.

City of San Antonio,
*Defendant–Appellee/Cross-Appellant*
_____

# REPLY IN SUPPORT OF MOTION FOR RELIEF FROM TEMPORARY ADMINISTRATIVE STAY

Plaintiffs' response attempts to flip the burden of proof on Plaintiffs' request for an injunction regarding bird deterrence (which was denied below, ROA.984, and not granted by this Court, Dkt. No. 74). Plaintiffs also misstate important factual issues. This reply clarifies the applicable legal standard and corrects the record.

## I. Plaintiffs try to evade their burden of proof to show entitlement to injunctive relief by ignoring the applicable standard of review.

This is an appeal from the district court's denial of preliminary injunctive relief. Plaintiffs initiated this lawsuit by requesting a "preliminary and permanent injunction enjoining the City from implementing the Bond Project or otherwise engaging in 'bird deterrence' within the Park in a way that violates Plaintiffs' religious rights." ROA.72. After a four-day hearing, the district court denied

4920-2992-4921

Plaintiffs' requested preliminary injunction, ROA.984, and denied Plaintiffs' request for an injunction pending appeal, ROA.1155. Plaintiffs appealed.

A motions panel of this Court ordered that Plaintiffs' request for an injunction pending appeal be carried with the case, expedited the appeal from the denial of preliminary injunctive relief, and issued a "temporary administrative stay" pending further orders of this Court. Dkt. No. 74.

A divided panel affirmed the district court's denial of Plaintiffs' requested preliminary injunction and held that Plaintiffs "are not entitled to an injunction pending appeal." *Perez v. City of San Antonio*, 98 F.4th 586, 614 (5th Cir. 2024), *opinion withdrawn and superseded on reh'g*, 115 F.4th 422 (5th Cir. 2024). On rehearing, the panel withdrew its opinion in conjunction with certifying a question to the Supreme Court of Texas. That certified question remains pending. Meanwhile, this Court has indicated that its October 2023 "temporary administrative stay," Dkt. No. 74, remains in effect today—more than 18 months after its entry.

In this appeal from an order denying a preliminary injunction, the applicable legal standard is well-settled and highly deferential: "We review a preliminary injunction for abuse of discretion, reviewing findings of fact for clear error and conclusions of law de novo.*" Perez*, 98 F.4th at 594 (quoting *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022)). The burden lies with "the movant"—here, Plaintiffs—to demonstrate entitlement to the "extraordinary

remedy" of a preliminary injunction. *Id.* Plaintiffs must show (1) likelihood of success on the merits; (2) irreparable injury absent injunctive relief; (3) the threatened injury outweighs any harm to the City if the injunction is granted; and (4) the injunction will not disserve the public interest. *Id.*

Plaintiffs make no effort to meet that standard in their response. Instead, Plaintiffs try to flip the burden to the City notwithstanding that the district court denied their requested injunction and they have never been granted an injunction pending appeal. Plaintiffs suggest that the Court should leave the October 2023 temporary administrative stay in place to "prevent[]"—*i.e.*, enjoin—the City from conducting rookery management operations because, in Plaintiffs' view, "the City has not shown any actual need for more relief." Resp. at 6. That framing betrays Plaintiffs' inability to meet the applicable legal standard to justify such an injunction. And that is exactly the conclusion reached by every court to have considered the issue, including this Court.

Underlying Plaintiffs' effort to skirt the applicable standard of review is the "temporary administrative stay" entered more than 18 months ago. Plaintiffs' misuse of that stay would stretch this "short-term tool" beyond its purpose. *See United States v. Texas*, 144 S. Ct. 797, 798-99 (2024) (noting that an administrative stay "buys the court time to deliberate" and "permit[s] time for briefing and deliberation"). An administrative stay is meant as "a short-lived prelude to the main event: a ruling on

3

the motion for a stay pending appeal"—or, in this case, an injunction pending appeal. *Id.* at 798. Consideration of such a motion would, of course, entail whether Plaintiffs have met their burden to show entitlement to injunctive relief, which they have not done and have not attempted to do.

It should go without saying that temporary administrative stays are meant to be *temporary*. The Supreme Court expressed caution about an administrative stay that, at that point, had lasted for 17 days. *Id.* at 799 (concluding it would be "premature" to vacate the 17-day-old stay, but warning that "[t]he time may come, in this case or another, when this Court is forced to conclude that an administrative stay has effectively become a stay pending appeal and review it accordingly"). It bears repeating: The temporary administrative stay against the City has now operated effectively as an injunction pending appeal for more than *18 months*.

The temporary administrative stay has forced the City to seek partial relief with each migratory bird season to conduct rookery management and maintain the status quo. Dkt. No. 200; Dkt. No. 276-2. The City's current motion asked the Court to extend substantially the same relief. With each passing month—and with Plaintiffs wielding it as a means to shift the burden of proof—the temporary administrative stay looks more and more like the relief that the district court and this Court declined to award to Plaintiffs directly under the applicable legal standard.

Once the Supreme Court of Texas answers this Court's certified question, Plaintiffs will have another chance to argue the merits of their requested injunctive relief pending appeal. But Plaintiffs ask this Court to grant them that relief right now, Resp. at 7 n.1 & 16—and without even trying to carry their burden of proof to meet the applicable legal standard for such relief.

## II.   Plaintiffs misstate record facts.

Plaintiffs misrepresent four factual points that warrant correction: (1) the City's public health interest in deterring cormorants; (2) the City's ability to complete its construction project during a window of time when cormorants are not present; (3) the purported newness of the City's argument about bird deterrence on nearby land, including the San Antonio Zoo; and (4) the geographic area in which deterrence occurs.

1. Plaintiffs suggest that if cormorants do not *directly* cause the public health risk from noxious guano—herons and egrets do—the City can simply deter the problematic species and allow the cormorants nest in the area. Resp. at 8-10. But bird deterrence does not work like that. From the perspective of a bird-deterrence device—a spotlight, for example—there is no difference between an egret and a cormorant. A mylar balloon does not distinguish between bird species. Undisputed record testimony established that "there is not a way" to deter egrets and herons without deterring cormorants. ROA.4496; *see* ROA.4472-4474; ROA.4625 ("There

isn't a way."); ROA.4607 ("Q: Okay. In your experience as an urban wildlife biologist and your experience with the urban rookeries, is there a way to time bird deterrence efforts to deter egrets and herons from nesting in a site but not deter double crested cormorants? A: No.").

Plaintiffs then ask whether the City could stop deterring birds now because herons and egrets that have already nested may not relocate to the Project Area. But it is unlikely that all the herons and egrets have already arrived; in fact, there are often late arrivers among those species.[1] Either way, there is simply no evidence to support a conclusion that herons and egrets have finished migrating for this year. And, in any event, motions regarding relief from the temporary administrative stay are not the place to relitigate this issue. After hearing from many experts, the district court denied Plaintiffs' request to enjoin the rookery management program. To correct any error in that ruling would require Plaintiffs to meet their burden of proof on appeal—which they have not even attempted to do.

2. Plaintiffs insist that the City could complete the construction project within a seven-month window without deterring cormorants. Resp. at 8. Again, after a four-day hearing, the district court reached the opposite conclusion: allowing the

---

[1] Record evidence from the temporary injunction hearing described when the different bird species arrive in the area, which was "[t]ypically April/May time frame for the cattle egrets." ROA.4607. The "typical" timetable for egrets is thus still ongoing. But in addition, there was also testimony regarding the unpredictability of when birds arrive, and the precise timing of their migration can be affected by issues like weather. ROA.4497-98. There is thus no "hard stop" when egrets and herons stop arriving, and certainly no evidence that they have stopped arriving this year.

6

cormorants to nest would "effectively put the Project on hold ad infinitum, given the different species' migration patterns and the Migratory Bird Treaty Act. *There could not be an eight-month window of opportunity to accomplish the Project*."[2] Plaintiffs cite a contractor's project proposal from May 2023, which estimated that the project could be done in six months "barring any weather delays or unforeseen conditions." ROA.289. The City's own estimates were more conservative, and the district court credited those estimates in denying Plaintiffs' requested injunction.

3. Plaintiffs claim that the City's argument regarding bird deterrence at the San Antonio Zoo and the Episcopal Diocese of West Texas is a "brand new argument." Resp. at 15. To the contrary, the City raised the same issue last year in requesting relief from the temporary administrative stay. Dkt. No. 187 (filed 02/19/2024).

4. Plaintiffs claim that the City has "altered its position" with respect to the geographic area impacted by bird deterrence measures. Resp. at 12. Not so. From the beginning, the City has been forthright about the fact that the deterrence area, also known as the Wildlife Management Area, "is larger than the Project Area." ROA.4462. At the Preliminary Injunction Hearing, Bill Pennell, the City's Assistant Capital Programs Manager, explained: "There's a bird deterrent area which is larger

---

[2] *Perez v. City of San Antonio*, No. SA-23-CV-977-FB, 2023 WL 6629823, at *2 (W.D. Tex. Oct. 11, 2023) (emphasis added).

7

than the Project Area. It goes all the way to Tuleta [S]treet. And so there's a different area of deterrence than just the Project Area. We're defending all the picnic pads, the playground, the pavilion area, the restroom area, all the places where people would congregate, use. That's—that's the safety issue." *Id*.

Plaintiffs' citations to the contrary are misleading. *See* Resp. at 12-14. Plaintiffs point to the City's Proposed Findings of Fact at the Preliminary Injunction Hearing, ROA.58, quoting an isolated sentence: "The bird deterrence program prevents only active nesting by migratory birds in the Project Area." Plaintiffs omit the very next sentence, which provides context for the first: "It [the bird deterrence program] does not prohibit or prevent them from visiting, foraging in, or flying through the Project Area." As the second sentence makes clear, the first sentence was a statement about *active nesting* in the Project Area, as opposed to fly-bys, visits, or foraging; it did not purport to define geographic limits of the deterrence program.

Plaintiffs then point to the City's first merits brief to this Court. Dkt. No. 120. The City wrote in its brief: "The program affects only *nesting* in the trees within the Project Area." (emphasis in original). Plaintiffs' Response quotes this sentence without context, and also removes the italics, without signaling this to the Court. The previous sentence in the City's brief explained that the City did not deter birds from landing in trees or foraging in the Project Area—only from "*nesting*", as stated

8

in the quoted sentence. This pair of sentences was about nesting, not the geographic area.[3]

Ultimately, this is all beside the point. Since 2022, the City has engaged in rookery management activities in an area of the Park that is larger than, and encompasses, the Project Area. The City's prior requests for relief from the administrative stay made this clear as well. Plaintiffs suggest that the City is trying to change its position "to cure" a purported "under-inclusivity problem[]" in that the City claimed the need to deter birds from the Project Area but not the immediate surrounds. Resp. at 12. But even assuming that the district court misunderstood the geographic distinctions—and there is no evidence for that—the court *still* ruled against Plaintiffs. And the City in fact *is* deterring birds in the broader surrounding area, as it has from the start.

## Conclusion

The Court should grant the City's motion for relief from the temporary administrative stay as to rookery management activities. Relief is warranted given the imminent arrival of migrating cormorants whose presence in the area will contribute to public health issues and delay construction of the Project. Denying the

---

[3] Admittedly, the City's brief also stated, "In January 2022, the City began its rookery management program within the two-acre Project Area to prevent migratory birds from nesting there. Nesting was not disturbed elsewhere in the Park." *Id.* at 54. The terminology of "Project Area," "Sacred Area," "Deterrence Area," "Wildlife Management Area," and so on, can be confusing, and the brief could have been clearer on these distinctions. But the fact remains that the City has never tried to hide from the fact that the deterrence area "is larger than the Project Area." ROA.4462.

motion would grant Plaintiffs injunctive relief for which they have not even attempted to carry their burden—a burden they could not meet if they had tried.

          Respectfully submitted,

          Scott Douglass & McConnico LLP
          303 Colorado Street, Suite 2400
          Austin, Texas 78701
          (512) 495-6300 Tel
          (512) 495-6399 Fax

By: _/s/ Jane M.N. Webre_
    Jane M.N. Webre
      State Bar No. 21050060
      jwebre@scottdoug.com
      Eli Barrish
      State Bar No. 24144433
      ebarrish@scottdoug.com

      - and -

Langley & Banack, Inc.

Fred R. Jones
State Bar No. 10886700
fjones@langleybanack.com
Natalie F. Wilson
State Bar No. 24076779
nwilson@langleybanack.com
Ian M. McLin
State Bar No. 24005071
imclin@langleybanack.com
Lee Warren
State Bar No. 24099453
lwarren@langleybanack.com
Sara Murray
State Bar No. 14729400

10

smurray@langleybanack.com
745 East Mulberry, Suite 700
San Antonio, TX 78212-3166
Telephone: (210) 736-6600
Facsimile: 210) 736-6889

-and -

CITY OF SAN ANTONIO
DEBORAH KLEIN
Deputy City Attorney
State Bar No. 11556750
Deborah.Klein@sanantonio.gov
International Center
203 S. St. Mary's Street,
2nd Floor
San Antonio, TX 78205
Telephone: (210) 207-8949
Facsimile: (210) 207-4004

COUNSEL FOR CITY OF SAN ANTONIO

CERTIFICATE OF SERVICE

I certify that the foregoing pleading was served on all counsel of record by electronic filing on April 24, 2025.

_____
Jane Webre