CASE NO. 23-50746

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

GARY PEREZ; MATILDE TORRES,
*Plaintiffs–Appellants/Cross-Appellees*

v.

CITY OF SAN ANTONIO,
*Defendant–Appellee/Cross-Appellant*

_____

# RESPONSE IN OPPOSITION TO
# PETITION FOR REHEARING EN BANC

_____

| | |
|---|---|
| Fred R. Jones<br>fjones@langleybanack.com<br>Natalie Friend Wilson<br>nwilson@langleybanack.com<br>Ian McLin<br>imclin@langleybanack.com<br>Lee Brinson Warren<br>lwarren@langleybanack.com<br>Sara Murray<br>smurray@langleybanack.com<br>LANGLEY & BANACK, INC.<br>745 East Mulberry, Suite 700<br>San Antonio, TX 78212<br>Telephone: (210) 736-6600 | Jane Webre<br>jwebre@scottdoug.com<br>Elijah Barrish<br>ebarrish@scottdoug.com<br>SCOTT DOUGLASS &<br>    MCCONNICO LLP<br>303 Colorado Street, Suite 2400<br>Austin, TX 78701<br>Telephone: (512) 495-6300<br><br>City of San Antonio<br>Deborah Klein<br>Deputy City Attorney<br>deborah.klein@sanantonio.gov<br>International Center<br>203 South St. Mary's Street<br>Second Floor<br>San Antonio, TX 78205<br>Telephone: (210) 207-8949 |

COUNSEL FOR THE CITY OF SAN ANTONIO

CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.      Plaintiffs-Appellants: Gary Perez and Matilde Torres

        Counsel for Plaintiffs-Appellants:

        Mark W. Rasmussen
        mrasmussen@jonesday.com
        Margaret I. Lyle
        milyle@jonesday.com
        Chance McCraw
        cmccraw@jonesday.com
        Timothy M. Villari
        tvillari@jonesday.com
        JONES DAY
        2727 N. Harwood Street
        Dallas, TX 75201.1515
        Telephone: (214) 220-3939

        John Greil
        john.greil@law.utexas.edu
        Steven T. Collis
        steve.collis@law.utexas.edu
        LAW AND RELIGION CLINIC
        UNIVERSITY OF TEXAS SCHOOL OF LAW
        727 East Dean Keaton Street
        Austin, TX 78705
        Telephone: (512) 471-5151

2.      Defendant-Appellee: the City of San Antonio

        Appellate Counsel for the City of San Antonio:

4936-7865-4821

Jane Webre
jwebre@scottdoug.com
Elijah Barrish
ebarrish@scottdoug.com
SCOTT DOUGLASS & MCCONNICO LLP
Colorado Tower
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300

Trial and Appellate Counsel for the City of San Antonio:

Fred R. Jones
fjones@langleybanack.com
Natalie Friend Wilson
nwilson@langleybanack.com
Ian McLin
imclin@langleybanack.com
Lee Brinson Warren
lwarren@langleybanack.com
Sara Murray
smurray@langleybanack.com
LANGLEY & BANACK, INC.
745 East Mulberry, Suite 700
San Antonio, TX 78212
Telephone: (210) 736-6600

City of San Antonio
Deborah Klein
Deputy City Attorney
deborah.klein@sanantonio.gov
International Center
203 South St. Mary's Street,
Second Floor
San Antonio, TX 78205
Telephone: (210) 207-8949

September 8, 2025

_Jane Webre_

<u>RESPONSE TO STATEMENT OF EN BANC REASONS</u>

Rehearing en banc is "an 'extraordinary procedure' that should be used only to bring the court's attention to an issue of 'exceptional public importance' or one that 'directly conflicts' with on-point Supreme Court or prior Fifth Circuit precedent." *Johnson v. Lumpkin*, 76 F.4th 1037, 1039 (5th Cir. 2023) (quoting 5th Cir. R. 40 I.O.P.). Appellants' petition, despite mischaracterizing the record and the panel opinion, comes nowhere near that high bar. The panel opinion did not break new ground. It applied settled law to the facts the district court found after a four-day injunction hearing.

Appellants' real beef is with the district court's analysis of factual testimony regarding the dire state of the public park, the City's proposed remediation work, and the lack of viable alternative approaches. But claimed errors "in the facts of the case...or error asserted in the misapplication of correct precedent to the facts of the case," do not warrant en banc review. *Gonzalez v. S. Pac. Transp. Co.*, 773 F.2d 637, 641 (5th Cir. 1985).

Appellants do not present any legal issues meeting the "extraordinary" standard for en banc review. This case has already received a panel rehearing (with no change in result), and Appellants previously requested rehearing en banc (denied as moot). The Court should deny this petition as well. Appellants' bare disagreements with the factfinder are not the proper subject for en banc consideration.

4936-7865-4821

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

RESPONSE TO STATEMENT OF EN BANC REASONS ................................. iv

TABLE OF AUTHORITIES .................................................................... vi

STATEMENT OF THE ISSUES........................................................................1

STATEMENT OF THE COURSE OF PROCEEDING AND DISPOSITION ........1

STATEMENT OF RELEVANT FACTS ...........................................................3

    A.    Hazards from crumbling walls in Brackenridge Park ...........................3

    B.    Hazards from migratory birds .................................................5

    C.    City project to address hazards at Lambert Beach ................................7

ARGUMENT .......................................................................................11

    A.    The opinion's substantial-burden analysis does not warrant en banc review.......................................................................11

    B.    The opinion did not implicate a circuit split regarding substantial burden. .......................................................................15

    C.    The panel did not discount Appellants' perspective. ...........................17

    D.    The panel did not create a new doctrine regarding alternatives..........19

CONCLUSION .....................................................................................20

CERTIFICATE OF COMPLIANCE....................................................................22

CERTIFICATE OF SERVICE ...........................................................................23

4936-7865-4821

## TABLE OF AUTHORITIES

**Cases**

*A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*,
611 F.3d 248 (5th Cir. 2010) ............................................................. 13, 14, 15

*Apache Stronghold v. United States*,
101 F.4th 1036 (9th Cir. 2024) (en banc), *cert. denied*,
145 S.Ct. 1480 (2025) ...................................................................................16

*Barr v. City of Sinton*,
295 S.W.3d 287 (Tex. 2009) ................................................... 12, 13, 15, 18

*Bowen v. Roy*,
476 U.S. 693 (1986) ......................................................................................18

*DeMarco v. Davis*,
914 F.3d 383 (5th Cir. 2019) .......................................................................15

*Gonzalez v. S. Pac. Transp. Co.*,
773 F.2d 637 (5th Cir. 1985) ..................................................................... iv

*Hernandez v. C.I.R.*,
490 U.S. 680 (1989) ......................................................................................18

*Johnson v. Lumpkin*,
76 F.4th 1037 (5th Cir. 2023) .................................................................... iv

*Kaemmerling v. Lappin*,
553 F.3d 669 (D.C. Cir. 2008) ....................................................................18

*Lyng v. Northwest Indian Cemetery Protective Assoc.*,
485 U.S. 439 (1988) ......................................................................................16

*Merced v. Kasson*,
577 F.3d 578 (5th Cir. 2009) ............................................................ 13, 15, 17

*Perez v. City of San Antonio*,
715 S.W.3d 709 (Tex. 2025) .................................................................. 3, 16

**Statutes**

5th Cir. R. 40 I.O.P. ........................................................................ iv, 15

Tex. Civ. Prac. & Rem. Code §110.001(a)(1) ......................................17

Tex. Civ. Prac. & Rem. Code §110.003(a)..........................................11

Tex. Civ. Prac. & Rem. Code §110.003(b)..........................................12

4936-7865-4821

STATEMENT OF THE ISSUES

Whether the panel opinion presents a question of exceptional importance or conflicts with any decision by the Supreme Court or this Court regarding any element of Appellants' free exercise claims.

STATEMENT OF THE COURSE OF PROCEEDING AND DISPOSITION

Appellants allege free exercise claims relating to a project to rehabilitate a decrepit corner of Brackenridge Park on a bend in the San Antonio River. ROA.13-42. The project calls for "restorative construction" to the northern riverbank, across the river from a spot Appellants consider sacred—namely, a "20-foot-by-30-foot rectangular plot" comprising a cement slab "between two bald cypress trees" on the southern riverbank (the "Sacred Area"):



ROA.736-39 (Sacred Area viewed from the north).

Appellants allege their religion requires performing ceremonies at the riverbank. The Sacred Area provides "access to the steps on the southern bank." ROA.4244. Appellants incorporate the riverfront into their ceremonies.

Appellants requested that the City reconfigure safety fencing to provide access to the Sacred Area, and also sought to enjoin the City from (a) removing or relocating trees whose root systems destabilized the north-bank retaining wall; and (b) continuing a rookery management program to deter migratory birds whose guano endangers public health and whose nesting would interfere with the planned repairs. ROA.13-42.

After an evidentiary hearing, the district court ordered the City to grant Appellants access to the Sacred Area and remove a dangerous broken tree limb. ROA.736. The court denied injunctive relief as to the trees and rookery management. ROA.984. The City removed the limb and reconfigured the fencing to allow Appellants and the public unfettered access to the Sacred Area.

Appellants appealed. In the first panel opinion, all panel members agreed that any dispute regarding access to the Sacred Area was moot. A divided panel affirmed the denial of injunctive relief as to trees and birds. Appellants sought panel rehearing and rehearing en banc. Without ruling on the motions, the panel certified a question to the Supreme Court of Texas regarding a provision of the Texas Constitution that forbids a government from adopting any rule that "prohibits or limits religious services."

The Supreme Court of Texas held that the provision "does not extend to governmental actions for the preservation and management of public lands." *Perez v. City of San Antonio*, 715 S.W.3d 709, 730 (Tex. 2025). It determined that the "City's decision to remove and replace trees and deter migratory birds in a popular City park does not purport to prohibit the Church from gathering or regulate what the Church may do when it gathers. Instead, at most, it eliminates or reduces natural elements of *the City's* real property that the Church believes are necessary components of its religious services." *Id*. at 728 (court's emphasis).

The case returned to the panel. All panel members again agreed that the access issue was moot, and the divided panel again affirmed the denial of injunctive relief as to trees and birds.

## STATEMENT OF RELEVANT FACTS

### A.    Hazards from crumbling walls in Brackenridge Park

Brackenridge Park is a large urban park on the San Antonio River. In the early 1900s Lambert Beach was constructed at a bend in the river. ROA.3100. The north-bank retaining walls have fallen into disrepair, in part due to encroaching trees and their root systems. ROA.4309. The crumbling walls present a safety hazard. ROA.558. Portions have failed, and others are at risk of failing:





ROA.2342; ROA.2269.

4936-7865-4821

If the walls are not rehabilitated, they will inevitably fail, and trees lining the bank will fall. ROA.4805-4806.

B.     Hazards from migratory birds

The Park is seasonal home to migratory birds, including egrets, herons, and cormorants. The birds typically develop a rookery (a large colony of breeding birds) around Lambert Beach. ROA.2379. The river there has elevated E.coli levels because of the birds' fecal bacteria. ROA.2381-2382. Picnic areas and playgrounds become "covered in bird feces." ROA.4478-4479. The rookery and its associated hazards are extensive:







ROA.2386; ROA.2399; ROA.2390; ROA.2393.

The rookery presents health and safety issues, particularly to children, because

of the significant amount of guano near playgrounds and other areas where children

play. ROA.2267; ROA.2426 ("When rookeries establish near playgrounds,…the risk of zoonotic disease transmission…increases."); ROA.1022-1023, FOF.71-76.

To address the health threat, the City and the Texas Parks & Wildlife Department developed a rookery management program "to deter birds from an undesired location and encourage them to go to an area where they would be more desirable." ROA.4604; ROA.2425-2440. The program includes trimming trees and brush to reduce nesting habitat and deterrent techniques including pyrotechnics and spotlights. ROA.2382. These measures "do not harm the birds or keep them from reproducing." ROA.2426. They just encourage the birds to nest elsewhere.

Rookery management began in 2022 and successfully deterred birds from nesting near Lambert Beach. ROA.4494. Cormorants sacred to Appellants still regularly visit the area: "They come in and hang out, you see them in the morning, they come in through the day. They'll come in the trees and then they'll go down in the water and then they'll fly back to their nesting area." ROA.4501.

C.    City project to address hazards at Lambert Beach

After voters approved bonds for repairs to the Park, the City fenced off a two-acre area ("Project Area") for the first phase. ROA.599; ROA.619-42. The Sacred Area sits within the Project Area, but it remains accessible.

The project includes repairing north-bank retaining walls across the river from the Sacred Area. ROA.644; ROA.2249. That will entail removing some trees on the

north bank and relocating others that are close to the river. "[T]here will be no construction" within the Sacred Area on the south bank. ROA.4351-4352.

Work will also address dead and dying trees in the Project Area that are dangerous to the public. In 2023 a large limb fell onto a sidewalk at the nearby San Antonio Zoo, allegedly injuring seven people and resulting in a lawsuit, ROA.566; ROA.1020 FOF.63, and a cedar elm failed and a large portion fell into the river near the Sacred Area:



ROA.2355-69; ROA.1021 FOF.61 ("There is no dispute that failing walls present a significant danger to any member of the public who is visiting the Park.").

The record contradicts the Petition's assertion that the City is "proposing to destroy the Sacred Area altogether." Petition.9. Again, *"there will be no construction" within the Sacred Area*. ROA.4351-4352. Moreover, Appellants "do not dispute that the retaining walls" on the opposite bank "need to be repaired or rehabilitated," and some trees will be removed in that process. ROA.1019 FOF.52. Appellant Perez testified that his religious beliefs do not "dictate that a certain number of trees" or "certain species of tree must be present" for Appellants to worship. ROA.4111; ROA.1016 FOF.30-31. He explained that invasive species like chinaberry are not considered sacred, and "removal of invasive species" would not "create a substantial burden on [his] religious practice." ROA.4112. Perez could not identify which trees in the area are "generated from existing trees" and thus considered sacred:

```
 1  Q.  So they're only sacred if they generate -- are generated
 2  from the existing trees?
 3  A.  Yes, ma'am.
 4  Q.  Okay.  So would it be your position and your religious
 5  belief that new trees planted by humans are less sacred or not
 6  sacred at all?
 7  A.  Not sacred.
 8  Q.  Of the 83 trees in the Project Area are you able to tell
 9  the Court which were planted by humans and which grew there
10  naturally?
11  A.  I am not able to do that, ma'am.
```

9

ROA.4114.

Perez stated that he hopes that "as many trees as possible" are preserved. ROA.4147. The evidence demonstrated that the City strove to do just that. It consulted arborists and engineers; held hearings to consider public input; and adjusted plans in an effort to save the greatest number of trees. ROA.3096-3099. Contrary to Appellants' representations, the City incorporated Appellants' input and modified plans based on that input:

> Q. Do you recall receiving any input during these meetings from either of the [Appellants]?
>
> A. Yes. Yes, I did.
>
> Q. And the City took that input?
>
> A. We did.
>
> Q. And did the City give it consideration in the implementation of the design and construction plan?
>
> A. Yes, we did.
>
> Q. Were any of the plans modified based on any of the public feedback?
>
> A. They were.
>
> Q. What was modified?
>
> A. The amount of trees to be destroyed was modified. There's a lot of detail in there. But, yes.

ROA.4406; *see* ROA.2263-2266 ("In response to public input, the project has been updated to preserve 35 additional trees."); ROA.1018-1019, FOF.48-49 ("The City

held a number of public meetings to receive community input…[Appellants] participated in some of these meetings and submitted public comments….The City took these comments, including [Appellants'] under consideration and evaluated whether more trees could be preserved…."). When Appellants allege, again and again, that the City did not consider their beliefs, that is simply false.

Appellants tout pier-and-spandrel as an alternative engineering method for retaining-wall repair. The City worked "to really look at the alternatives and to figure out whether or not what was being proposed was the best solution moving forward, that we were saving as many trees as possible." ROA.4662. The City analyzed pier-and-spandrel, but the "consensus…was that no additional trees would be saved because they would still be impacted by the construction regardless of the methodology." ROA.4663. For example, excavation for pier-and-spandrel needs "support so that the soil doesn't collapse on the worker." ROA.4308. Technical factors weighed against pier-and-spandrel and necessitated the City's selection of the "cantilever" method of repair.

ARGUMENT

A.    The opinion's substantial-burden analysis does not warrant en banc review.

Under the Texas Religious Freedom Restoration Act ("TRFRA"), the government cannot "substantially burden a person's free exercise of religion." Tex. Civ. Prac. & Rem. Code §110.003(a). That provision does not apply if "the government agency demonstrates that the application of the burden to the person" is

4936-7865-4821

"in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that interest." §110.003(b). Appellants contend that the panel's analysis of *each element* of TRFRA presents an error of such magnitude as to warrant en banc rehearing. In fact, nothing warrants en banc rehearing, starting with substantial burden.

Procedurally, the panel noted that Appellants raised substantial burden for the first time in reply. Op.13 n.7, 15 ("Appellants did not even address this issue in their principal brief"). Indeed, the original panel opinion found that Appellants forfeited this issue by failing to brief it. Nonetheless, the panel undertook to address the issue.

On the merits, the panel did not depart from "well-established, binding legal precedent" or hold, as Appellants claim, that the City's remediation plan does not impose a substantial burden simply "because it 'only indirectly impacts Appellants' religious conduct.'" Petition.5. To the contrary, the panel recited and followed the correct applicable standards for analyzing substantial burden under TRFRA.

The panel articulated the test announced by the Supreme Court of Texas for TRFRA claims: "the correct standard for evaluating substantial burden is…whether the burden is 'real' and 'significant.'" Op.14 (quoting *Barr v. City of Sinton*, 295 S.W.3d 287, 301 (Tex. 2009)). It correctly explained that a burden is substantial if it is "'real vs. merely perceived, and significant vs. trivial'—two limitations that 'leave a broad range of things covered.'" *Id*. (quoting *Barr*). It correctly explained the focus of the inquiry is on "the degree to which a person's religious conduct is curtailed and

the resulting impact on his religious expression," as "measured...from the person's perspective, not from the government's." *Id*. (quoting *Barr*). The panel explained that this inquiry "is 'case-by-case' and 'fact-specific' and must consider 'individual circumstances.'" *Id*. (quoting *Merced v. Kasson*, 577 F.3d 578, 588 (5th Cir. 2009); *Barr*, 295 S.W.3d at 302, 308). In sum, the panel did not depart from the settled substantial burden framework but rather recited and followed the controlling cases.

Relying on a selective quotation, Appellants assert that the panel applied an incorrect standard by holding that "incidental" burdens on religious practice do not violate TRFRA. Petition.5. The panel did not hold this, and in fact it clarified the exact opposite: "*While we do not suggest that directness is dispositive*, we note that here, the City's development plan only indirectly impacts Appellants' religious conduct and expression." Op.15 (emphasis added).

The panel weighed the "directness" of the burden as a factor that can contribute to the burden's substantiality, following *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248 (5th Cir. 2010). In that case, the Court held that, because a school district's grooming policy would "directly regulate a part of [a religious student's] body[,]...the burden on [his] religious expression is arguably even more intrusive." *Id.* at 265-66. The Court noted that the policy would also "indirectly burden" the student because, if he complied, "he [would] stand out as someone subject to official stigma," and if he did not comply, "he [would] be exposed to punishment." *Id.* at 266. The term "direct" signified the proximate,

unmediated nature of the policy—a *direct* regulation on conduct—which made the policy more intrusive, controlling, and burdensome. "Indirect" burdens—for instance, policies creating incentives for certain behaviors—can also be substantial, but when the causal chain is more removed, the coercive effect of the policy may be lessened.

Appellants misconstrue the panel opinion—and *Needville*. *Needville* uses "direct" and "indirect" in a different sense than the "targeted" vs. "incidental" dichotomy Appellants discuss. Petition.5-6. The panel correctly observed that because the project did not place a direct burden on Appellants—by, for instance, banning their religious ceremonies outright—it had a tangential, and therefore muted, effect, such that "Appellants continue to have virtually unlimited access to the Park for religious and cultural purposes." Op.7.

The opinion explained that "case-by-case" and "fact-specific" circumstances led it to conclude that the City's actions will not substantially burden Appellants' religious exercise, including that, "regardless of the rookery management program, no cormorants, due to their migration patterns, inhabit the area for extended periods of time each year." Op.15. Migration patterns, not the incidence of rookery management, mean that no cormorants are in the Project Area on December 21 during Appellants' winter solstice ceremonies. Indeed, the first panel opinion described the presence of cormorants as "a thing of chance." Dkt.209-1 p.40 n.37.

Rookery management is thus unlike governmental actions that remove objects necessary for religious practice, Petition.9, such as confiscating Bibles[1], cutting hair[2], or prohibiting ritual slaughter of animals[3] and thereby curtailing an individual's religious *conduct*. The panel did not depart from *Barr* or this Court's TRFRA precedent or articulate a contrary legal standard warranting en banc review. While Appellants disagree with the panel's application of law to the "fact-specific" record before it, "alleged errors in...the application of correct precedent to the facts of the case are generally matters for panel rehearing but not for rehearing en banc." 5th Cir. R. 40 I.O.P.

B.     <u>The opinion did not implicate a circuit split regarding substantial burden.</u>

Appellants argue that the panel entered "the wrong side of a circuit split" by holding that "preventing a religious exercise" is not a per se substantial burden. Petition.7. The panel did not even weigh in on this alleged split.

First, the panel's holding does not conclude that the City's actions would "prevent"—let alone "permanently destroy"—Appellants' ability to perform ceremonies. Petition.7-8. On the contrary, the panel observed that although "Appellants argue that the City's plan would destroy or alter natural resources of

---

[1] *DeMarco v. Davis*, 914 F.3d 383, 389 (5th Cir. 2019).

[2] *Needville*, 611 F.3d at 264-66.

[3] *Merced*, 577 F.3d at 587.

religious importance, they plainly failed to establish...that the burden is real and significant." Op.13. Moreover, the panel acknowledged that the City "granted public access to the entire area," and held that the access issue was moot. Op.9-11.

Second, the City's plan is a far cry from the facts of *Apache Stronghold*. In that case, the Ninth Circuit held that a plan to detonate explosives to collapse the sacred Oak Flat site and mine the copper ore beneath would not constitute a "substantial burden" because the site was on the government's own land. *Apache Stronghold v. United States*, 101 F.4th 1036, 1055 (9th Cir. 2024) (en banc), *cert. denied*, 145 S.Ct. 1480 (2025) (following *Lyng v. Northwest Indian Cemetery Protective Assoc.*, 485 U.S. 439 (1988)). The City's plan to remediate crumbling retaining walls while *minimizing impact on the surrounding area*, Op.26-29, 33, is simply not comparable.

Third, the panel did not cite *Apache Stronghold* or apply the Ninth Circuit's "public land" rule, nor did its decision turn on the fact that Brackenridge Park is City-owned public land. It instead evaluated substantial burden under the *Barr* framework. Op.14. To be clear, on the certified question, the Supreme Court of Texas held that the Texas Constitution's Religious Services Clause "does not extend to governmental actions for the preservation and management of public lands." *Perez*, 715 S.W.3d at 730. But that issue was not part of the panel opinion's substantial burden analysis.

C.    The panel did not discount Appellants' perspective.

The panel opinion does not second-guess Appellants' sincerely-held religious beliefs. On the contrary, it recognizes that the sincerity of Appellants' beliefs is undisputed: "Because the district court determined the existence of the Appellants' sincere religious beliefs and the City does not dispute this finding, our TRFRA analysis requires an assessment of whether the City's development plans substantially burden their sincere religious practices." Op.12-13.

Appellants suggest that the panel improperly made "theological judgments" when it noted that (a) the City's chosen means allow cormorants to nest near the Sacred Area and perch in and fly throughout the Sacred Area; (b) even without rookery management, no cormorants inhabit the area for extended periods of time; and (c) Appellants have "virtually unlimited" access to the entire Park. Petition.10. These factual statements do not contradict or undermine Appellants' sincerely-held beliefs. The panel did not "opine on theological matters," *Merced*, 577 F.3d at 590, or question whether any particular tenets were "central" to Appellants' religion, Tex. Civ. Prac. & Rem. Code §110.001(a)(1). Instead, it merely recited fact-findings by the district court, paying them judicially-mandated deference.

The fact-findings may be inconvenient to Appellants' legal position, but they do not second-guess Appellants' religious beliefs. There is a difference between critically assessing Appellants' religious beliefs (impermissible) and critically assessing Appellants' legal position (proper role of the court). Courts are capable of

evaluating the substantiality of a burden without questioning the substance of a religious beliefs. *See Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989) (although it "is not within the judicial ken to question the centrality of particular beliefs or practices to a faith," the court must determine "whether the alleged burden imposed by" the government "is a substantial one"); *Kaemmerling v. Lappin*, 553 F.3d 669, 679 (D.C. Cir. 2008) (court must "[a]ccept[] as true the factual allegations that [Appellants'] beliefs are sincere and of a religious nature—but not the legal conclusion, cast as a factual allegation, that [their] religious exercise is substantially burdened").

Appellants argue, and may sincerely believe, that the project would substantially burden their religious practice. But the substantiality of the burden is a legal question appropriately addressed to the courts. "[F]or the adjudication of a constitutional claim, the Constitution, rather than an individual's religion, must supply the frame of reference." *Bowen v. Roy*, 476 U.S. 693, 701 n.6 (1986).

*Barr* recognized this distinction. It noted that the "substantial burden" inquiry may not question "whether the person's [religious] conduct that is being burdened is compelled by or central to his religion," because that would impermissibly stray into theological matters. *Barr*, 295 S.W.3d at 301–02. But "[t]hese problems are avoided if the focus is on the degree to which a person's religious conduct is curtailed and the resulting impact on his religious expression." *Id*. The facts recited by the panel demonstrate that the project would not "curtail" Appellants' religious conduct. Appellants would still have access to the riverbank and can worship there in the

presence of cormorants. The project would not change the status quo that, because of migration patterns, birds are often absent from that location for extended periods.

D.     The panel did not create a new doctrine regarding alternatives.

Appellants assert that the panel adopted a "startling holding" that "governments on notice of a requested religious accommodation have no obligation to investigate possible accommodations." Petition.11-12. The Petition misrepresents both the opinion and the record and seeks to advance a false narrative that the City ignored Appellants' beliefs.

The panel opinion discusses at length the City's efforts to repair retaining walls and accomplish bird deterrence in the least restrictive manner. Op.24-34. It further explains that Appellants misrepresent the record and cherry-pick sound bites when they contend that the City made no effort to accommodate their beliefs:

> This is a far cry from an overt admission by the City that "it has not considered—and it refuses to consider—[Appellants'] religious exercise" as Appellants allege….*The record does not support Appellants' allegations that the City has refused to try to accommodate [Appellants'] religious exercise.*

Op.23 (emphasis added). Indeed, the panel explains that the few "select statements" implying that the City did not consider Appellants' beliefs "pale in comparison to the wealth of evidence…demonstrating that the City considered and ultimately pursued the least burdensome method of achieving its development plan." Op.34 The panel also correctly deferred to the district court's fact findings regarding the

City's efforts to accommodate, which are well-supported by the record and not clearly erroneous. Op.34; ROA.1018-1019, FOF.48-49.

Appellants' complaint regarding accommodation of their religious beliefs rests on misrepresentations of the record and the panel opinion. Ultimately, Appellants advance nothing more than bare disagreement with the district court's fact-findings, which the panel correctly affirmed under application of settled law. That is no basis for en banc review.

## CONCLUSION

The panel determined that the City's activities do not violate Appellants' free exercise of religion, and Appellants simply want a different result. The Court should deny en banc rehearing because there are no conflicts of law or issues of exceptional importance. Moreover, the panel got it right. Brackenridge Park continues to be a park. Appellants continue to have access to the Sacred Area for ceremonies. The retaining-wall repair will remove some trees, but the City worked to save as many trees as possible, and the district court found that the City's current plan does just that. The City "holds no animosity toward" Appellants. Op.11. It simply seeks to make the Park safe and accessible for all.

Respectfully submitted,

Jane Webre
State Bar No. 21050060
jwebre@scottdoug.com
Elijah Barrish
ebarrish@scottdoug.com
State Bar No. 24144433
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399

- and -

LANGLEY & BANACK, INC.
Fred R. Jones
State Bar No. 10886700
fjones@langleybanack.com
Natalie F. Wilson
State Bar No. 24076779
nwilson@langleybanack.com
Ian M. McLin
State Bar No. 24005071
imclin@langleybanack.com
Lee Warren
State Bar No. 24099453
lwarren@langleybanack.com
Sara Murray
State Bar No. 14729400
smurray@langleybanack.com
745 East Mulberry, Suite 700
San Antonio, TX  78212-3166
Telephone: (210) 736-6600
Facsimile:  210) 736-6889

-and -

CITY OF SAN ANTONIO
Deborah Klein
Deputy City Attorney
State Bar No. 11556750
[Deborah.Klein@sanantonio.gov](mailto:Deborah.Klein@sanantonio.gov)
International Center
203 S. St. Mary's Street,
2nd Floor
San Antonio, TX  78205
Telephone: (210) 207-8949
Facsimile: (210) 207-4004

**ATTORNEYS FOR DEFENDANT-APPELLEE
CITY OF SAN ANTONIO**

<u>CERTIFICATE OF COMPLIANCE</u>

Certificate of Compliance with Type-Volume Limitations,
Typeface Requirements, and Type-Style Requirements

This brief complies with (1) the type-volume limitation of FED. R. APP. P. 35(b)(2) because it contains 3,897 words, excluding exempt parts; and (2) the typeface and type style requirements of FED. R. APP. P. 32(a)(5). I understand that a material misrepresentation in this certificate of compliance may result in striking the brief and in sanctions against the person signing the brief.

September 8, 2025.

Jane Webre

CERTIFICATE OF SERVICE

I certify that on September 8, 2025, I electronically filed the foregoing brief via the CM/ECF system, which will provide notice to counsel of record for Plaintiffs-Appellants:

Mark W. Rasmussen
mrasmussen@jonesday.com
Margaret I. Lyle
milyle@jonesday.com
Chance McCraw
cmccraw@jonesday.com
Timothy M. Villari
tvillari@jonesday.com
JONES DAY
2727 N. Harwood Street
Dallas, TX  75201

John Greil
john.greil@law.utexas.edu
Steven T. Collis
steve.collis@law.utexas.edu
LAW AND RELIGION CLINIC
UNIVERSITY OF TEXAS SCHOOL OF LAW
727 East Dean Keaton Street
Austin, TX  78705

Jane Webre

4936-7865-4821