CASE NO. 23-50746

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

GARY PEREZ; MATILDE TORRES,
*Plaintiffs–Appellants/Cross-Appellees*

v.

CITY OF SAN ANTONIO,
*Defendant–Appellee/Cross-Appellant*

_____

**RESPONSE IN OPPOSITION TO THIRD
PETITION FOR REHEARING EN BANC**

_____

| | |
|---|---|
| Fred R. Jones<br>fjones@langleybanack.com<br>Natalie Friend Wilson<br>nwilson@langleybanack.com<br>Ian McLin<br>imclin@langleybanack.com<br>Lee Brinson Warren<br>lwarren@langleybanack.com<br>Sara Murray<br>smurray@langleybanack.com<br>LANGLEY & BANACK, INC.<br>745 East Mulberry, Suite 700<br>San Antonio, TX 78212<br>Telephone: (210) 736-6600 | Jane Webre<br>jwebre@scottdoug.com<br>Elijah Barrish<br>ebarrish@scottdoug.com<br>SCOTT DOUGLASS &<br>    McCONNICO LLP<br>303 Colorado Street, Suite 2400<br>Austin, TX 78701<br>Telephone: (512) 495-6300<br><br>City of San Antonio<br>Deborah Klein<br>Deputy City Attorney<br>deborah.klein@sanantonio.gov<br>International Center<br>203 South St. Mary's Street<br>Second Floor<br>San Antonio, TX 78205<br>Telephone: (210) 207-8949 |

**COUNSEL FOR THE CITY OF SAN ANTONIO**

<u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.    <u>Plaintiffs-Appellants</u>: Gary Perez and Matilde Torres

Counsel for Plaintiffs-Appellants:

Mark W. Rasmussen
mrasmussen@jonesday.com
Margaret I. Lyle
milyle@jonesday.com
Chance McCraw
cmccraw@jonesday.com
Timothy M. Villari
tvillari@jonesday.com
JONES DAY
2727 N. Harwood Street
Dallas, TX 75201.1515
Telephone: (214) 220-3939

John Greil
john.greil@law.utexas.edu
Steven T. Collis
steve.collis@law.utexas.edu
LAW AND RELIGION CLINIC
UNIVERSITY OF TEXAS SCHOOL OF LAW
727 East Dean Keaton Street
Austin, TX 78705
Telephone: (512) 471-5151

2.    <u>Defendant-Appellee</u>: the City of San Antonio

Appellate Counsel for the City of San Antonio:

Jane Webre
jwebre@scottdoug.com
Elijah Barrish
ebarrish@scottdoug.com
SCOTT DOUGLASS & McCONNICO LLP
Colorado Tower
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300

Trial and Appellate Counsel for the City of San Antonio:

Fred R. Jones
fjones@langleybanack.com
Natalie Friend Wilson
nwilson@langleybanack.com
Ian McLin
imclin@langleybanack.com
Lee Brinson Warren
lwarren@langleybanack.com
Sara Murray
smurray@langleybanack.com
LANGLEY & BANACK, INC.
745 East Mulberry, Suite 700
San Antonio, TX 78212
Telephone: (210) 736-6600

City of San Antonio
Deborah Klein
Deputy City Attorney
deborah.klein@sanantonio.gov
International Center
203 South St. Mary's Street,
Second Floor
San Antonio, TX 78205
Telephone: (210) 207-8949

January 8, 2025

Jane Webre

## RESPONSE TO STATEMENT OF EN BANC REASONS

Rehearing en banc is "an 'extraordinary procedure' that should be used only to bring the court's attention to an issue of 'exceptional public importance' or one that 'directly conflicts' with on-point Supreme Court or prior Fifth Circuit precedent." *Johnson v. Lumpkin*, 76 F.4th 1037, 1039 (5th Cir. 2023) (quoting 5th Cir. R. 40 I.O.P.). Appellants' petition comes nowhere near that high bar. The panel opinion did not break new ground. It applied settled law to facts the district court found after a four-day injunction hearing.

Appellants' real quarrel is with the district court's analysis of factual testimony regarding the dire state of the public park, the City's proposed remediation plan, and the lack of viable alternative approaches. But claimed errors "in the facts of the case...or error asserted in the misapplication of correct precedent to the facts of the case" do not warrant en banc review. *Gonzalez v. S. Pac. Transp. Co.*, 773 F.2d 637, 641 (5th Cir. 1985).

Appellants do not present legal issues meeting the "extraordinary" standard for en banc review. This interlocutory appeal has generated four panel opinions (two withdrawn) and an opinion from the Texas Supreme Court on a certified question, with no change in result. Appellants twice previously requested rehearing en banc (denied as moot). The Court should deny the latest petition as well. Appellants' disagreements with the factfinder are not a proper subject for en banc consideration.

4908-0647-0021

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................................... ii

RESPONSE TO STATEMENT OF EN BANC REASONS ................................ iv

TABLE OF AUTHORITIES ............................................................................ vi

STATEMENT OF THE ISSUES ........................................................................1

STATEMENT OF THE COURSE OF PROCEEDING AND DISPOSITION ........1

STATEMENT OF RELEVANT FACTS ...............................................................3

    A.    Hazards from crumbling walls in Brackenridge Park ...........................3

    B.    Hazards from migratory birds ...............................................................5

    C.    City project to address hazards at Lambert Beach ...............................7

ARGUMENT ...................................................................................................11

    A.    The opinion's substantial-burden analysis does not warrant en banc review. ..................................................................................11

        1.    The panel recited and applied the correct legal standard for substantial burden analysis under TRFRA. .............................12

        2.    The panel's substantial burden analysis did not treat Appellants' sincerely-held religious beliefs as invalid. ............13

        3.    The opinion did not implicate a circuit split regarding substantial burden. ................................................................16

    B.    The panel did not create a new doctrine regarding alternative means. ................................................................................................18

CONCLUSION ................................................................................................19

CERTIFICATE OF COMPLIANCE ..................................................................21

CERTIFICATE OF SERVICE ..........................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Apache Stronghold v. United States*,
101 F.4th 1036 (9th Cir. 2024) (en banc), *cert. denied*, 145 S.Ct. 1480
(2025)..................................................................................................17

*Barr v. City of Sinton*,
295 S.W.3d 287 (Tex. 2009) ....................................... 12, 13, 15, 16

*Bowen v. Roy*,
476 U.S. 693 (1986)..............................................................................15

*DeMarco v. Davis*,
914 F.3d 383 (5th Cir. 2019) ........................................................17

*Diaz v. Collins*,
114 F.3d 69 (5th Cir. 1997) ...........................................................18

*Gonzalez v. S. Pac. Transp. Co.*,
773 F.2d 637 (5th Cir. 1985) ........................................................ iv

*Hernandez v. C.I.R.*,
490 U.S. 680 (1989)..............................................................................15

*Johnson v. Lumpkin*,
76 F.4th 1037 (5th Cir. 2023) ...................................................... iv

*Kaemmerling v. Lappin*,
553 F.3d 669 (D.C. Cir. 2008).........................................................15

*McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*,
157 F.4th 627 (5th Cir. 2025) .......................................................15

*Merced v. Kasson*,
577 F.3d 578 (5th Cir. 2009) ............................................. 12, 16

*Mid-Vermont Christian Sch. v. Saunders*,
151 F.4th 86 (2d Cir. 2025) ..........................................................15

*Perez v. City of San Antonio*,
715 S.W.3d 709 (Tex. 2025) ............................................................. 2, 3, 17

**Statutes**

5th Cir. R. 40 I.O.P. .......................................................................... iv, 11

Tex. Civ. Prac. & Rem. Code § 110.001(a)(1) ........................................16

Tex. Civ. Prac. & Rem. Code §110.003(a) .............................................12

**Constitutional Provisions**

Tex. Const. art. I, § 6 ........................................................................2

4908-0647-0021

Whether the panel opinion presents a question of exceptional importance or conflicts with any decision by the Supreme Court or this Court regarding any element of Appellants' free exercise claims.

## STATEMENT OF THE COURSE OF PROCEEDING AND DISPOSITION

Appellants allege free exercise claims relating to a project to rehabilitate a deteriorated corner of Brackenridge Park on a bend in the San Antonio River. ROA.13-42. The project calls for restoration of the northern riverbank, across the river from a spot on the southern bank Appellants consider sacred (the "Sacred Area"):



ROA.736-39.

Appellants allege their religion requires performing ceremonies at the south-bank Sacred Area. ROA.4244. Appellants asked that the City reconfigure safety

fencing to provide access to the Sacred Area, and sought to enjoin the City from (a) removing or relocating trees whose root systems destabilized the north-bank retaining wall across the river; and (b) continuing a rookery management program to deter migratory birds whose guano endangers public health and whose nesting would interfere with planned repairs. ROA.13-42.

After an evidentiary hearing, the district court ordered the City to remove a dangerous broken tree limb and grant access to the Sacred Area. ROA.736. The court denied injunctive relief as to the trees and birds. ROA.984. The City removed the limb and allowed Appellants and the public access to the Sacred Area.

Appellants appealed. In the first panel opinion, the panel agreed that any dispute regarding access to the Sacred Area was moot. A divided panel affirmed the denial of injunctive relief as to trees and birds. Appellants sought panel and en banc rehearing. Without ruling on the motions, the panel withdrew its opinion and certified a question to the Supreme Court of Texas regarding a provision of the Texas Constitution that forbids government from adopting a rule that "prohibits or limits religious services." Tex. Const. art. I, §6.

The Supreme Court of Texas held that the provision "does not extend to governmental actions for the preservation and management of public lands." *Perez v. City of San Antonio*, 715 S.W.3d 709, 730 (Tex. 2025). It determined that the "City's decision to remove and replace trees and deter migratory birds in a popular City park does not purport to prohibit the Church from gathering or regulate what

the Church may do when it gathers. Instead, at most, it eliminates or reduces natural elements of *the City's* real property that the Church believes are necessary components of its religious services." *Id*. at 728 (court's emphasis).

The case returned to the panel. In a new opinion, the panel again agreed that the access issue was moot, and the divided panel again affirmed the denial of injunctive relief as to trees and birds.

Appellants filed a second petition for rehearing en banc. The panel treated it as a petition for panel rehearing and issued a revised opinion. The panel again agreed that the access issue was moot, and the divided panel again affirmed the denial of injunctive relief as to trees and birds.

Appellants filed a third petition for rehearing en banc. The City files this response.

## STATEMENT OF RELEVANT FACTS

### A.    Hazards from crumbling walls in Brackenridge Park

Brackenridge Park is a large urban park on the San Antonio River. In the early 1900s, Lambert Beach was constructed at a bend in the river. ROA.3100. The north-bank retaining walls have fallen into disrepair, in part due to encroaching trees and their root systems. ROA.4309. The crumbling walls present a safety hazard. ROA.558. Portions have failed, and others are at risk of failing:





4908-0647-0021

ROA.2342; ROA.2269.

If the walls are not rehabilitated, they will inevitably fail, and trees lining the bank will fall. ROA.4805-4806.

B.     Hazards from migratory birds

Brackenridge Park is seasonal home to migratory birds, including egrets, herons, and cormorants. The birds typically develop a rookery (a large colony of breeding birds) around Lambert Beach. ROA.2379. The river there has elevated E.coli levels because of the birds' fecal bacteria. ROA.2381-2382. Picnic areas and playgrounds become "covered in bird feces." ROA.4478-4479. The rookery and its associated hazards are extensive:







4908-0647-0021

ROA.2386; ROA.2399; ROA.2390; ROA.2393.

The rookery presents health and safety issues, particularly to children, because of the significant amount of guano near playgrounds and other areas where children play. ROA.2267; ROA.2426 ("When rookeries establish near playgrounds,…the risk of zoonotic disease transmission…increases."); ROA.1022-1023, FOF.71-76.

To address these threats, the City and the Texas Parks & Wildlife Department developed a rookery management program "to deter birds from an undesired location and encourage them to go to an area where they would be more desirable." ROA.4604; ROA.2425-2440. The program includes trimming trees and brush to reduce nesting habitat and deterrent techniques including pyrotechnics and spotlights. ROA.2382. These measures "do not harm the birds or keep them from reproducing." ROA.2426. They just encourage the birds to nest elsewhere.

Rookery management began in 2022 and successfully deterred birds from nesting near Lambert Beach. ROA.4494. Cormorants sacred to Appellants still regularly visit the area: "They come in and hang out, you see them in the morning, they come in through the day. They'll come in the trees and then they'll go down in the water and then they'll fly back to their nesting area." ROA.4501.

## C.     City project to address hazards at Lambert Beach

After voters approved bonds for repairs to the Park, the City fenced off a two-acre area ("Project Area") for the first phase. ROA.599; ROA.619-42. The Sacred Area sits within the Project Area, but it remains accessible.

4908-0647-0021

The project includes repairing north-bank retaining walls across the river from the Sacred Area. ROA.644; ROA.2249. That will entail removing some trees on the north bank and relocating others that are close to the river. "[T]here will be no construction" within the south-bank Sacred Area. ROA.4351-4352.

Work will also address dead and dying trees that are dangerous to the public. In 2023 a large limb fell onto a sidewalk at the adjacent San Antonio Zoo, allegedly injuring seven people and resulting in a lawsuit, ROA.566, ROA.1020 FOF.63; and a cedar elm failed and a large portion fell into the river near the Sacred Area:



ROA.2355-69; ROA.1021 FOF.61 ("There is no dispute that failing walls present a significant danger to any member of the public who is visiting the Park.").

4908-0647-0021

The record contradicts Appellants' assertion that the City is "proposing to destroy the Sacred Area altogether." Petition.9. Again, *"there will be no construction" within the Sacred Area*. ROA.4351-4352. Moreover, Appellants "do not dispute that the retaining walls" on the opposite bank "need to be repaired or rehabilitated," and some trees will be removed in that process. ROA.1019 FOF.52. Appellants argue that removing trees across the river from the Sacred Area would interfere with their religious exercise, but Appellant Perez testified that his religious beliefs do not "dictate that a certain number of trees" or "certain species of tree must be present" for worship. ROA.4111; ROA.1016 FOF.30-31. Perez also acknowledged that he could not identify which trees had grown naturally (and thus are considered sacred) and which trees had been planted by humans (not sacred):

```
1   Q.  So they're only sacred if they generate -- are generated
2   from the existing trees?
3   A.  Yes, ma'am.
4   Q.  Okay.  So would it be your position and your religious
5   belief that new trees planted by humans are less sacred or not
6   sacred at all?
7   A.  Not sacred.
8   Q.  Of the 83 trees in the Project Area are you able to tell
9   the Court which were planted by humans and which grew there
10  naturally?
11  A.  I am not able to do that, ma'am.
```

ROA.4114.

Perez stated that he hopes that "as many trees as possible" are preserved. ROA.4147. The evidence demonstrated that the City strove to do just that. It consulted arborists and engineers; held hearings to consider public input; and adjusted plans in an effort to save the greatest number of trees. ROA.3096-3099. Contrary to Appellants' representations, the City considered Appellants' input and modified plans based on that input:

> Q. Do you recall receiving any input during these meetings from either of the [Appellants]?
>
> A. Yes. Yes, I did.
>
> Q. And the City took that input?
>
> A. We did.
>
> Q. And did the City give it consideration in the implementation of the design and construction plan?
>
> A. Yes, we did.
>
> Q. Were any of the plans modified based on any of the public feedback?
>
> A. They were.
>
> Q. What was modified?
>
> A. The amount of trees to be destroyed was modified. There's a lot of detail in there. But, yes.

ROA.4406; *see* ROA.2263-2266 ("In response to public input, the project has been updated to preserve 35 additional trees."); ROA.1018-1019, FOF.48-49 ("The City held a number of public meetings to receive community input…[Appellants]

participated in some of these meetings and submitted public comments....The City took these comments, including [Appellants'] under consideration and evaluated whether more trees could be preserved...."). When Appellants allege, again and again, that the City did not consider their beliefs, that is simply false.

Appellants tout pier-and-spandrel as an alternative engineering method for retaining-wall repair. The City analyzed pier-and-spandrel, but the "consensus...was that no additional trees would be saved because they would still be impacted by the construction regardless of the methodology." ROA.4663. For example, excavation for pier-and-spandrel needs "support so that the soil doesn't collapse on the worker." ROA.4308.

<u>ARGUMENT</u>

A.  <u>The opinion's substantial-burden analysis does not warrant en banc review.</u>

Appellants contend that the panel's substantial burden analysis under TRFRA and the First Amendment reflects errors of such magnitude as to warrant en banc rehearing. In fact, the panel correctly recited and applied this Court's precedent. While Appellants may disagree with how the panel applied the law to the factual record, "alleged errors in...the application of correct precedent to the facts of the case are generally matters for panel rehearing but not for rehearing en banc." 5th Cir. R. 40 I.O.P. Nothing in the panel opinion warrants en banc rehearing.

4908-0647-0021

1.  <u>The panel recited and applied the correct legal standard for substantial burden analysis under TRFRA.</u>

Under the Texas Religious Freedom Restoration Act ("TRFRA"), a governmental body may not "substantially burden a person's free exercise of religion" unless "the application of the burden to the person…is in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that interest." Tex. Civ. Prac. & Rem. Code §110.003. In analyzing the substantial burden prong, the panel did not depart from this Court's TRFRA precedent or articulate a contrary standard warranting en banc review.

*First*, the panel articulated the test announced by the Supreme Court of Texas for TRFRA claims: "the correct standard for evaluating substantial burden is…whether the burden is 'real' and 'significant.'" Op.14-15 (quoting *Barr v. City of Sinton*, 295 S.W.3d 287, 301 (Tex. 2009)). The panel correctly explained that a burden is substantial if it is "real vs. merely perceived, and significant vs. trivial." *Id*. (quoting *Barr*). It correctly emphasized that this inquiry focuses on "the degree to which a person's religious conduct is curtailed and the resulting impact on his religious expression," as "measured...from the person's perspective, not from the government's." *Id*. (quoting *Barr*). And the panel correctly recognized that this inquiry "is 'case-by-case' and 'fact-specific' and must consider 'individual circumstances.'" *Id*. (quoting *Merced v. Kasson*, 577 F.3d 578, 588 (5th Cir. 2009);

*Barr*, 295 S.W.3d at 302, 308). In sum, the panel did not depart from the settled substantial burden framework. Instead, it recited and followed the controlling cases.

*Second*, the panel applied those settled legal principles to the factual record, concluding that the City's actions would not substantially burden Appellants' religious exercise. Op.15. The panel underscored that "Appellants continue to have virtually unlimited access to the Park for religious and cultural purposes." Op.7. It accurately observed that "as the record reflects, regardless of the rookery management program, no cormorants, due to their migration patterns, inhabit the area for extended periods of time each year." Op.15. The panel therefore determined that Appellants had "plainly failed to establish a likelihood of success on their position that the burden is real and significant under this circuit's case law." Op.15.[1]

> 2.  The panel's substantial burden analysis did not treat Appellants' sincerely-held religious beliefs as invalid.

The panel did not second-guess Appellants' sincerely-held religious beliefs. On the contrary, the panel prefaced its analysis by noting that "the district court determined the existence of the Appellants' sincere religious beliefs and the City does not dispute this finding," thus cabining its substantial burden assessment to the

---

[1] Procedurally, Appellants raised substantial burden for the first time in reply. Op.15 ("Appellants did not even address this issue in their principal brief"). The original panel opinion held that Appellants forfeited this issue by failing to brief it but nonetheless undertook to address the issue.

question of "whether the City's development plans substantially burden [Appellants'] sincere religious practices." Op.12-13.

Appellants cherry-pick the panel opinion to give the impression that it engaged in impermissible "theological disputation." In reality, the panel deftly handled a nuanced factual record, which, as often happens, provided some support for both sides. For instance, Appellants selectively quote the panel's observation that cormorants can still "nest[] nearby" to imply that this remark invalidated Appellants' belief in the importance of the "presence" of cormorants. Petition.6. But the panel recognized that "the City's bird deterrence measures are aimed at nesting, not preventing [the cormorants'] presence. The migratory birds are still allowed to forage, feed, and rest in the Project Area." Op.39. The panel also observed that, "[s]ince the implementation of the bird deterrence measures, the City avers that double-crested cormorants have been observed in the Park, including in the Project Area." Op.26. These statements do not contradict Appellants' sincerely-held religious beliefs, but rather demonstrate a court evaluating the district court's findings of fact as a whole while grappling with a complex legal issue: the substantiality of an asserted burden.

Appellants assert that the City's project would impose a substantial burden on them. But there is a profound difference between critically assessing religious beliefs (impermissible) and critically assessing *a legal position* (proper role of the court). The substantiality of an asserted burden is a *legal* question appropriately addressed

to the courts. *Bowen v. Roy*, 476 U.S. 693, 701 n.6 (1986) ("[F]or the adjudication of a constitutional claim, the Constitution, rather than an individual's religion, must supply the frame of reference."). And courts are fully capable of evaluating the substantiality of a burden without questioning the *substance* of religious beliefs. *See Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989) (although it "is not within the judicial ken to question the centrality of particular beliefs or practices to a faith," the court must determine "whether the alleged burden imposed by" the government "is a substantial one"); *Kaemmerling v. Lappin*, 553 F.3d 669, 679 (D.C. Cir. 2008) (court must "[a]ccept[] as true the factual allegations that [Appellants'] beliefs are sincere and of a religious nature—but not the legal conclusion, cast as a factual allegation, that [their] religious exercise is substantially burdened").[2]

*Barr*, the leading Texas Supreme Court case interpreting TRFRA, also recognized this distinction. It noted that the "substantial burden" inquiry may not question "whether the person's [religious] conduct that is being burdened is compelled by or central to his religion," because that would impermissibly stray into theological matters. *Barr*, 295 S.W.3d at 301–02. But "[t]hese problems are avoided

_____

[2] The recent cases Appellants cite are not to the contrary. Neither *Mid-Vermont Christian Sch. v. Saunders*, 151 F.4th 86, 94–95 (2d Cir. 2025), nor *McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 157 F.4th 627, 631, 638 (5th Cir. 2025), performs a substantial burden analysis (let alone in the context of TRFRA). *Mid-Vermont* addressed whether government defendants acted with hostility toward religious beliefs, while *McRaney* discussed the church autonomy doctrine. These cases do not speak to a court's role in adjudicating the substantiality of a burden on religious practice.

if the focus is on the degree to which a person's religious conduct is curtailed and the resulting impact on his religious expression." *Id*. The facts recited by the panel demonstrate that the project would not "curtail" Appellants' religious conduct. Appellants still have access to the Sacred Area and can worship there in the presence of cormorants. Moreover, the project would not change the reality that, because of migration patterns, birds are often absent for extended periods.

Appellants cannot identify any instance where the panel opinion impermissibly "opine[d] on theological matters," *Merced*, 577 F.3d at 590, or questioned whether any particular tenets are "central" to Appellants' religion, Tex. Civ. Prac. & Rem. Code §110.001(a)(1). Nor does the petition assert that the panel incorrectly stated a legal principle. Ultimately, Appellants do not agree with how the panel viewed the factual record. But that issue does not warrant en banc review.

3. The opinion did not implicate a circuit split regarding substantial burden.

Appellants suggest that the panel entered "the wrong side of a circuit split" by holding that "preventing a religious exercise" is not a per se substantial burden. Petition.8. The panel did not weigh in on this alleged split.

*First*, the panel did not conclude that the City's actions would "prevent"—let alone "permanently destroy"—Appellants' ability to perform ceremonies. Petition.8-9. To the contrary, the panel observed that although "Appellants argue that the City's plan would destroy or alter natural resources of religious importance,

they plainly failed to establish...that the burden is real and significant." Op.13. Moreover, the panel acknowledged that the City "granted public access to the entire area," and held that the access issue was moot. Op.9-11.

*Second*, the City's plan bears little resemblance to the cases Appellants enlist to construct the purported circuit split. In *Apache Stronghold v. United States*, the Ninth Circuit held that a plan to detonate explosives to collapse the sacred Oak Flat site and mine the copper ore beneath would not constitute a "substantial burden" because the site was on the government's own land. 101 F.4th 1036, 1055 (9th Cir. 2024) (en banc), *cert. denied*, 145 S.Ct. 1480 (2025). The City's plan to remediate crumbling retaining walls while *minimizing impact on the surrounding area*, Op.26-29, 33, is simply not comparable.[3] Likewise, the City's plan does not entail actions similar to confiscating Bibles, *DeMarco v. Davis*, 914 F.3d 383, 389 (5th Cir. 2019), or prohibiting ritual slaughter of animals, *Merced*, 577 F.3d at 587. Petition.9.

In those cases, the government completely banned or destroyed a religious practice. Here, neither the district court nor the panel determined that the factual

---

[3] The panel here did not cite *Apache Stronghold* or apply the Ninth Circuit's "public land" rule, nor did its decision turn on the fact that Brackenridge Park is City-owned public land. On the certified question, the Supreme Court of Texas held that the Texas Constitution's Religious Services Clause "does not extend to governmental actions for the preservation and management of public lands." *Perez*, 715 S.W.3d at 730. And the district court noted that "First Amendment law provides the government with the right to limit conduct on its own property, even if such limitation may impose limits on the exercise of religion." ROA.1158. But that issue was not part of the panel opinion's substantial burden analysis.

record supported a similar allegation against the City. And drawing that distinction based on the unique facts of a case is consistent with this Court's precedent. *E.g.*, *Diaz v. Collins*, 114 F.3d 69, 72 (5th Cir. 1997) (holding that a prison regulation preventing a Native American practitioner from wearing a headband for two hours a day was distinguishable from a "complete ban upon the possession of such sacred items," and "[n]othing in the record" establishes that "the limited restrictions which these regulations impose upon him are a substantial burden upon his religious expression").

B.   The panel did not create a new doctrine regarding alternative means.

Appellants characterize the panel opinion as a "startling holding" that "governments have no obligation to investigate possible accommodations when put on notice." Petition.10. The Petition misrepresents both the opinion and the record and seeks to advance a false narrative that the City ignored Appellants' beliefs.

The opinion discusses at length the City's efforts to repair retaining walls and accomplish bird deterrence in the least restrictive manner. Op.24-34. It explains that Appellants misrepresent the record and cherry-pick sound bites when they contend that the City made no effort to accommodate their beliefs:

> This is a far cry from an overt admission by the City that "it has not considered—and it refuses to consider—[Appellants'] religious exercise" as Appellants allege….The record does not support Appellants' allegations that the City has refused to try to accommodate [Appellants'] religious exercise.

Op.23. Indeed, the panel explains that the few "select statements" implying that the City did not consider Appellants' beliefs "pale in comparison to the wealth of evidence…demonstrating that the City considered and ultimately pursued the least burdensome method of achieving its development plan." Op.34. The panel also correctly deferred to the district court's fact findings regarding the City's efforts to accommodate, which are well-supported by the record and not clearly erroneous. Op.34; ROA.1018-1019, FOF.48-49.

Appellants' complaint regarding accommodation of their religious beliefs misrepresents the record and the panel opinion. Ultimately, Appellants advance nothing more than bare disagreement with the district court's fact-findings, which the panel correctly affirmed under application of settled law. That is no basis for en banc review.

## CONCLUSION

The panel determined that the City's activities do not violate Appellants' free exercise of religion, and Appellants simply want a different result. The Court should deny en banc rehearing because there are no conflicts of law or issues of exceptional importance. Moreover, the panel got it right. Brackenridge Park continues to be a park. Appellants continue to have access to the Sacred Area for ceremonies and worship. The retaining-wall repair will remove some trees, but the City worked to save as many trees as possible, and the district court found that the City's current

4908-0647-0021

plan does just that. The City "holds no animosity toward" Appellants. Op.11. It simply seeks to make the Park safe and accessible for all.

Respectfully submitted,

Jane Webre
State Bar No. 21050060
jwebre@scottdoug.com
Elijah Barrish
ebarrish@scottdoug.com
State Bar No. 24144433
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399

LANGLEY & BANACK, INC.
Fred R. Jones
State Bar No. 10886700
fjones@langleybanack.com
Natalie F. Wilson
State Bar No. 24076779
nwilson@langleybanack.com
Ian M. McLin
State Bar No. 24005071
imclin@langleybanack.com
Lee Warren
State Bar No. 24099453
lwarren@langleybanack.com
Sara Murray
State Bar No. 14729400
smurray@langleybanack.com
745 East Mulberry, Suite 700
San Antonio, TX 78212-3166
Telephone: (210) 736-6600
Facsimile: 210) 736-6889

CITY OF SAN ANTONIO
Deborah Klein
Deputy City Attorney
State Bar No. 11556750
Deborah.Klein@sanantonio.gov
International Center
203 S. St. Mary's Street,
2nd Floor
San Antonio, TX 78205
Telephone: (210) 207-8949
Facsimile: (210) 207-4004

**ATTORNEYS FOR DEFENDANT-APPELLEE
CITY OF SAN ANTONIO**

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitations,

Typeface Requirements, and Type-Style Requirements

This brief complies with (1) the type-volume limitation of FED. R. APP. P. 40(d)(3)(A) because it contains 3833 words, excluding exempt parts; and (2) the typeface and type style requirements of FED. R. APP. P. 40(d)(2) and 32(a)(5). I understand that a material misrepresentation in this certificate of compliance may result in striking the brief and in sanctions against the person signing the brief.

January 8, 2025.

Jane Webre

## CERTIFICATE OF SERVICE

I certify that on January 8, 2025, I electronically filed the foregoing pleading via the CM/ECF system, which will provide notice to counsel of record for Plaintiffs-Appellants:

Mark W. Rasmussen
mrasmussen@jonesday.com
Margaret I. Lyle
milyle@jonesday.com
Chance McCraw
cmccraw@jonesday.com
Timothy M. Villari
tvillari@jonesday.com
JONES DAY
2727 N. Harwood Street
Dallas, TX 75201

John Greil
john.greil@law.utexas.edu
Steven T. Collis
steve.collis@law.utexas.edu
LAW AND RELIGION CLINIC
UNIVERSITY OF TEXAS SCHOOL OF LAW
727 East Dean Keaton Street
Austin, TX 78705

Jane Webre